**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN KARARO, SEAN WALKER, TRI MINH LA, MELVYN L. CAISON JR. and IAN TRAVIS, individually and on behalf of all similarly situated current and former employees, | ) ) ) ) ) ) | Case No. 23-cv-02187 |
| | | The Honorable Jorge L. Alonso |
| Plaintiffs, | ) | Magistrate Judge Heather K. |
| v. | ) ) | McShain |
| OLD DOMINION FREIGHT LINE INC., | ) ) | Jury Trial Demanded |
| Defendant. | ) ) | |

**THIRD AMENDED CLASS ACTION COMPLAINT**

NOW COME Plaintiffs JOHN KARARO, TRI MINH LA, SEAN WALKER, MELVYN

L. CAISON JR. and IAN TRAVIS, as proposed class representatives, by and through their

attorney, James C. Vlahakis, and assert the following claims against Defendant OLD

DOMINION FREIGHT LINE INC. pursuant to the Illinois Biometric Information Privacy

Act, 740 ILCS 14/1, *et seq.*

### I.   Parties, Jurisdiction and Venue

1.     Plaintiff JOHN KARARO ("Kararo") is a citizen of Illinois and resides in this

judicial district.

2.     Defend ant OLD DOMINION FREIGHT LINE INC. ("Defendant") conducts

business in the State of Illinois and within this judicial district.

3.     Plaintiff Kararo is a current employee of Defendant who has worked for

Defendant at a facility located in Crest Hill, Illinois, since on or about October 6, 2021.

4.     Plaintiff Sean Walker ("Walker") is a former employee of Defendant who

worked at facilities located in Des Plaines, Illinois (starting in May of 2018) and

Montgomery, Illinois (starting in January 2022).

5.     Plaintiff Walker ended his employment with Defendant on or about March 23, 2023.

6.     Plaintiff TRI MINH La ("La") is a former employee of Defendant who was employed by Defendant between January 11, 2021 until on or about August 27, 2022.

7.     Plaintiff MELVYN L. CAISON JR. ("Caison") is a former employee of Defendant who worked for Defendant at a facility located in Forestview, Illinois from on or about September 11, 2013, until on or about September 6, 2019.

8.     Plaintiff IAN TRAVIS ("Travis") is a current employee of Defendant who began working at Defendant's Montgomery, Illinois facility on or about September 13, 2021, and he transferred to the Crest Hill facility in or around January of 2022.

9.     Defendant is a Virginia corporation and maintains its corporate office in Thomasville, North Carolina.

10.     Defendant's registered agent is CT Corporation System, 208 S. LaSalle St. Suite 814, Chicago IL 60604.

11.     This Court has personal jurisdiction over Defendant because it maintains a business location in this judicial district and Defendant has violated BIPA through its business practices conducted within this judicial district.

12.     As detailed below, this Court has subject matter jurisdiction over Plaintiffs' individual claims on the basis of diversity jurisdiction. See, 28 U.S.C. § 1332.

13.     BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

14.     As detailed below, during Plaintiffs' employment with Defendant, Defendant utilized a time clock system that required each Plaintiff and other employees to scan, upload and/or use at least one form of a unique "biometric identifier" in order allow Plaintiffs and other employees to log in and out of Defendant's time clock system.

2

15.    Defendant's Kronos, Incorporated time clock system required Plaintiffs and other employees to scan, upload and/or use their unique fingerprint in order to use Defendant's time clock.

16.    Defendant's time clock system utilized, collected, stored and otherwise obtained the unique biometric identifiers of Plaintiffs and other similarly situated employees in violation of the prohibition set forth by BIPA.

17.    "[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States[.]" 28 U.S.C. § 1332.

18.    As alleged above, each Plaintiff is a citizen of the State of Illinois and Defendant is a foreign corporation with its headquarters and principal place of business located outside the State of Illinois.

19.    Each Plaintiff could recover $75,000.00 in statutory damages by using Defendant's time clock system a minimum of seventy-five (75) times if a jury were to award each Plaintiff $1,000 in liquidated damages.

20.    Plaintiff Kararo has utilized Defendant's biometric time clock system at least 300 times. Discovery shows that Kararo utilized Defendant's biometric time clock system over 800 times. See, ODFL 001619-001643.

21.    Plaintiff Walker utilized Defendant's biometric time clock system at least 600 times. Discovery shows that Walker used Defendant's biometric time clock system approximately 2,000 times. See, ODFL 002331-002357, 002381-002414.

22.    Discovery shows that Plaintiff La utilized Defendant's biometric time clock system at least 600 times. See, ODFL 001760-0001776, 001939-001948, 002271-002274.

23.     Plaintiff Caison utilized Defendant's biometric time clock system at least 600 times. Discovery shows that Caison used Defendant's biometric time clock system approximately 1,600 times. See, ODFL 001280-001294.

24.     Plaintiff Travis has utilized Defendant's biometric time clock system at least 300 times.

25.     Each Plaintiff could recover $75,000.00 in statutory damages by using Defendant's time clock system 150 times if a jury were to award each Plaintiff up to $500 in liquidated damages.

26.     Each Plaintiff could recover $75,000.00 in statutory damages by using Defendant's time clock system 300 times if a jury were to award each Plaintiff up to $250 in liquidated damages.

27.     28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

28.     Venue is proper in this judicial district, a substantial part of the events or omissions giving rise to Defendant's violations of BIPA took place within this district.

29.     Venue is also proper in this judicial district because each Plaintiff is a citizen of the State of Illinois, and they seek to vindicate their rights (and the rights of putative class members) as provided by BIPA.

30.     Further, venue is proper in this judicial district because Defendant's putative class members are all citizens of the State of Illinois.

**II.   The Biometric Privacy Act**

31.     BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

32. BIPA's express Legislative Findings provide as follows:

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

33. The Illinois Supreme Court has recognized that BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019).

34. A private entity's failure to comply with BIPA "is no mere 'technicality'", as the Illinois Supreme Court has explained:

The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.

* * *

The Act vests in individuals and customers the right to control their biometric information by requiring notice *before* collection and giving them the power to say no by withholding consent. . . . When a private entity fails

5

> to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Id.* (emphasis supplied).

35.    BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

36.    BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

37.    BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

38.    As detailed below, within the past five years (the "Relevant Time Period"), Defendant required each Plaintiff, as well as other current and former employees (hereafter, "putative class members") to use a time clock system to track their hours worked.

39.    The time clock system utilized by Defendant required Plaintiffs and putative class members to input, use, upload and/or store one of their unique "biometric identifiers" in order to in an out of the time clock system.

40.     The time clock system utilized by Defendant used, captured, collected and/or stored the "biometric identifiers" of Plaintiffs and putative class members.

41.     The time clock system utilized by Defendant required it to obtain written consent from Plaintiffs and putative class members *before* it was able to acquire or otherwise capture the "biometric identifiers" of Plaintiffs and putative class members.

42.     BIPA provides that "[a] prevailing party may recover for each violation: ... (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater[.]" 740 ILCS 14/20(1).

43.     Section 20(2) of BIPA provides that "[a] prevailing party may recover for each violation: ... (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater[.]" 740 ILCS 14/20(2).

44.     Defendant has been utilizing a biometric time clock since at least 2018.

45.     Defendant is a sophisticated company that researches and tracks specific requirements of wage and hour laws in the various states that it conducts business.

46.     As depicted below, Defendant provides employees with hyperlinks to various "Paid Family Medical Leave" statutes:



**Paid Family Medical Leave**

California - http://www.edd.ca.gov/pdf_pub_ctr/de2511.pdf
Colorado - https://famli.colorado.gov/
Connecticut - https://ctpaidleave.org/
Massachusetts - https://www.mass.gov/orgs/department-of-family-and-medical-leave
New Hampshire - https://www.paidfamilymedicalleave.nh.gov/
New Jersey - https://myleavebenefits.nj.gov/worker/fli/
New York - https://paidfamilyleave.ny.gov/
Oregon - https://paidleave.oregon.gov/Pages/default.aspx
Rhode Island - http://www.dlt.ri.gov/tdi/
San Francisco, CA - https://sfgov.org/olse/paid-parental-leave-ordinance
Washington - https://esd.wa.gov/paid-family-medical-leave
Washington, D.C. - https://dcpaidfamilyleave.dc.gov/

47.     As depicted below, Defendant provides employees with hyperlinks to "applicable state and local paid sick leave laws."



48.     As depicted below, Defendant provides employees with notice of various Illinois laws under a so-called ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY:

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Equal Opportunity, Sexual and Other Harassment and Non-Retaliation Policy - (Illinois Employees Only)**

Old Dominion Freight Line, Inc. (Old Dominion) is an Equal Opportunity and Affirmative Action Employer. All personnel decisions will be made without regard to race, color, creed, religion, sex, national origin, gender identity, gender expression, sexual orientation, age, disability, pregnancy (including childbirth and related medical conditions), genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s). In a continuing effort to ensure that all employees are treated with appropriate respect and dignity, Old Dominion reaffirms its commitment against harassment or discrimination in the workplace. The policy of Equal Employment Opportunity applies to all policies and procedures relating to recruitment and hiring, compensation, benefits, and all other terms and conditions of employment

**EQUAL OPPORTUNITY**

Any employee who believes there has been a denial of equal opportunity has the responsibility to bring such matters immediately to Old Dominion's attention by one of the means stated in the Reporting Procedure below. All employees are encouraged to utilize that Reporting Procedure.

**SEXUAL HARASSMENT**

Harassment based on sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include sexually oriented jokes, posters and cartoons, lewd and sexually suggestive conduct toward or in the presence of others, unwelcome sexual overtures such as requests for dates and sexual engagements, and making participation in sexual activities a condition of employment. Conduct of this type by any employee is not to take place. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being harassed on the basis of sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s), or is being subjected to other physical or verbal behavior of a sexual nature by other fellow employees (including co-workers and managers) and third-parties, has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Reporting Procedure below. All employees are encouraged to utilize that Reporting Procedure.

**HARASSMENT BASED UPON RACE, COLOR, RELIGION, AGE, DISABILITY, NATIONAL ORIGIN, PREGNANCY, GENETIC INFORMATION, MILITARY STATUS, VIETNAM ERA OR VETERAN STATUS, OR ANY OTHER CHARACTERISTIC PROTECTED BY APPLICABLE LAW(S)**

Likewise, harassment based upon race, color, religion, national origin, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include jokes, comments, posters or cartoons, on-the-job treatment, work assignments or work conditions that are influenced by any of the foregoing traits.

Discrimination and/or harassment by employees (including co-workers and managers) and third-parties is prohibited. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being discriminated against or harassed because of any of the foregoing traits by employees (including co-workers and managers) or third-parties has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Reporting Procedure below. All employees are encouraged to utilize that Reporting Procedure.

**REPORTING PROCEDURE**

Old Dominion cannot correct or remedy or prevent matters of which it is not aware. Thus, any employee who believes there has been a denial of equal opportunity, sexual harassment, or harassment on any other basis, as explained above, has the responsibility to bring that matter immediately to the attention of his or her immediate supervisor

If an individual is uncomfortable with bringing the matter to his or her immediate supervisor's attention, that person should bring the matter to the attention of his or her immediate supervisor's manager, a Human Resources Manager, or another Officer or Manager identified on the "Corporate Contact List" contained in Old Dominion's OPEN DOOR POLICY poster, posted in each Old Dominion facility and available through the Human Resources Department. Old Dominion also provides an employee hotline, 877-237-8195, through which employees may report potential violations of this policy, including the ability to make reports confidentially. Supervisors must escalate any reports of discrimination or harassment to their Regional Human Resources Manager. Reports may also be made to the United States Equal Employment Opportunity Commission or an applicable state agency, including the Illinois Department of Human Rights.

Old Dominion hopes that any incident of harassment or discrimination can be resolved through the internal process outlined in the below Reporting Procedure policy. However, in Illinois, employees have the right to file formal charges with the Illinois Department of Human Rights ("IDHR"). A charge with the IDHR must be filed within 300 days of the incident.

124

---

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

Administrative Contacts:

Illinois Department of Human Rights
Chicago: 312-814-6200 or 800-662-3942; Chicago TTY: 866-740-3953
Springfield: 217-785-5100; Springfield TTY: 866-740-3953
www.illinois.gov/dhr

Illinois Sexual Harassment and Discrimination Helpline
877-236-7703

Illinois Human Rights Commission (IHRC)
Chicago: 312-814-6269; Chicago TTY: 312-814-4760
Springfield: 217-785-4350; Springfield TTY: 217-557-1500

United States Equal Employment Opportunity Commission (EEOC)
Chicago: 800-669-4000; Chicago TTY: 312-869-8001

Chicago Commission on Human Relations
740 N. Sedgwick, 4th Floor
Chicago, IL 60654
312-744-411
cchr@cityofchicago.org

Upon receipt of a report concerning harassment or any denials of equal opportunity, Old Dominion will conduct a timely, thorough investigation of the matter that promotes fairness for all parties. Old Dominion will review the information obtained in the investigation and make reasonable findings based on this information. Based on those conclusions, Old Dominion will take appropriate remedial action where appropriate. All employees are encouraged to utilize this Reporting Procedure.

**CONFIDENTIALITY / NO RETALIATION**

All reports concerning harassment or any denials of equal opportunity will be received and handled confidentially, to the extent compatible with conducting a thorough investigation. There will be no retaliation against any employee for making a report or participating in the investigation of such a report.



**Harassments and Discrimination Notice**

ILLINOIS DEPARTMENT OF
**Human Rights**

**YOU HAVE THE RIGHT TO BE FREE FROM JOB DISCRIMINATION AND SEXUAL HARASSMENT.**

The Illinois Human Rights Act states that you have **the right to be free from unlawful discrimination and sexual harassment**. This means that employers may not treat people differently based on race, age, gender, pregnancy, disability, sexual orientation or any other protected class named in the Act. This applies to all employer actions, including hiring, promotion, discipline and discharge.

**REASONABLE ACCOMMODATIONS**
You also have the right to reasonable accommodations based on pregnancy and disability. This means you can ask for reasonable changes to your job if needed because you are pregnant or disabled.

**RETALIATION**
It is also unlawful for employers to treat people differently because they have reported discrimination, participated in an investigation, or helped others exercise their right to complain about discrimination.

**REPORT DISCRIMINATION**

To report discrimination, you may:
1. Contact your employer's human resource or personnel department.
2. Contact the Illinois Department of Human Rights (IDHR) to file a charge.
3. Call the Illinois Sexual Harassment and Discrimination Helpline at 1-877-236-7703 to talk to someone about your concerns.

Chicago:
James R. Thompson Center
100 West Randolph Street, Suite 10-100
Chicago, IL 60601
(312) 814-6200
(866) 740-3953 (TTY)
(312) 814-6251 (Fax)

Springfield:
535 W. Jefferson Street
1st Floor
Springfield, IL 62702
(217) 785-5100
(866) 740-3953 (TTY)
(217) 785-5106 (Fax)

Website: www.illinois.gov/dhr
Email: IDHR.Intake@illinois.gov

Employers shall make this poster available and display in where employees can readily see it. This notice is available for download at: www.illinois.gov/dhr
Printed by the Authority of the State of Illinois : 9/18 : web version : IOCI19-0181

125

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Illinois Employees Pregnancy Addendum**

**Pregnancy Accommodations in Illinois**

**A.     Eligibility:**

This policy applies to all applicants or employees of the Company in the State of Illinois, and controls where it may conflict with the Company's other policies.

**B.     General Provisions:**

The Company complies with employment laws applicable to mothers and expectant mothers, including the Family Medical Leave Act, Pregnancy Discrimination Act, Americans with Disabilities Act and Illinois Human Rights Act.  In Illinois, it is the Company's policy to make reasonable accommodations for pregnancy, childbirth and medical and common conditions related to pregnancy and childbirth if requested by an applicant or employee, and agreed upon.

**C.     Procedure for Requesting Accommodations:**

1.  Illinois applicants or employees that require accommodation(s) for pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth shall make the request to her immediate supervisor or Human Resources, which will work with them to determine any effective reasonable accommodation(s).  An accommodation(s) may not be reasonable where it poses an undue hardship on the Company.

**D.     Enforcement:**

The Company prohibits discrimination, harassment, and retaliation against applicants and employees for requesting and/or using accommodation(s).  If an applicant or employee experiences such prohibited conduct, they must file a complaint with the Company as set forth in the Company's policies.  Employees have the right to file a charge with the Illinois Department of Human Rights within 180 days of the conduct and/or the United States Equal Employment Opportunity Commission within 300 days of the conduct.

**Illinois Breastfeeding/Lactation**

The Illinois Nursing Mothers in the Workplace Act was amended to provide paid break time to nursing mothers to express milk as needed during work hours.

During at least the first year after her child is born, a nursing mother may take lactation breaks whenever she needs, for a "reasonable" time. Employers must provide a private location in close proximity to the employee's work space, other than a bathroom stall, for this purpose.

The break time may run concurrently with other breaks already provided to the employee. The employee's compensation may not be reduced for the time used for expressing milk or nursing a baby.

**VICTIM'S ECONOMIC SECURITY AND SAFETY ACT (VESSA)**

**LEAVE OF ABSENCE POLICY**

**POLICY OVERVIEW**

Under the Illinois Victims' Economic Security and Safety Act of 2003 ("VESSA"), each eligible employee in Illinois is entitled to 12 weeks of unpaid leave during any 12-month period. If this leave also qualifies as leave under the Family and Medical Leave Act ("FMLA") then this VESSA leave runs concurrently (meaning, at the same time) with leave under FMLA. Therefore, each time an employee takes leave under either the FMLA or VESSA for an FMLA qualifying reason, the remaining leave entitlement is any balance of the 12 weeks that has not been used during the immediately preceding 12-month period.  An employee may take VESSA leave if the employee or a family or household member (includes spouse, parent, son, daughter, other person related by blood or by present or prior marriage, other person who shares a relationship through a son or daughter, and persons jointly residing in the same household) was a victim of a sexual assault, stalking, domestic violence, or any other crime of violence and requires the leave for one or more of the following reasons:

a.   to seek medical attention for, or recovery from, physical or psychological injuries caused by domestic, sexual violence, or other crime of violence to the employee or the employee's family or household member;

b.   to obtain services from a victim services organization for the employee or the employee's family or household member;

c.   to obtain psychological or other counseling for the employee or the employee's family or household member;

d.   to participate in safety planning, temporarily or permanently relocating, or to take other action to increase the employee's safety; or

e.   to seek legal assistance or remedies to ensure health and safety of the employee or employee's family or household member, including preparing for or participating in any civil or criminal legal proceeding related to or derived from the domestic, sexual violence or other crime of violence.

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

An employee's health insurance coverage, including family coverage, will be continued during the leave, provided that the employee was covered under such policy prior to the leave and provided that the employee continues to pay his or her portion of the premiums, if applicable. An employee is not guaranteed that he or she will be returned to his or her exact position; however, an employee will be returned to the same or an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment unless the position was eliminated for legitimate business reasons. Employees will not forfeit benefits they have already earned, such as paid time off pay, but will not accrue additional employment benefits during any period of leave. An employee may use any paid time off that has accrued.

**ELIGIBILITY**

For purposes of VESSA, an employee is eligible if he or she is employed by the Company on either a full-time or part-time basis in the state of Illinois.

**Notice and Certifications**

If an employee wishes to take a leave because he or she or a family member was a victim of domestic or sexual violence or any other crime of violence, the employee must provide the Company with at least 48 hours advance notice of the employee's intention to take the leave, unless providing such notice is not practicable. When an unscheduled absence occurs, the Company will not take any action if the employee, within a reasonable time after the leave commences, notifies the Company as soon as practicable. In addition, the Company may require the employee to submit a certification that that the employee or a member of the employee's family or household was a victim of domestic or sexual violence and that the leave is for one of the eligible purposes under VESSA. If requested, certification is a sworn statement from the employee and a copy of: (i) documentation from an employee, agent, or volunteer of a victim services organization; an attorney; a member of the clergy; or a member or other professional from whom the employee or the employee's family or household member has sought assistance to address the effects of the violence; (ii) a police or court order; or (iii) other corroborating evidence.

**TIMING OF LEAVE**

An employee may take a leave consecutively, intermittently or on a reduced schedule basis when the leave is taken because he or she or a household member is seeking assistance due to domestic or sexual violence.  When leave is taken intermittently or on a reduced schedule basis, the total amount of the leave will not be reduced. An employee may be required to transfer temporarily to a position that has equivalent pay and benefits and that better accommodates recurring periods of leave.

Intermittent or reduced schedule leave for medical reasons will not be permitted unless the employee, in the case of foreseeable treatment, makes a reasonable effort to schedule the treatment so as not to disrupt unduly the Company's operations and he or she provides thirty

days' notice, or as much notice as the required treatment permits. In addition, an employee must provide the Company with a doctor's certification that sets forth the medical necessity of the intermittent or reduced schedule leave and the duration of such leave.

**RETURNING FROM LEAVE**

If an employee fails to return after VESSA leave for reasons within the control of the employee, the Company is entitled to recover the cost of any premium that was paid for maintaining health coverage for the employee. If an employee fails to return to work after a VESSA leave due to: (i) the continuation, reoccurrence, or onset of domestic or sexual violence or other crime of violence that qualified for VESSA leave; or (ii) other circumstances beyond the control of the employee, the Company is not entitled to recover the cost of any premiums paid and the Company may require the employee to provide certification of the reason for his or her inability to return to work. If the Company requests such certification, it shall include a sworn statement from the employee and documentation from an employee, agent, or volunteer of a victim services organization; an attorney; a member of the clergy; or a medical or other professional from whom the employee has sought assistance in addressing domestic or sexual violence and the effects of that violence; a police or court record; or other corroborating evidence. COBRA continuation rights will commence at the time the employee's health coverage terminates for failure to return to work.

**NON-DISCRIMINATION UNDER VESSA**

The Company will not fail to hire, refuse to hire, discharge, constructively discharge or harass, retaliate against or otherwise discriminate against any individual in any form or manner, because:

1.  The individual:

a.   is or is perceived to be a victim of domestic,  sexual violence, or other crime of violence;

b.   attended, participated, prepared for, or requested leave to attend, participate in, or prepare for a criminal or civil court proceeding relating to an incident of domestic, sexual violence or other crime of violence of which the individual or a family or household member of the individual was a victim, or requested or took VESSA leave;

c.   requested an accommodation in the workplace in response to actual or threatened domestic,  sexual violence or other crime of violence, regardless of whether the request was granted; or

d.   exercised any rights provided for under VESSA or this policy, or opposed any practice made unlawful by VESSA (including filing charges or proceedings under VESSA, providing information in connection with any proceeding under VESSA, or testifying, or is about to testify, in any proceeding under VESSA); or

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

2. The workplace is disrupted or threatened by the action of a person whom the individual states has committed or threatened to commit domestic, sexual violence or other crime of violence against the individual or the individual's family or household member.

**Requests for Accommodation (VESSA)**

The Company will provide reasonable accommodations to the known limitations resulting from circumstances relating to an employee being a victim of domestic or sexual abuse or an employee's family or household member being a victim of domestic or sexual abuse so long as the individual is an otherwise qualified individual as defined in Section 30(b)(2) of VESSA, and who is (a) an applicant or employee of the Company; and (b) a victim of domestic, sexual abuse or other crime of violence, or with a family or household member who is a victim of domestic, sexual abuse or other violent crime (provided the employee is not the perpetrator). The Company is not required to provide such accommodations if it would impose an undue hardship on the Company's operations.

**FAMILY BEREAVEMENT LEAVE ACT**

Eligible employees of all public employers and private employers with 50 or more employees are entitled to a maximum of 2 weeks (10 workdays) of unpaid leave time in the event of:
- the death of a "covered family member";
- a stillbirth;
- a miscarriage;
- an unsuccessful reproductive procedure;
- a failed adoption match or an adoption that is not finalized because it is contested;
- a failed surrogacy agreement; or
- a diagnosis that negatively impacts pregnancy or fertility.

A "covered family member" is an employee's child, stepchild, spouse, domestic partner, sibling, parent, mother-in-law, father-in-law, grandchild, grandparent, or stepparent.

Employees are entitled to a maximum of 6 weeks of leave if they experience more than one event during a 12-month period.

Employees may use FBLA leave time to:
1. grieve;
2. attend the funeral or alternative to a funeral of a covered family member; or
3. make arrangements necessitated by the death of the covered family member.

FBLA leave time must be completed within 60 days after the date the employee receives notice of the event. Employees must give their employer at least 48 hours' notice before taking FBLA leave, unless not reasonable or practicable.

**Reasonable Documentation of Leave**

Employers may require an employee to provide reasonable documentation for FBLA leave. Documentation may include a death certificate or published obituary.

For leave following a loss or negative diagnosis related to pregnancy, surrogacy, or adoption, employers are not allowed to require an employee to disclose the specific event that qualifies the employee for the leave. Documentation may be provided by a health care practitioner, or an adoption or surrogacy organization, or on the FBLA form available on IDOL's website; view the form here: *https://labor.illinois.gov/content/dam/soi/en/web/idol/laws-rules/conmed/documents/family-bereavement-leave-act-form.pdf*.

**Coverage**

All employers covered by the federal Family and Medical Leave Act (29 U.S.C. 2601 et seq.) must comply with the leave time requirements of the FBLA.

An employee of a covered employer is eligible for FBLA leave if they have worked at least 1,250 hours of service with the employer during the prior 12-month period.

FBLA leave may not be taken in addition to unpaid leave permitted under the Family and Medical Leave Act (FMLA), 29 U.S.C. 2601 et seq., and may not exceed unpaid leave time allowed under the FMLA. However, nothing prohibits an employer from allowing employees additional leave time in addition to FMLA.

128

49.     Addendum E does not list or depict a representation of the Illinois Biometric Privacy Act.

50.     Defendant has publicly described its biometric time clock in public court filings in October of 2019, as depicted by the below image taken from the case of Kelly *Shaffstall v. Old Dominion Freight Line, Inc.*, 18-cv-01656 (W.D. of Wash).

51.     As described in the case of Kelly Shaffstall v. Old Dominion Freight Line, Inc., 18-cv-01656 (W.D. of Wash), Defendant has been in receipt of Kronos issued "training materials" as recently as October of 2019. See, 18-cv-01656 (W.D. of Wash) Dkt. 45, declaration of Laura Williams, Defendant's Director of Human Resources Information Systems ("HRIS").

52.     Ms. Williams testified that she was "familiar with the time punch approval process" utilized by Defendant. See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 2.

53. According to Ms. Williams, "Old Dominion uses biometric readers to record employee work time. Old Dominion records and pays its employees in increments of 1 minute. Kronos fingerprint punches are automatically uploaded to Old Dominion's 'SAP' software, which it uses for a variety of internal functions, including timekeeping and payroll." See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 3.

54. According to Ms. Williams, "Old Dominion maintains training materials for its Kronos biometric punch device used at Old Dominion. Exhibit A is a true and correct copy of the aforementioned training materials, which are maintained in the ordinary course of Old Dominion's business and are a regular business activity of Old Dominion." See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 4.

55. According to the declaration of Ms. Williams, Defendant has been utilizing a Kronos biometric (fingerprint based) time-clock since at least April of 2018. See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 7.

56. According to the declaration of Lorrin Wallace, Defendant's Regional Manager of Maintenance for the Pacific-Northwest Region, Defendant has been utilizing a Kronos biometric (fingerprint based) time-clock since at least march of 2018. See, 18-cv-01656 (W.D. of Wash) Dkt. 44 at ¶¶ 3, 18.

57. As a sophisticated company, Defendant did not negligently fail to comply with BIPA.

58. As a sophisticated company, Defendant appears to have intentionally or recklessly ignored the requirements of BIPA, entitling Plaintiffs and class members to assert at least between $250 and $1,000 for each violation of BIPA intentionally or reckless violation of BIPA.

59. Within the past five years, Defendant has captured the biometric information of Plaintiffs and class members without their express written consent.

60.     Within the past five years, Defendant has captured the biometric information of Plaintiffs and class members without first informing Plaintiffs and class members of their rights are required by Section 15(a) and 15(b) of BIPA.

**III. CAFA Jurisdiction**

61.     The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provides federal jurisdiction over putative class action claims if the following conditions are met:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which — (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2).

62.     Section 1332(d)(6) of CAFA provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

63.     Plaintiffs satisfy Section 1332(d)(2)(A) because Defendant and the putative members are citizens of different states.

64.     During the Relevant Time Period, approximately 1,000 putative class members utilized Defendant's time clock system in violation of BIPA. See, 28 U.S.C. § 1332(d)(5)(B).

65.     Section 1332(d)(2) is satisfied where 5,001 individual reckless or intentional violations of BIPA (involving 100 or more putative class members) would exceed $5,000,000 in damages.

66.     Alternatively, Section 1332(d)(2) is satisfied where 5,001 negligent individual violations of BIPA (involving 1,000 or less putative class members) would exceed $5,000,000 in damages.

67. Alternatively, Section 1332(d)(2) is satisfied where 10,001 negligent individual violations of BIPA (involving 1,000 or less putative class members at $500 per violation) would exceed $5,000,000 in damages.

68. Alternatively, Section 1332(d)(2) is satisfied where 20,001 negligent individual violations of BIPA (involving 1,000 or less putative class members at $250 per violation) would exceed $5,000,000 in damages.

69. Alternatively, Section 1332(d)(2) is satisfied where 50,001 negligent individual violations of BIPA (involving 1,000 putative class members at $100 per violation) would exceed $5,000,000 in damages.

70. In the week of April 3, 2023, Defendant attempted to secure BIPA consent forms from employees by offering to pay them $500.

71. Plaintiff Kararo did not sign the consent form or receive the $500 payoff despite being continually asked to sign a consent from by Tammy Gerdes, Plaintiff Kararo's terminal manager.

72. Plaintiff La did not sign the consent form or receive the $500 payoff. Further, upon information and belief, on December 28, 2020, Defendant never provided La with a so-called "*Biometric Information Privacy Policy*" or a so-called "Ease Employees' Privacy Concerns about Kronos Biometric Technology".

73. Plaintiffs Walker and Caison were never presented with the consent form.

74. After receiving notice of this putative class action lawsuit, Defendant continued to collect consent forms without informing employees that there was a putative class action pending.

75. Plaintiff Travis was on leave during the first two weeks of April of 2023. When Travis returned to work, he was told by Ms. Gerdes that it was too late for him to receive a payment of $500 and that his only option was to sign a document entitled.

76.     Ms. Gerdes told Plaintiff Travis that he had to sign a document entitled, "Consent to Collect and Use Biometric Data" ("Consent to Collect Form").

77.     Gerdes did not inform Plaintiff Travis that this proposed class action had been filed against Defendant when she urged him to sign the Consent to Collect Form.

78.     The Consent to Collect Form that Travis signed is depicted below:

---

### Consent to Collect and Use Biometric Data

Old Dominion Freight Line, Inc. (the "Company") maintains a time management system which is provided and supported by a third-party provider, Kronos, Inc. (Kronos 4500/9000/9100 Touch ID), and by approximately August 31, 2023, the Company expects to transition to a time management system provided and supported by third-party vendor Dormakaba Group (Terminal 9700-K6/9700) (Kronos, Inc. and Dormakaba Group are each referred to as "Time Clock Vendor") to verify employee identity and ensure employee time is accurately captured.

The time management systems require employees to scan their finger on a time clock each time they "clock-in" or "clock-out" from work. The Kronos time management system works by immediately and automatically converting a scan of an individual's finger to an encrypted mathematical representation of the individual's fingertip. No fingerprint or image of the fingerprint is captured or stored by the Kronos time management system. With respect to the Kronos time management system, the encrypted mathematical representation created from the scan of a finger is securely stored on the time clock. The encrypted mathematical representation cannot be reverse-engineered to produce a fingerprint.

The Dormakaba Group time management system works by digitally translating data points from the scan of an individual's finger into a numerical template ID. With respect to the Dormakaba Group time management system, the template ID is securely stored on the time clock hardware and a Dormakaba Group server database or in other backup systems or repositories (if any). No fingerprint or image of a fingerprint is ever stored by the Dormakaba Group time management system. The template ID cannot be reverse-engineered to produce a fingerprint.

Additional information regarding the time management systems can be found in the Company's Biometric Data Privacy Policy (the "Policy").

The phrase "Biometric Data" is used herein and in the Policy to include, but is not limited to, all potentially applicable legal definitions of "biometric identifiers" or "biometric information" and any information that is derived therefrom, which can include, but are not limited to, data generated from the scan of a finger. For purposes of this Policy, information derived from a scan of an employee's finger during the timekeeping process is referred to as Biometric Data even though it may not meet the definition of "biometric information" or "biometric identifiers" under applicable law.

The Company generally does not make available or disclose Biometric Data to third parties, except to: (1) the Time Clock Vendor or any other third-party vendor engaged by the Company, as needed, to operate and maintain the time management systems; and (2) Company-retained attorneys and/or accountants or other agents as necessary to assist the Company with compliance, conduct audits and investigations in the future, provide related services, or as otherwise permitted or required by law or legal/administrative process. If the Company or the Time Clock Vendor (or such other third-party vendor engaged by the Company) services the time clock (or the associated server or software), you consent to disclosing your Biometric Data or otherwise giving them access to it to make the repair, maintenance, upgrade or change, or to destroy your Biometric Data. The Company does not retain scans or images of employees' fingers

---

or fingerprints or otherwise retain any employee biometric identifiers or information except as otherwise required by law or legal process and Company policies.

The Company has taken steps to ensure that your Biometric Data will be transmitted and stored securely and retained only for as long as needed. In general, this means that, except as otherwise required by law, legal process or relevant Company policies, the Company will destroy an employee's Biometric Data, including what is stored on the time management systems, as soon as practicable following the termination of an employee's employment with the Company. The Company will make reasonable and technically feasible efforts to ensure that Biometric Data is not retained for longer than one year following an employee's last interaction with the Company.

By signing below, you acknowledge and agree to the past, present, and future collection, use, disclosure, transmission and storage of your Biometric Data as described above and detailed in the Biometric Data Privacy Policy when using the Company's time management systems.

NAME (PRINT): _Ian Travis_

NAME (SIGNATURE): _____

EMPLOYEE ID NO: _109195_

DATE: _4/10/23_

79.    When Ms. Gerdes and other employees of Defendant provided consent forms to other employees to sign, the paperwork did not provide employees with the contact information of the undersigned attorney.

80.    When Ms. Gerdes and other employees of Defendant provided consent forms to other employees to sign, the paperwork did not provide employees with a copy of the proposed class action lawsuit.

81.    Ms. Gerdes did not inform other class members that this proposed class action had been filed against Defendant when she urged these individuals to sign the Consent to Collect and Use Biometric Data.

**Count I – Asserting Violations of Section 15(b)(1) of BIPA**

82.    Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

16

83. Section 15(b)(1) of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

84. BIPA defines "[w]ritten release" as "informed written consent." 740 ILCS 14/10.

85. Defendant violated Section 15(b) of BIPA because it collected Plaintiffs' "biometric identifiers" and/or "biometric information" without first obtaining Plaintiffs' informed written consent.

86. Defendant also violated Section 15(b) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

87. Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiffs in writing that it was storing and/or collecting Plaintiffs' "biometric identifiers" or "biometric information." 740 ILCS 14/15(b)(1).

88. Defendant violated of Section 15(b)(1) of BIPA by failing to inform putative class members in writing that it was storing and/or collecting their "biometric identifiers" or "biometric information." 740 ILCS 14/15(b)(1).

89.    As explained above, Defendant collected, used and/or stored the "biometric identifiers" and/or "biometric information" of the Plaintiffs and the putative class members in violation of the prohibitions and requirements set forth by Section 15(b)(1) of BIPA.

90.    As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members before Defendant collected, used, modified and/or stored their "biometric identifiers" and/or "biometric information."

91.    During the week of April 3, 2023, and continuing until at least April 14, 2023, Defendant attempted to obtain *after-acquired* consent from its current employees by offering employees payments of $500 in exchange for signing a "CLAIM RELEASE FORM".

92.    The first paragraph of the CLAIM RELEASE FORM states as follows:

> The purpose of this RELEASE is to ask you to release any legal claims you have or may have against Old Dominion Freight Line, Inc. ("OD") under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and as described below in exchange for the consideration described below. You are under no obligation to sign this RELEASE and there will be no negative employment consequences for not signing it.

93.    The second paragraph of the CLAIM RELEASE FORM states as follows:

> OD makes you the following offer: in exchange for signing this RELEASE and waiving the rights discussed below, OD will pay you the gross amount of Five Hundred Dollars ($500.00), less applicable payroll withholdings, within five (5) business days following OD's receipt of your signed RELEASE. The payment will be made in the manner by which you regularly receive your paychecks from OD.

94.    The third paragraph of the CLAIM RELEASE FORM states as follows:

> By signing this RELEASE, you will voluntarily release OD, related entities, their predecessors, insurers, successors and assigns, and their current and former employees, directors, shareholders, and agents, both individually and in their business capacities (the "Releasee(s)"), from all claims, known and unknown, which you may have against any Releasee as of the date you sign this RELEASE that: (i) arise under the BIPA, or (ii) are otherwise associated with any alleged biometric identifiers or biometric information collected, captured, used, stored, disclosed, disseminated, transmitted, or otherwise obtained by OD.

95.    Defendant continued to receive signed CLAIM RELEASE FORMS after learning that this lawsuit was filed.

96.    More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee of the pendency of this putative class action.

97.    More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee that the undersigned was counsel for the putative class action.

98.    More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee of the pendency of this putative class action.

99.    More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee that the undersigned was counsel for the putative class action.

100.   Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

101.   The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(b)(1) of BIPA.[1]

102.   The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

103.   Common questions of law and fact exist.

---

[1] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

104.    The claims in this Court which assert that Defendant violated Section 15(b) of BIPA by requiring Plaintiffs to use a time clock system that collected, captured, and otherwise obtained Plaintiffs' "biometric information" and/or "biometric identifiers" *without* Plaintiffs' express written consent - is typical of the claims of putative class members.

105.    Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

106.    The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

107.    The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

108.    The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

109.    The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

110.    Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as

provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Declaring that Defendant violated Section 15(b)(1) of BIPA;

b. Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;

c. Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";

d. Awarding liquidated damages for negligent violations of Section 15(b)(1);

e. Awarding liquidated damages for intentional and/or reckless violations of Section 15(b)(1);

f. Awarding reasonable attorney's fees and costs;

g. Enjoining Defendant from further violations of Section 15(b)(1);

h. Certifying the proposed Class set forth above;

i. Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j. Appointing Plaintiffs' counsel as class counsel.

**Count II – Asserting Violations of Section 15(b)(2) of BIPA**

111. Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

112. Section 15(b) of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

113. BIPA defines "[w]ritten release" as "informed written consent." 740 ILCS 14/10.

114. Defendant violated Section 15(b) of BIPA because it collected Plaintiffs' "biometric identifiers" and/or "biometric information" without first obtaining Plaintiffs' informed written consent.

115. Defendant also violated Section 15(b) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

116. Defendant violated of Section 15(b)(2) of BIPA by failing to inform Plaintiffs in writing of the specific purpose and length of term for which Plaintiffs' "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

117. Defendant violated of Section 15(b)(2) of BIPA by failing to inform putative class members in writing of the specific purpose and length of term for which their "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

118. As explained above, Defendant collected, used and/or stored the "biometric identifiers" and/or "biometric information" of the Plaintiffs and the putative

class members in violation of the prohibitions and requirements set forth by Section 15(b) of BIPA.

119.    As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members before Defendant collected, used, modified and/or stored their "biometric identifiers" and/or "biometric information."

120.    During the week of April 3, 2023, and continuing until at least April 14, 2023, Defendant attempted to obtain *after-acquired* consent from its current employees by offering employees payments of $500 in exchange for signing a "CLAIM RELEASE FORM".

121.    The first paragraph of the CLAIM RELEASE FORM states as follows:

> The purpose of this RELEASE is to ask you to release any legal claims you have or may have against Old Dominion Freight Line, Inc. ("OD") under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and as described below in exchange for the consideration described below. You are under no obligation to sign this RELEASE and there will be no negative employment consequences for not signing it.

122.    The second paragraph of the CLAIM RELEASE FORM states as follows:

> OD makes you the following offer: in exchange for signing this RELEASE and waiving the rights discussed below, OD will pay you the gross amount of Five Hundred Dollars ($500.00), less applicable payroll withholdings, within five (5) business days following OD's receipt of your signed RELEASE. The payment will be made in the manner by which you regularly receive your paychecks from OD.

123.    The third paragraph of the CLAIM RELEASE FORM states as follows:

> By signing this RELEASE, you will voluntarily release OD, related entities, their predecessors, insurers, successors and assigns, and their current and former employees, directors, shareholders, and agents, both individually and in their business capacities (the "Releasee(s)"), from all claims, known and unknown, which you may have against any Releasee as of the date you sign this RELEASE that: (i) arise under the BIPA, or (ii) are otherwise associated with any alleged biometric identifiers or biometric information collected, captured, used, stored, disclosed, disseminated, transmitted, or otherwise obtained by OD.

124.    Defendant continued to receive signed CLAIM RELEASE FORMS after learning that this lawsuit was filed.

23

125. More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee of the pendency of this putative class action.

126. More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee that the undersigned was counsel for the putative class action.

127. More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee of the pendency of this putative class action.

128. More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee that the undersigned was counsel for the putative class action.

129. Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

130. The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(b)(2) of BIPA. [2]

131. The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

132. Common questions of law and fact exist.

133. The claims in this Court which assert that Defendant violated Section 15(b)(2) of BIPA by requiring Plaintiffs to use a time clock system that collected,

---

[2] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

captured, and otherwise obtained Plaintiffs' "biometric information" and/or "biometric identifiers" *without* Plaintiffs' express written consent - is typical of the claims of putative class members.

134.    Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

135.    The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

136.    The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

137.    The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

138.    The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

139.    Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being

granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Declaring that Defendant violated Section 15(b)(2) of BIPA;

b. Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;

c. Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";

d. Awarding liquidated damages for negligent violations of Section 15(b)(2);

e. Awarding liquidated damages for intentional and/or reckless violations of Section 15(b)(2);

f. Awarding reasonable attorney's fees and costs;

g. Enjoining Defendant from further violations of Section 15(b)(2);

h. Certifying the proposed Class set forth above;

i. Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j. Appointing Plaintiffs' counsel as class counsel.

**Count III – Asserting Violations of Section 15(b)(3) of BIPA**

140. Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

141. Section 15(b) of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

142. BIPA defines "[w]ritten release" as "informed written consent." 740 ILCS 14/10.

143. Defendant violated Section 15(b)(3) of BIPA because it collected Plaintiffs' "biometric identifiers" and/or "biometric information" without first obtaining Plaintiffs' informed written consent.

144. Defendant also violated Section 15(b)(3) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

145. Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiffs in writing that it was storing and/or collecting Plaintiffs' "biometric identifiers" or "biometric information." 740 ILCS 14/15(b)(1).

146. Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release from Plaintiffs before Defendant collected Plaintiffs' "biometric identifiers" and/or "biometric information." 740 ILCS 14/15(b)(3).

147. Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release from putative class members before Defendant collected their "biometric identifiers" and/or "biometric information." 740 ILCS 14/15(b)(3).

148. As explained above, Defendant collected, used and/or stored the "biometric identifiers" and/or "biometric information" of the Plaintiffs and the putative class members in violation of the prohibitions and requirements set forth by Section 15(b)(3) of BIPA.

149. As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members before Defendant collected, used, modified and/or stored their "biometric identifiers" and/or "biometric information."

150. During the week of April 3, 2023, and continuing until at least April 14, 2023, Defendant attempted to obtain *after-acquired* consent from its current employees by offering employees payments of $500 in exchange for signing a "CLAIM RELEASE FORM".

151. The first paragraph of the CLAIM RELEASE FORM states as follows:

The purpose of this RELEASE is to ask you to release any legal claims you have or may have against Old Dominion Freight Line, Inc. ("OD") under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and as described below in exchange for the consideration described below. You are under no obligation to sign this RELEASE and there will be no negative employment consequences for not signing it.

152. The second paragraph of the CLAIM RELEASE FORM states as follows:

OD makes you the following offer: in exchange for signing this RELEASE and waiving the rights discussed below, OD will pay you the gross amount of Five Hundred Dollars ($500.00), less applicable payroll withholdings, within five (5) business days following OD's receipt of your signed RELEASE. The payment will be made in the manner by which you regularly receive your paychecks from OD.

153. The third paragraph of the CLAIM RELEASE FORM states as follows:

By signing this RELEASE, you will voluntarily release OD, related entities, their predecessors, insurers, successors and assigns, and their current and former employees, directors, shareholders, and agents, both individually and in their business capacities (the "Releasee(s)"), from all claims, known and unknown, which you may have against any Releasee as of the date you sign this RELEASE that: (i) arise under the BIPA, or (ii) are otherwise associated with any alleged biometric identifiers or biometric information collected, captured, used, stored, disclosed, disseminated, transmitted, or otherwise obtained by OD.

154. Defendant continued to receive signed CLAIM RELEASE FORMS after learning that this lawsuit was filed.

155.   More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee of the pendency of this putative class action.

156.   More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee that the undersigned was counsel for the putative class action.

157.   More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee of the pendency of this putative class action.

158.   More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee that the undersigned was counsel for the putative class action.

159.   Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

160.   The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(b)(3) of BIPA. [3]

161.   The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

162.   Common questions of law and fact exist.

163.   The claims in this Court which assert that Defendant violated Section 15(b) of BIPA by requiring Plaintiffs to use a time clock system that collected, captured, and

---

[3] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

otherwise obtained Plaintiffs' "biometric information" and/or "biometric identifiers" *without* Plaintiffs' express written consent - is typical of the claims of putative class members.

164.   Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

165.   The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

166.   The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

167.   The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

168.   The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

169.   Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being

granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Declaring that Defendant violated Section 15(b)(3) of BIPA;

b. Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;

c. Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";

d. Awarding liquidated damages for negligent violations of Section 15(b);

e. Awarding liquidated damages for intentional and/or reckless violations of Section 15(b)(3);

f. Awarding reasonable attorney's fees and costs;

g. Enjoining Defendant from further violations of Section 15(b)(3);

h. Certifying the proposed Class set forth above;

i. Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j. Appointing Plaintiffs' counsel as class counsel.


**Jury Demand**

Plaintiffs demand a jury trial.


/s/ James C. Vlahakis

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
312-766-0511 (office)
312-648-6127 (direct)
jamesv@vlahakislaw.com

*Counsel for Plaintiffs and*

*the putative class members*