**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN KARARO, SEAN WALKER, TRI MINH LA, MELVYN L. CAISON, JR. and IAN TRAVIS, individually and on behalf of all other similarly situated current and former employees, | ) ) ) ) Case No. 23-cv-02187 ) |
| Plaintiffs, | ) ) |
| V. | ) District Judge Jorge L. Alonso ) Magistrate Judge Heather K. McShain ) |
| OLD DOMINION FREIGHT LINE INC., | ) ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

Jody Kahn Mason
Jason A. Selvey
Hannah Griffin Garlough
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL  60601
Phone: (312) 787-4949
Facsimile (312) 787-4995
Jody.Mason@jacksonlewis.com
Jason.Selvey@jacksonlewis.com
Hannah.Garlough@jacksonlewis.com

Plaintiffs are current and former employees of Defendant Old Dominion Freight Line, Inc. ("Old Dominion"). In their Third Amended Class Action Complaint (Dkt. 47, "Complaint"), Plaintiffs bring claims against Old Dominion, on behalf of themselves and a putative class of current and former employees, for alleged violations of Sections 15(b)(1), (2), and (3) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Plaintiffs' Complaint fails to state a claim and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for several reasons.

*First*, Plaintiffs have pled themselves out of court as to Counts I and II for violation of Sections 15(b)(1) and 15(b)(2), respectively, by incorporating by reference the Old Dominion Freight Line, Inc. Employee Handbook (the "Employee Handbook"), *see* Dkt. 47 at ¶¶ 46-49. While Old Dominion does not concede that it collected Plaintiffs' or the putative class members' "biometric identifiers" or "biometric information" within the meaning of BIPA, to the extent that Old Dominion was required to comply with the requirements Sections 15(b)(1)-(2), Old Dominion satisfied that obligation. The Employee Handbook satisfies the requirements of Section 15(b)(1) as a matter of law because it provides employees with written notice that "a biometric identifier or biometric information is being collected or stored." 740 ILCS 14/15(b)(1). The Employee Handbook further satisfies the requirements of Section 15(b)(2) as a matter of law because it provides employees with written notice "of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(2). As the Employee Handbook has been in place since April 2018, Plaintiffs are foreclosed from recovering under Sections 15(b)(1) and 15(b)(2). Accordingly, the Court should dismiss Counts I and II with prejudice.

***Second***, Plaintiffs' claims are barred in their entirety by the doctrine of laches. Plaintiffs' Complaint reflects that, to the prejudice of Old Dominion, they waited years to bring their claims for alleged violations of BIPA even though each Plaintiff alleges he knowingly and purposely scanned his finger on Old Dominion's time clock at least hundreds of times without objection, even after Old Dominion provided Plaintiffs and the putative class members explicit written notice about the timeclock at issue and how it worked. Plaintiffs' unreasonable delay in asserting their claims has prejudiced Old Dominion by denying it the opportunity to take any steps to address the conduct Plaintiffs now allege violates BIPA (to the extent necessary) while allowing Plaintiffs, theoretically, to continue to accrue potential liquidated damages, which they claim they incurred each of the hundreds of times they used the time clock, and for which they now seek to recover.

***Third***, Plaintiffs' claims are barred in their entirety by the doctrines of implied waiver and implied assumption of the risk. Plaintiffs allege that they scanned their fingers on the time clock at issue hundreds of times despite Old Dominion indisputably providing written notice of how their alleged biometric data was being collected, stored, and used. As a result, Plaintiffs impliedly consented to the collection of their alleged biometric data and knowingly waived their rights under BIPA.

***Finally***, the Court should dismiss the claims of Plaintiff Melvyn L. Caison, Jr. because he failed to disclose them in bankruptcy proceedings until forced to do so after Defendant filed its motion to dismiss Plaintiffs' Second Amended Complaint. By concealing his claims, Plaintiff Caison received benefits from the bankruptcy court, such as a stay of collection on his debts, and thus he is judicially estopped from pursuing his claims now.

## BACKGROUND

### A.  Plaintiffs Knowingly Scanned Their Fingers Hundreds of Times.[1]

Plaintiffs are current and former employees of Old Dominion. Plaintiff John Kararo is a current employee who has worked for Old Dominion since on or about October 6, 2021. (Dkt. 47, ¶ 3.) Plaintiff Ian Travis is a current employee who has worked for Old Dominion since on or about September 13, 2021. (*Id*., ¶ 8). Plaintiffs Sean Walker, Tri Minh La, and Melvyn L. Caison, Jr. are former employees of Old Dominion. (*Id.*, ¶¶ 4-7). Walker worked for Old Dominion from on or about May 2018 until March 23, 2023; La worked for Old Dominion from on or about January 11, 2021 until August 27, 2022; and Caison worked for Old Dominion from on or about September 11, 2013 until September 6, 2019. (*Id.*).

Plaintiffs allege that, "within the past five years," Old Dominion required each of them to use a Kronos Incorporated time clock system to track their hours worked. (*Id.* ¶¶ 15, 38). Plaintiffs allege that Old Dominion has utilized the Kronos time clock system since at least April of 2018. (*Id.*, ¶ 55). Plaintiffs allege that this time clock system "required Plaintiffs and other employees to scan, upload and/or use their unique fingerprint in order to use Defendant's time clock." (*Id*.,¶ 15) Plaintiffs further allege that "[t]he time clock utilized by Defendant used, captured, collected and/or stored the 'biometric identifiers' of Plaintiffs" when they clocked in and out of work. (*Id.*, ¶ 40). Kararo alleges that he used the time clock system at least 300 times. (*Id.,* ¶ 20). Walker alleges that he used the time clock system at least 600 times. (*Id.*, ¶ 21). La alleges that he used the timeclock system at least 600 times. (*Id.*, ¶ 22). Caison alleges that he used the time clock system

---

[1] Defendant takes the facts contained in Plaintiffs' Complaint as true solely for purposes of this motion, as it must, except where an exhibit attached to or referenced in the Complaint contradicts the Complaint's allegations, in which case the exhibit takes precedence. *See Phillips v. Prudential Ins. Co. of Am.,* 714 F.3d 1017, 1019-20 (7th Cir. 2013).

at least 600 times (*Id.*, ¶ 23). Travis alleges that he used the time clock system at least 300 times. (*Id.*, ¶ 24).

### B. Old Dominion's Employee Handbook Contains the Requisite BIPA Disclosures Under Section 15(b)(1-2).

Plaintiffs allege Old Dominion did not provide them and putative class members with the notices required by Section 15(b) of BIPA, despite "provid[ing] employees with notice of various Illinois laws under a so-called ADDENDUM E – FOR ILLINOIS EMPLOYEES ONLY[.]" (*Id.*, ¶¶ 48-49). This Addendum, depicted in Paragraph 48 of the Complaint, is part of the Employee Handbook. *See* Declaration of DeeDee Cox ("Cox Decl."), attached as Exhibit A, at ¶ 4.

Plaintiffs' argument is disingenuous. While there is no biometric-related disclosure in Addendum E of the Employee Handbook, the Employee Handbook includes the precise BIPA disclosure that Plaintiffs allege they did not receive elsewhere. Specifically, the Employee Handbook contains an entire section entitled "Biometric Information Privacy Policy," which states in relevant part:

> In order to efficiently and securely track employees' time records, Old Dominion Freight Line, Inc. ("ODFL" or the "Company") has engaged Kronos Inc. ("Kronos") to administer a biometric timekeeping system. Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries using the Kronos Touch ID system (a biometric time clock).
> 
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **Biometric Identifier/Information Collection:** Kronos utilizes biometric technology for the purpose of identifying employees ad recording time entries using the Kronos Touch ID system. As part of this system, Kronos collects and/or stores an employee's … "biometric template"[.]
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **Storage:** The Kronos Touch ID system does not retain or store images of an employee's fingerprint scans. Instead, a biometric algorithm using feature extraction creates a unique template which is effectively an encoded, mathematical representation of an employee's fingerprint.
> 
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> **Retention Schedule:** … Biometric templates are stored on the Touch ID Plus device and are used to compare a live fingerprint scan each time an employee clocks in or out. At no time are any images of an employee's fingerprints stored … An

4

> employee's biometric information (i.e., biometric template) will be retained only until the initial purpose for collecting or obtaining the biometric identifiers or information has been satisfied, or within 3 years of the employee's last interaction with the Company, whichever occurs first.

*See* Cox Decl. at ¶ 6, and Ex. 1 thereto.[2]

### C. Despite the Employee Handbook's BIPA Disclosures, Plaintiffs Have Alleged Violations of Section 15(b)(1-2) of BIPA.

Plaintiffs bring three counts against Old Dominion for violations of Section 15(b) of BIPA on behalf of themselves and a putative class of current and former Old Dominion employees. In Count I of the Complaint, Plaintiffs allege that Old Dominion violated Section 15(b)(1) of BIPA by allegedly failing to inform them and putative class members in writing that it was storing and/or collecting their alleged biometric identifiers or biometric information. (Dkt. 47, ¶¶ 87-88). In Count II, Plaintiffs allege that Old Dominion violated Section 15(b)(2) of BIPA by allegedly failing to inform them and putative class members in writing of the specific purpose and length of term for which their alleged biometric identifiers or biometric information was being collected, stored, and used. (*Id.,* ¶¶ 116-117). In Count III of the Complaint, Plaintiffs allege that Old Dominion violated Section 15(b)(3) of BIPA by allegedly failing to obtain a written release from Plaintiffs and putative class members before collecting their biometric information or biometric identifiers. (*Id.,* ¶¶ 146-147). Plaintiffs appear to seek between $250 and $1,000 for each purported violation of BIPA. (*Id.* ¶ 58).

---

[2] The Employee Handbook has been revised from time to time. Since April 2018, the Biometric Information Privacy Policy ("Policy") contained in the Employee Handbook contained a BIPA disclosure substantively similar to the language quoted above, which appears in the 2018 Employee Handbook. Subsequent versions of the Policy as contained in the Employee Handbook are attached as Group Exhibit 2 to the Declaration of DeeDee Cox, Ex. A hereto.

**LEGAL STANDARD**

Under Rule 12(b)(6), dismissal is appropriate when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). Claims are facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.,* 722 F.3d 911, 915 (7th Cir. 2013). That means plaintiffs cannot "merely parrot statutory language of the claims … rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see also Iqbal,* 556 U.S. at 678 ("legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

In ruling on a motion to dismiss, this Court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips*, 714 F.3d at 1019-20. To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. *Id.* at 1020. Where an exhibit attached to or referenced in a complaint reveals facts which foreclose recovery as a matter of law, dismissal is appropriate. *Id.*; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

**ARGUMENT**

I. **Count I Fails Because the Biometric Information Privacy Policy, Incorporated by Reference Into the Complaint, Satisfies Section 15(b)(1) as a Matter of Law.**

The Court should dismiss Count I because Old Dominion has complied in full with Section 15(b)(1) of BIPA to the extent it was required to so comply. Section 15(b)(1) requires that private

6

entities which collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information must "inform[] the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored." 740 ILCS 14/15(b)(1).

While Old Dominion does not concede that it "collected" Plaintiffs' or putative class members' "biometric identifiers or biometric information" within the meaning of BIPA, to the extent that Old Dominion was required to comply with Section 15(b)(1), Old Dominion did exactly that. The Employee Handbook clearly disclosed, in writing and on its own page, that Old Dominion's timekeeping system "utilizes biometric technology" and "collects and/or stores an employee's biometric identifiers or information ('biometric template')." (Cox. Decl. Ex. 1.) Further, the Handbook goes on to explain exactly *how* the Kronos timekeeping system at issue works, providing even more detail than required by Section 15(b)(1):

> The Kronos Touch ID system does not retain or store images of an employee's fingerprint scans. Instead, a biometric algorithm using feature extraction creates a unique template which is effectively an encoded, mathematical representation of an employee's fingerprint. … Biometric templates are stored on the Touch ID Plus device and are used to compare a live fingerprint scan each time an employee clocks in or out. At no time are any images of an employee's fingerprints stored[.]

(*Id*.).

Since April 2018, the Employee Handbook has contained a written disclosure that Old Dominion is utilizing a timekeeping system that collects and stores data derived from employee finger scan, as Plaintiffs allege it did. *See* Cox Decl. Exs. 1-2. Indeed, Plaintiffs also concede that Old Dominion provides the Employee Handbook to its employees. (Dkt. 42, ¶¶ 46-49). Accordingly, to the extent it was required to, Old Dominion has complied with Section 15(b)(1), which forecloses Plaintiffs' and the putative class members' claims for violation of Section 15(b)(1) of BIPA. Thus, the Court should dismiss Count I, with prejudice, for failure to state a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Phillips*, 714 F.3d at 1020 (dismissing breach of contract claim with prejudice based on interpretation of insurance policy referenced in complaint); *Bogie*, 705 F.3d at 609 (dismissing plaintiff's invasion of privacy claim with prejudice where videotape footage referenced in the complaint established that plaintiff had no expectation of privacy as a matter of law).

II. **Count II Fails Because the Biometric Information Privacy Policy Incorporated by Reference into the Complaint, Satisfies Section 15(b)(2) as a Matter of Law.**

The Court should dismiss Count II because Old Dominion, to the extent it was ever required to, has complied in full with Section 15(b)(2) of BIPA. Section 15(b)(2) requires that private entities which collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information must "inform[] the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used[.]" 740 ILCS 14/15(b)(2). While Old Dominion does not concede that Section 15(b)(2) applies to it, Plaintiffs or the putative class, Old Dominion has nonetheless complied with its requirements. The express Biometric Information Privacy Policy contained in Old Dominion's Employee Handbook provides in writing the specific purpose for which it uses any biometric data, stating:

> In order to efficiently and securely track employees' time records, Old Dominion Freight Line, Inc. ("ODFL" or the "Company") has engaged Kronos Inc. ("Kronos") to administer a biometric timekeeping system. Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries[.]

The Handbook further informs employees of the length of time for which Old Dominion will retain any biometric data, stating:

> Biometric templates are stored on the Touch ID Plus device and are used to compare a live fingerprint scan each time an employee clocks in or out. At no time are any images of an employee's fingerprints stored … An employee's biometric information (i.e., biometric template) will be retained only until the initial purpose

8

for collecting or obtaining the biometric identifiers or information has been satisfied, or within 3 years of the employee's last interaction with the Company, whichever occurs first.

(Cox. Decl. Ex. 1.)

Plaintiffs concede that Old Dominion provides the Employee Handbook to its employees. (Dkt. 42, ¶¶ 46-49). Accordingly, the Employee Handbook forecloses Plaintiffs' and the putative class members' ability to state a claim for violation of Section 15(b)(2), and the Court must dismiss Count II of the Complaint with prejudice. *See Phillips*, 714 F.3d at 1020; *Bogie*, 705 F.3d at 609.

### III. Plaintiffs' Claims Are Barred in Their Entirety by the Doctrine of Laches.

Plaintiffs' claims should be dismissed pursuant to the doctrine of laches, which "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant."[3] *AMTRAK v. Morgan*, 536 U.S. 101, 121 (2002*); see also W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 678 (7th Cir. 2015) (applying Illinois law). "The doctrine of laches is grounded on the principle that courts are reluctant to come to the aid of a party who knowingly slept on his rights to the detriment of the other party." *W. Bend Mut. Ins. Co.*, 784 F.3d at 678 (citation omitted). Here, Plaintiffs unreasonably delayed in asserting alleged violations of Section 15(b) of BIPA despite having actual or constructive knowledge of the harm they allegedly suffered (if any) and their rights under the statute, which has prejudiced Old Dominion.

Here, it is clear from the face of the complaint that Plaintiffs and the putative class have been on notice for years that they have been using a biometric timeclock that requires them to scan their fingers and allegedly doing so with the compliance measures contained in Section 15(b) of BIPA. Plaintiffs claim that Old Dominion "has been utilizing a biometric time clock since 2018." (Dkt. 47, ¶ 44). Plaintiffs allege that each time they or putative class members logged in or out of

---

[3] Federal courts may rule on affirmative defenses on a Rule 12(b)(6) motion when no factual information outside of what is properly before the court is needed to rule. *Muhammad v. Oliver,* 547 F.3d 874, 878 (7th Cir. 2008).

9

work they were required to "scan, upload, and/or use their unique fingerprint" on Old Dominion's timeclock system. (*Id.* ¶¶ 14-15). Indeed, each Plaintiff alleges they used the timeclock *at least* hundreds of times during the course of their employment. Kararo used the timeclock "at least 300 times" (*id.*, ¶ 20); Walker used the timeclock "at least 600 times" (*id.*, ¶ 21); La used the timeclock "at least 600 times" (*id.*, ¶ 22); Caison used the timeclock "at least 600 times" (*id.*, ¶ 23); and Travis used the timeclock "at least 300 times" (*id.*, ¶ 24).

Plaintiffs allege that Old Dominion failed to provide Plaintiffs and the putative class with the notice required by Section 15(b)(1)-(2) of BIPA. (*Id.* ¶¶ 87-88, 146-147). Nonetheless, as explained above (*supra*, Sections I-II), since April 2018, Old Dominion has provided its employees with a Biometric Information Privacy Policy which provides express written notice about Old Dominion's utilization of the timekeeping device at issue and how alleged biometric data is collected, used, and stored. Yet, despite scanning their fingers, or as they allege, "fingerprints," on the Kronos timeclock at issue every single time they logged in or out of work, Plaintiffs do *not* allege that they complained or objected to providing their alleged biometric data at any point in time. Plaintiffs do not even allege that they ever asked for more information about the timeclock, how their alleged biometric data was used or stored, or for how long their alleged biometric data would be retained or stored. Moreover, despite being on actual notice of the existence of laws potentially regulating the use of biometric technology, like BIPA, the Complaint offers no explanation as to why Plaintiffs delayed for years in asserting their alleged claims for violation of BIPA. Accordingly, this delay is unreasonable as shown on the face of the Complaint. *See Szymanski v. Glen of S. Barrington Prop. Owners Ass'n*, 293 Ill. App. 3d 911, 912 (1st Dist. 1997) (dismissing complaint for failure to state a claim where complaint offered no explanation as to

why Plaintiffs delayed in bringing claim that construction violated restrictive covenant agreement despite being aware of plans for four years before bringing suit).

The prejudice suffered by Old Dominion because of the Plaintiffs' unreasonable delay in asserting any issues or alleging violations of BIPA is common sense and apparent on the face of the Complaint. While Old Dominion denies that it violated BIPA, Plaintiffs knowingly denied Old Dominion the opportunity to address any issues raised by Plaintiffs' newly-asserted complaints. By failing to bring their claims when they were first aware that their biometric data was allegedly being collected, and by failing to even complain or ask questions about or object to providing their alleged biometric data, Plaintiffs deprived Old Dominion of the opportunity to address (to the extent necessary) the concerns of Plaintiffs and others in real-time. This is exactly the type of result Illinois Supreme Court Justice Overstreet warned against in his dissenting opinion in *Cothron v. White Castle Systems*, writing "[u]nder the majority's rule, plaintiffs would be incentivized to delay bringing their claims as long as possible" in order "to keep racking up damages." 2023 IL 128004, ¶ 60.

Because Plaintiffs unreasonably delayed in bringing their claims against Old Dominion, to its prejudice, they are barred from recovering by the doctrine of *laches* and the Complaint should be dismissed in its entirety, with prejudice.

**IV.** **Plaintiffs' Claims Are Barred By the Doctrines of Waiver and Assumption of the Risk.**

Plaintiffs allege that they each scanned their finger, or as they claim, "fingerprints," hundreds of times despite being on notice the data derived from those finger scans was being collected, stored, and used (*supra*, Section I-II). As a result, Plaintiffs impliedly consented to the collection of their purported biometric data, thereby waiving their rights under BIPA or excusing Old Dominion from compliance with BIPA regardless of whether it was otherwise required to

11

comply (and it was not).[4] An individual "may waive a statutory right as long as there was an intentional relinquishment of a known right." *Vill. of Bellwood v. Am. Nat'l Bank & Trust Co. of Chicago*, 2011 IL App (1st) 093115, ¶ 25. Implied waiver occurs where "conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive [the right]." *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 326 (Ill. 2004). Here, by scanning their fingers hundreds of times, the only logical conclusion under the facts and law is that Plaintiffs' claims are waived. Relatedly, "implied assumption of risk is an affirmative defense that arises where the plaintiff's conduct indicates that he has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist." *Edwards v. Lombardi*, 2013 IL App (3d) 120518, ¶ 18 (quotation marks omitted).

Here, Plaintiffs' conduct establishes that they impliedly consented to the collection of their purported biometric data. As explained more fully above (*supra,* Sections I-II), Old Dominion provided Plaintiffs and the putative class the requisite written notice under Section 15(b) in its Employee Handbook, including that it utilized an alleged biometric timekeeping device. (Cox Decl. Ex. 1-2). The Employee Handbook further informed Plaintiffs and the putative class in writing not only that data generated from their finger scans was being collected, but also exactly *how* the timekeeping system collects, uses, and stores the data. (*Id.*) Despite receiving this written notice, Plaintiffs each continued to scan their fingers on Old Dominion's time clock system, each and every time they logged in and out of work. (Dkt. 14, at ¶ 14). Plaintiffs do not allege that they ever objected or complained about doing so. In using the timekeeping system under these circumstances, Plaintiffs demonstrated an intent to waive their statutory rights under BIPA and to

---

[4] In making these arguments, Old Dominion does not waive, and expressly reserves, the right to later argue that Plaintiffs and the putative class expressly consented to the use of the timeclock at issue, which Old Dominion contends they did.

12

assume any attendant risk of harm from the use of the time clock (if any), thereby excusing Old Dominion from compliance with the requirements BIPA, to the extent they apply at all. As such, Plaintiffs cannot now assert a claim for relief under BIPA.

### V.     **Plaintiff Caison's Claims Are Barred by the Doctrine of Judicial Estoppel.**

The Court should dismiss Plaintiff Caison's claims with prejudice because they are barred by the equitable doctrine of judicial estoppel because Caison failed to disclose his claims against Old Dominion in his Chapter 13 bankruptcy petition or in subsequent bankruptcy filings until after Defendant filed its first motion to dismiss and Caison received benefits from the bankruptcy court, including the entry of an automatic stay.[5] Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (internal citations and quotations omitted). Where a party asserts a position in a legal proceeding and obtains a benefit, a court may invoke judicial estoppel to prevent the party from later taking a contrary position to obtain another benefit. *Id.* at 749-751. The law is clear that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (collecting cases).

Moreover, a discharge is not required to trigger the application of judicial estoppel to undisclosed claims and the doctrine applies even while the bankruptcy is still pending. The Seventh Circuit has held that "a debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future." *Williams v.*

---

[5] This Court may take judicial notice of publicly filed documents in ruling on a Rule 12(b)(6) motion to dismiss, without converting the motion to one for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

13

*Hainje*, 375 Fed. Appx. 625 (7th Cir. 2010). In *Williams*, the Seventh Circuit held that a Chapter 13 debtor was judicially estopped from pursuing the civil rights claim he failed to disclose to the bankruptcy court before receiving the benefits of an automatic stay and a reorganization plan that substantially reduced his debts. *Id.* at 627-828. The Seventh Circuit affirmed the lower court's entry of summary judgment in favor of the defendant in the civil rights action and rejected the plaintiffs' argument that the doctrine of judicial estoppel did not apply because the bankruptcy case was still pending and he had amended his disclosures after defendant moved for summary judgment. *Id.* at 627. "To hold otherwise," the Court noted, "would give debtors an incentive to game the bankruptcy system[,]" which would "undermine both the primary aim of judicial estoppel, which is to protect the integrity of the judicial process, and the bankruptcy law's goal of unearthing all assets for the benefit of creditors." *Id.* at 628 (internal citations omitted).

*Williams* is dispositive. Plaintiff Caison filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois in January 2018. *See* Case No. 18-00192, Dkt. 1 (Bankr. N.D. Ill.). Like the plaintiffs in *Cannon-Stokes* and *Williams*, Plaintiff Caison was required to disclose the claims he asserts in this action as contingent assets in his bankruptcy proceedings and supplement those disclosures to include any assets acquired after the commencement of the case. *See* 11 U.S.C. § 1306. In his publicly filed Schedule of Assets that was included in the Chapter 13 Bankruptcy Plan filed by Plaintiff Caison on March 6, 2018, and approved by the Court, he failed to disclose the existence of his claims against Old Dominion. *See* Case No. 18-00192, Dkt. 33 (Bankr. N.D. Ill.). Yet, Caison also alleges that Old Dominion "has been utilizing a biometric time clock since 2018." (Dkt. 42, ¶ 44). And, as set forth above, Old Dominion has provided express written notice of the use of the alleged biometric time clock since April 2018. (*Supra,* Sections I-II). Further, Caison admits he used the alleged biometric time clock

14

at least 600 times before he left Old Dominion in 2019. (Dkt. 42, ¶¶ 7, 23.) Accordingly, Caison had notice of his purported claims years ago, but he failed to disclose them to the bankruptcy court until after Defendant raised the issue in seeking dismissal.

Despite being named as a plaintiff in the instant action on May 10, 2023 (dkt. 14), when he was undeniably aware of the claims he asserts here, Caison failed to amend the Schedule of Assets with Bankruptcy Court *until August 11, 2023*. *See* Case No. 18-00192, Dkt. 87 (Bankr. N.D. Ill.). Indeed, Caison did not disclose his claims to the bankruptcy court until nearly two months after Old Dominion raised Caison's concealment in its Motion to Dismiss Plaintiffs' Second Amended Complaint. (Dkt. 23). Caison cannot argue that his concealment of his claims was inadvertent. Indeed, he alleges that he used Old Dominion's purported biometric clock "at least 600 times." (Dkt. 47, ¶ 23). Caison claims that Old Dominion owes him up to $1,000 for each time he used the clock. (*Id*. ¶ 58). It is impossible to believe that Caison overlooked such a sizable claim that was central to his daily activities at work until August 11, 2023 when he realized Old Dominion was aware and seeking dismissal.

Throughout the time that Caison kept this claim concealed from the bankruptcy court, Caison continued to receive the benefits of an automatic stay and a reorganization plan that substantially reduced his debts. Accordingly, Caison is judicially estopped from pursuing his concealed claims and the Court should dismiss Caison's claims in their entirety, with prejudice.

## CONCLUSION

For the foregoing reasons, Old Dominion respectfully requests that the Court dismiss Plaintiffs' Third Amended putative Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice and grant Old Dominion any additional relief deemed just and appropriate.

Dated: September 15, 2023	Respectfully submitted,

**OLD DOMINION FREIGHT LINE, INC.**

By: /s/ *Jody Kahn Mason*
     One of Its Attorneys

## CERTIFICATE OF SERVICE

I, Jody Kahn Mason, an attorney, certify that on September 15, 2023, I caused a true and correct copy of the attached ***Defendant's Memorandum In Support of Its Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint*** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's system.

/s/ *Jody Kahn Mason*