**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN KARARO, SEAN WALKER, TRI MINH LA, MELVYN L. CAISON JR., IAN TRAVIS, DIEGO DELGADO, GABRIEL CASTELLANO and JUAN CARLOS GARCIA, individually and on behalf of all similarly situated current and former employees, | Case No. 23-cv-02187 The Honorable Jorge L. Alonso Magistrate Judge Heather K. McShain |
| Plaintiffs, | |
| v. | Jury Trial Demanded |
| OLD DOMINION FREIGHT LINE INC., | |
| Defendant. | |

**FOURTH AMENDED CLASS ACTION COMPLAINT**

NOW COME Plaintiffs JOHN KARARO, TRI MINH LA, SEAN WALKER, MELVYN L. CAISON JR., IAN TRAVIS, DIEGO DELGADO, GABRIEL CASTELLANO and JUAN CARLOS GARCIA, as proposed class representatives (at times "the Plaintiffs"), by and through their attorney, James C. Vlahakis, and assert the following claims against Defendant OLD DOMINION FREIGHT LINE INC. pursuant to the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

**I. Parties, Jurisdiction and Venue**

1. Plaintiff JOHN KARARO ("Kararo") is a citizen of Illinois and resides in this judicial district. Plaintiff Kararo is a current employee of Defendant who has worked for Defendant at a facility located in Crest Hill, Illinois, since on or about October 6, 2021.

2. Defendant OLD DOMINION FREIGHT LINE INC. ("Defendant") conducts business in the State of Illinois and within this judicial district.

3. Plaintiff Sean Walker ("Walker") is a former employee of Defendant who worked at facilities located in Des Plaines, Illinois (starting in May of 2018) and

Montgomery, Illinois (starting in January 2022). Plaintiff Walker ended his employment with Defendant on or about March 23, 2023.

4.     Plaintiff TRI MINH La ("La") is a former employee of Defendant who was employed by Defendant between January 11, 2021, until on or about August 27, 2022.

5.     Plaintiff MELVYN L. CAISON JR. ("Caison") is a former employee of Defendant who worked for Defendant at a facility located in Forestview, Illinois from on or about September 11, 2013, until on or about September 6, 2019.

6.     Plaintiff IAN TRAVIS ("Travis") is a current employee of Defendant who began working at Defendant's Montgomery, Illinois facility on or about September 13, 2021, and he transferred to the Crest Hill facility in or around January of 2022, and is employed as a dockworker.

7.     Plaintiff DIEGO DELGADO ("Delgado") is a former employee of Defendant who worked for Defendant at a facility located in Montgomery, Illinois from on or about August 14, 2017, to March 10, 2023, and worked as a line haul driver.

8.     Plaintiff GABRIEL CASTELLANO ("Castellano") ss a former employee of Defendant who worked for Defendant at a facility located in Forest View, Illinois from on or about October 27, 2021, to December 13, 2022, and worked as a short haul driver.

9.     Plaintiff JUAN CARLOS GARCIA ("Garcia") is a former employee of Defendant who worked for Defendant at a facility located in Des Plaines, Illinois from on or about November 2017, to April 2023, and worked as line haul driver.

10.    Defendant is a Virginia corporation and maintains its corporate office in Thomasville, North Carolina. Defendant's registered agent is CT Corporation System, 208 S. LaSalle St. Suite 814, Chicago IL 60604.

11.     This Court has personal jurisdiction over Defendant because it maintains a business location in this judicial district and Defendant has violated BIPA through its business practices conducted within this judicial district.

12.     As detailed below, this Court has subject matter jurisdiction over Plaintiffs' individual claims on the basis of diversity jurisdiction. See, 28 U.S.C. § 1332.

13.     BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

14.     As detailed below, during Plaintiffs' employment with Defendant, Defendant utilized time clock devices provided by Kronos, Inc. that required each Plaintiff and other employees to scan, upload and/or use at least one form of a unique "biometric identifier" in order allow Plaintiffs and other employees to log in and out of Defendant's time clock devices.

15.     Defendant's Kronos based time clock system required Plaintiffs and other employees to scan, upload and/or use their unique fingerprint in order to use Defendant's time clock.

16.     Defendant's time clock system utilized, collected, stored and otherwise obtained the unique biometric identifiers of Plaintiffs and other similarly situated employees in violation of the prohibition set forth by BIPA.

17.     "[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States[.]" 28 U.S.C. § 1332.

18.     As alleged above, each Plaintiff is a citizen of the State of Illinois and Defendant is a foreign corporation with its headquarters and principal place of business located outside the State of Illinois.

19.     Each Plaintiff could recover $75,000.00 in statutory damages by using Defendant's time clock system a minimum of seventy-five (75) times if a jury were to award each Plaintiff $1,000 in liquidated damages.

20.     Plaintiff Kararo has utilized Defendant's biometric time clock system at least 300 times. Discovery shows that Kararo utilized Defendant's biometric time clock system over 800 times. See, ODFL 001619-001643.

21.     Plaintiff Walker utilized Defendant's biometric time clock system at least 600 times. Discovery shows that Walker used Defendant's biometric time clock system approximately 2,000 times. See, ODFL 002331-002357, 002381-002414.

22.     Discovery shows that Plaintiff La utilized Defendant's biometric time clock system at least 600 times. See, ODFL 001760-0001776, 001939-001948, 002271-002274.

23.     Plaintiff Caison utilized Defendant's biometric time clock system at least 600 times. Discovery shows that Caison used Defendant's biometric time clock system approximately 1,600 times. See, ODFL 001280-001294.

24.     Plaintiff Travis has utilized Defendant's biometric time clock system at least 300 times. Discovery shows that Caison used Defendant's biometric time clock system approximately 2,000 times. See, ODFL 003590-003646.

25.     Plaintiff Delgado utilized Defendant's biometric time clock system at least 1,000 times.

26.     Plaintiff Castellano utilized Defendant's biometric time clock system at least 1,000 times.

27.     Plaintiff Garcia utilized Defendant's biometric time clock system at least 1,000 times.

28.     Each Plaintiff could recover $75,000.00 in statutory damages by using Defendant's time clock system 150 times if a jury were to award each Plaintiff up to $500 in liquidated damages.

29.     Each Plaintiff could recover $75,000.00 in statutory damages by using Defendant's time clock system 300 times if a jury were to award each Plaintiff up to $250 in liquidated damages.

30.     28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" Venue is proper in this judicial district, a substantial part of the events or omissions giving rise to Defendant's violations of BIPA took place within this district. Venue is also proper in this judicial district because each Plaintiff is a citizen of the State of Illinois, and they seek to vindicate their rights (and the rights of putative class members) as provided by BIPA. Further, venue is proper in this judicial district because Defendant's putative class members are all citizens of the State of Illinois.

## II.    The Biometric Privacy Act

31.     BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

32.     BIPA's express Legislative Findings provide as follows:

> (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

33.     The Illinois Supreme Court has recognized that BIPA "codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information." *Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019).

34.     A private entity's failure to comply with BIPA "is no mere 'technicality'", as the Illinois Supreme Court has explained:

> The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice *before* collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Id.* (emphasis supplied).

35.     BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

36.     BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

37.     BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

**III. Background Facts**

38.     As detailed below, within the past five years (the "Relevant Time Period"), Defendant required each Plaintiff, as well as other current and former employees (hereafter, "putative class members") to use a time clock system to track their hours worked.

39.     The time clock system utilized by Defendant required Plaintiffs and putative class members to input, use, upload and/or store one of their unique "biometric identifiers" in order to in an out of the time clock system.

40.     The time clock system utilized by Defendant used, captured, collected and/or stored the "biometric identifiers" of Plaintiffs and putative class members.

41. The time clock system utilized by Defendant required it to obtain written consent from Plaintiffs and putative class members *before* it was able to acquire or otherwise capture the "biometric identifiers" of Plaintiffs and putative class members.

42. BIPA provides that "[a] prevailing party may recover for each violation: ... (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater[.]" 740 ILCS 14/20(1).

43. Section 20(2) of BIPA provides that "[a] prevailing party may recover for each violation: ... (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater[.]" 740 ILCS 14/20(2).

44. Defendant has used a Kronos biometric time clock since at least 2018.

45. Defendant is a sophisticated company that researches and tracks specific requirements of wage and hour laws in the various states that it conducts business.

46. As depicted below, a screenshot of page 54 of Defendant's "2020 Employee Handbook" (identified in discovery as "Effective 07-08-2020" and produced as ODFL 00207) shows that Defendant provides employees with hyperlinks to various "Paid Family Medical Leave" statutes:

47.    As depicted below, a screenshot of Defendant's "2020 Employee Handbook" (depicted as ODFL 00350) shows that Defendant provides employees with hyperlinks to "applicable state and local paid sick leave laws."



48.    In contrast, none of Defendant's Employee Handbooks contained hyperlinks to the State of Illinois' Biometric Information Privacy Act.

**Defendant's 2018 Employee Handbook**

49.    Defendant's 2018 Employee Handbook consists of ninety-five (95) pages, which was produced by Defendant as ODFL 00057 to 00153 ODFL. See Exhibit A.

50.    Plaintiff Walker, who first started working for Defendant in May of 2018, was never provided with a paper copy of Defendant's 2018 Employee Handbook.

51.    Plaintiff Caison, who first started working for Defendant in 2013, was never provided with a paper copy of Defendant's 2018 Employee Handbook.

52.     Defendant did not provide Plaintiff Caison with an electronic version of Defendant's 2018 Employee Handbook at the time he was hired or on before his first day of work.

53.     Plaintiff Delgado, who first started working for Defendant in 2017, was never provided with a paper copy of Defendant's 2018 Employee Handbook.

54.     Plaintiff Garcia, who first started working for Defendant in 2017, was never provided with a paper copy of Defendant's 2018 Employee Handbook.

55.     Upon information and belief, Defendant does not consistently maintain records documenting whether it has provided employees with paper copies of its Employee Handbooks.

**Defendant's 2020 Employee Handbook**

56.     Defendant's 2020 Employee Handbook (identified in discovery as "Effective 07-08-2020") consists of one hundred and fifty-three (153) pages, which was produced by Defendant as ODFL 00154 to 00306 ODFL. See Exhibit B.

57.     Defendant's 2020 Employee Handbook (identified in discovery as "updated 8-25-2020") consists of one hundred and fifty-three (153) pages and was produced by Defendant as ODFL 00473 to 00625 ODFL. See Exhibit D.

58.     As discussed below, in relation to Plaintiffs' claims, there are no discernible differences between Defendant's Employee Handbook with an effective date of July 8, 2020, and Defendant's Employee Handbook was updated on August 25, 2020.

59.     Plaintiff Caison was never provided with a paper copy of either of Defendant's 2020 Employee Handbooks.

60.     Plaintiff Delgado was never provided with a paper copy of either of Defendant's 2020 Employee Handbooks.

61.     Plaintiff Garcia was never provided with a paper copy of either of Defendant's 2020 Employee Handbooks.

**Defendant's 2021 Employee Handbook**

62.     Defendant's 2021 Employee Handbook (identified in discovery as "updated 4-11-21") consists of one hundred and sixty (160) pages and was produced by Defendant as ODFL 00626 to ODFL 00785. See <u>Exhibit E</u>.

63.     Plaintiff Delgado was never provided with a paper copy of Defendant's 2021 Employee Handbook.

64.     Plaintiff Garcia was never provided with a paper copy of Defendant's 2021 Employee Handbook.

65.     Plaintiff Kararo, who started working for Defendant in October of 2021 was never provided with a paper copy of Defendant's 2021 Employee Handbook.

66.     Plaintiff Walker was never provided with a paper copy of Defendant's 2021 and 2022 Employee Handbooks.

67.     Plaintiff La was never provided with a paper copy of Defendant's 2021 Employee Handbook.

68.     Defendant did not provide Plaintiff La with an electronic version of Defendant's 2021 Employee Handbook at the time he was hired or on before his first day of work.

69.     Plaintiff Travis was never provided with a paper copy of Defendant's 2021 Employee Handbook.

**Defendant's 2022 Employee Handbook**

70.     Defendant's 2022 Employee Handbook (identified in discovery as "updated 8.12.2022") consists of one hundred and sixty-three (163) pages and was produced by Defendant as ODFL 00307 to 00469 ODFL. See <u>Exhibit C</u>.

11

71.     Plaintiff Kararo was never provided with a paper copy of Defendant's 2022 Employee Handbook.

72.     Defendant did not provide Plaintiff Kararo with an electronic link to its 2022 Employee Handbook.

73.     Plaintiff Walker was never provided with a paper copy of Defendant's 2022 Employee Handbook.

74.     Defendant did not provide Plaintiff Walker with an electronic link to its 2022 Employee Handbook.

75.     Plaintiff La was never provided with a paper copy of Defendant's 2022 Employee Handbook.

76.     Defendant did not provide Plaintiff La with an electronic link to its 2022 Employee Handbook.

77.     Plaintiff Travis was never provided with a paper copy of Defendant's 2022 Employee Handbook.

78.     Defendant did not provide Plaintiff Travis with an electronic link to its 2022 Employee Handbook.

79.     Plaintiff Castellano was never provided with a paper copy of Defendant's 2022 Employee Handbook.

80.     Upon information and belief, Defendant did not provide Plaintiff Castellano with an electronic link to its 2022 Employee Handbook.

81.     Plaintiff Delgado was never provided with a paper copy of Defendant's 2022 Employee Handbook.

82.     Upon information and belief, Defendant did not provide Plaintiff Delgado with an electronic link to its 2022 Employee Handbook.

83. Plaintiff Castellano was never provided with a paper copy of Defendant's 2022 Employee Handbook.

84. Upon information and belief, Defendant did not provide Plaintiff Castellano with an electronic link to its 2022 Employee Handbook.

85. Plaintiff Garcia was never provided with a paper copy of Defendant's 2022 Employee Handbook.

86. Upon information and belief, Defendant did not provide Plaintiff Garcia with an electronic link to its 2022 Employee Handbook.

**Defendant's 2023 Employee Handbook**

87. Defendant's 2023 Employee Handbook (identified in discovery as "updated 4.3.2023") consists of one hundred and sixty-three (163) pages and was produced by Defendant as ODFL 00786 to ODFL 00948. See Exhibit F.

88. Plaintiff Kararo was never provided with a paper copy of Defendant's 2023 Employee Handbook.

89. Upon information and belief, Defendant did not provide Plaintiff Kararo with an electronic link to its 2023 Employee Handbook which was updated April 3, 2023 (as reflected by ODFL's discovery response).

90. Plaintiff Walker, who ceased working for Defendant on or about March 23, 2023, was never provided with a paper copy of Defendant's 2023 Employee Handbook.

91. Plaintiff La, who ceased working for Defendant on or about August 27, 2022, was never provided with a paper copy of Defendant's 2023 Employee Handbook.

92. Plaintiff Travis was never provided with a paper copy of Defendant's 2023 Employee Handbook which was updated April 3, 2023 (as reflected by ODFL's discovery response).

93.     Defendant did not provide Plaintiff Travis with an electronic link to its 2023 Employee Handbook which was updated April 3, 2023 (as reflected by ODFL's discovery response).

94.     Plaintiff Delgado, who ceased working for Defendant in March of 2023, was never provided with a paper copy of Defendant's 2023 Employee Handbook.

95.     Plaintiff Castellano, who ceased working for Defendant in December of 2022, was never provided with a paper copy of Defendant's 2023 Employee Handbook.

96.     Plaintiff Garcia was never provided with a paper copy of Defendant's 2023 Employee Handbook which was updated April 3, 2023 (as reflected by ODFL's discovery response).

97.     Upon information and belief, Defendant did not provide Plaintiff Garcia with an electronic link to its 2023 Employee Handbook which was updated April 3, 2023 (as reflected by ODFL's discovery response).

98.     While Defendant did not provide Plaintiffs Delgado, Garcia, Castellano, Kararo, Caison, Walker and La with paper copies of any of the above-listed Employee Handbooks, Defendant chose to provide Plaintiffs Delgado, Garcia, Castellano, Kararo, Caison, Walker and La with paper copies of Defendant's Driver Handbook.

**IV. The Contents of Defendant's Voluminous Employee Handbooks**

**A. Defendant's 2018 Employee Handbook**

99.     As depicted below, a screenshot of the "Table of Contents" of Defendant's "2018 Employee Handbook" (taken from ODFL 00059) shows that Defendant identifies fifty-five (55) topics:



100. The above screenshot (from ODFL 00059) demonstrates that the fifty-five (55) listed in Defendant's 2018 Employee Handbook are not listed in alphabetic order.

101. As depicted by the above screenshot (taken from ODFL 00059), the Table of Contents for Defendant's 2018 Employee Handbook lists "ADDENDUM B - FOR ILLINOIS EMPLOYEES ONLY", referring to page 76 of Defendant's 2018 Handbook.

102. As depicted by the screenshot depicted on the following page (taken from ODFL 00134), the "ADDENDUM B - FOR ILLINOIS EMPLOYEES ONLY" did not contain any reference to the Illinois Biometric Information Privacy Act:



103. Despite the State of Illinois being the only state to provide employees with a private right of action for damages for the failure to inform employees of the use of biometric technologies, as depicted by the above screenshot, Defendant's 2018 Employee Handbook does not include any mention of Illinois Biometric Information Privacy Act under the page that it describes as "ADDENDUM B - FOR ILLINOIS EMPLOYEES ONLY".

104. Rather, as depicted by the screenshot depicted on the following page (taken from ODFL 00088-89), Defendant's discusses its use of biometric time-keeping technology under a group heading, "ALCOHOL AND DRUGS/BIOMETRIC INFORMATION PRIVACY POLICY" at page thirty (30) of its ninety-five (95) page 2018 Employee Handbook:

16



105.    According to Defendant's own words, it 2018 Employee Handbook defines "Biometric Identifier" and "Biometric Information" as follows:

> **Biometric Identifier defined**: "Biometric identifier" means a retina or iris scan, fingerprint or voiceprint, or scan of hand or face geometry.
> **Biometric Information defined**: "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.

106.    According to Defendant's own words, it 2018 Employee Handbook admits that the Kronos Touch ID system collects and/or stores biometric identifiers and biometric information:

> **Biometric Identifier/Information Collection**: Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries using the Kronos Touch ID system. As part of this system, Kronos collects and/or stores an employee's biometric identifiers and biometric information ("biometric template").

107. While Defendant's 2018 Employee Handbook (ODFL 00088) states that it "complies with all applicable laws", it does not refer Illinois employees to the State of Illinois' Biometric Information Privacy Act:

> **Compliance with Applicable Law:** ODFL will utilize its biometric timekeeping system and apply this policy in a manner that complies with all applicable laws. In the event of any conflict between applicable law and this policy and/or ODFL's biometric timekeeping system, applicable law will always control.

108. Plaintiffs Caison, Delgado and Garcia were never provided with a paper copy of Defendant's 2018 Employee Handbook.

### B. Defendant's 2020 Employee Handbook

109. As depicted below, a screenshot of the "Table of Contents" of Defendant's "2020 Employee Handbook" (taken from ODFL 00156) shows that Defendant identifies seventy (70) topics:



110. The above screenshot demonstrates that the seventy (70) topics listed in Defendant's 2020 Employee Handbook are not listed in alphabetic order.

18

111.    As depicted by the above screenshot, the Table of Contents for Defendant's 2020 Employee Handbook lists "ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY", referring to page 109 of Defendant's 2020 Employee Handbook.

112.    As depicted by the below screenshots the "ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY" that was contained in Defendant's 2020 Employee Handbook consisted of five (5) pages, 109 (ODFL 00262), 110 (ODFL 00263), 111(ODFL 00264), 112 (ODFL 00265) and 113 (ODFL 00266):



## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Old Dominion Freight Line, Inc.**
**Equal Opportunity, Sexual and Other Harassment and Non-Retaliation Policy - (Illinois Employees Only) -Revised July 1, 2019**

Old Dominion Freight Line, Inc. (Old Dominion) is an Equal Opportunity and Affirmative Action Employer. All personnel decisions will be made without regard to race, color, creed, religion, sex, national origin, gender identity, gender expression, sexual orientation, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s). In a continuing effort to ensure that all employees are treated with appropriate respect and dignity, Old Dominion reaffirms its commitment against harassment or discrimination in the work place. The policy of Equal Employment Opportunity applies to all policies and procedures relating to recruitment and hiring, compensation, benefits, and all other terms and conditions of employment

**EQUAL OPPORTUNITY**

Any employee who believes there has been a denial of equal opportunity has the responsibility to bring such matters immediately to Old Dominion's attention by one of the means stated in the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**SEXUAL HARASSMENT**

Harassment based on sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include sexually oriented jokes, posters and cartoons, lewd and sexually suggestive conduct toward or in the presence of others, unwelcome sexual overtures such as requests for dates and social engagements, and making participation in sexual activities a condition of employment. Conduct of this type by any employee is not to take place. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being harassed on the basis of sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s), or is being subjected to other physical or verbal behavior of a sexual nature by either fellow employees (including co-workers and managers) and third-parties, has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**HARASSMENT BASED UPON RACE, COLOR, RELIGION, AGE, DISABILITY, NATIONAL ORIGIN, PREGNANCY, GENETIC INFORMATION, MILITARY STATUS, VIETNAM ERA OR VETERAN STATUS, OR ANY OTHER CHARACTERISTIC PROTECTED BY APPLICABLE LAW(S)**

Likewise, harassment based upon race, color, religion, national origin, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include jokes, comments, posters or cartoons, on-the-job treatment, work assignments or work conditions that are influenced by any of the foregoing traits.

Discrimination and/or harassment by employees (including co-workers and managers) and third-parties is prohibited. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being discriminated against or harassed because of any of the foregoing traits by employees (including co-workers and managers) or third-parties has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**COMPLAINT PROCEDURE**

Old Dominion cannot correct or remedy or prevent matters of which it is not aware. Thus, any employee who believes there has been a denial of equal opportunity, sexual harassment, or harassment on any other basis, as explained above, has the responsibility to bring that matter immediately to the attention of his or her immediate supervisor

110

ODFL 00263

---

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**COMPLAINT PROCEDURE** *Continued*

If an individual is uncomfortable with bringing the matter to his or her immediate supervisor's attention, that person should bring the matter to the attention of his or her immediate supervisor's manager, a Human Resources Manager, or another Officer or Manager identified on the "Corporate Contact List" contained in Old Dominion's OPEN DOOR POLICY poster, posted in each Old Dominion facility and available through the Human Resources Department. Old Dominion also provides an employee hotline, 877-237-8195, through which employees may report complaints, including the ability to make reports confidentially. Supervisors must report any complaints of discrimination to their Regional Human Resources Manager. Complaints may also be made to the United States Equal Employment Opportunity Commission or an applicable state agency, including the California Department of Fair Employment and Housing.

Old Dominion hopes that any incident of harassment or discrimination can be resolved through the internal process outlined in the below Complaint Procedure policy. However, in Illinois, employees have the right to file formal charges with the Illinois Department of Human Rights ("IDHR"). A charge with the IDHR must be filed within 300 days of the incident.

Administrative Contacts:

Illinois Department of Human Rights
Chicago: 312-814-6200 or 800-662-3942   Chicago TTY: 866-740-3953
Springfield: 217-785-5100   Springfield TTY: 866-740-3953

www.illinois.gov/dhr
Illinois Sexual Harassment and Discrimination Helpline
877-236-7703

Upon receipt of a complaint or report concerning harassment or any denials of equal opportunity, Old Dominion will conduct a timely, thorough investigation of the matter that promotes fairness for all parties. Old Dominion will review the information obtained in the investigation and make reasonable findings based on this information. Based on those conclusions, Old Dominion will take appropriate remedial action where appropriate. All employees are encouraged to utilize this Complaint Procedure.

**CONFIDENTIALITY / NO RETALIATION**

All complaints/reports concerning harassment or any denials of equal opportunity will be received and handled confidentially, to the extent compatible with conducting a thorough investigation. There will be no retaliation against any employee for making a complaint/report or participating in the investigation of such a complaint/report.



Harassments and Discrimination Notice

111

ODFL 00264



113. Despite the fact that the State of Illinois is the only state in the country to provide a private right of action to employees for violations of law related to the use of biometric technology, as reflected above, the "ADDENDUM E – FOR ILLINOIS EMPLOYEES ONLY" that was contained Defendant's 2020 Employee Handbook at ODFL 00262 to 00266 ("Effective 07-08-2020") does not list, refer to or depict a representation of the Illinois Biometric Information Privacy Act.

114. While page 37 of Defendant's 2020 Employee Handbook ("Effective 07-08-2020) contains a "Biometric Information Privacy Policy" at ODFL 00190, this document was buried amid seventy (70) separately listed topics amid a Handbook that contained one hundred and fifty-three (153) pages.

115. A true and accurate screenshot of Defendant's so-called "Biometric Information Privacy Policy" from its 2020 Employee Handbook ("Effective 07-08-2020") is depicted below (as taken from ODFL 00190):

21



116. According to Defendant's own words, it defines "Biometric Identifier" and "Biometric Information" as follows:

> **Biometric Identifier defined**: "Biometric identifier" means a retina or iris scan, fingerprint or voiceprint, or scan of hand or face geometry.
> **Biometric Information defined**: "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.

117. According to Defendant's own words,

> **Biometric Identifier/Information Collection**: Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries using the Kronos Touch ID system. As part of this system, Kronos collects and/or stores an employee's biometric identifiers and biometric information ("biometric template").

118. While Defendant's 2020 Employee Handbook ("Effective 07-08-2020") does not refer to the State of Illinois Biometric Information Privacy Act, it states that following:

> **Compliance with Applicable Law:** ODFL will utilize its biometric timekeeping system and apply this policy in a manner that complies with all applicable laws. In the event of any conflict

between applicable law and this policy and/or ODFL's biometric
timekeeping system, applicable law will always control.

119.    Page 37 Defendant's 2020 Employee Handbook ("Effective 07-08-2020")

contained a link to a non-functional website:

> For additional information regarding how the Kronos system stores the
> biometric information, please refer to the document entitled: "Ease
> Employees' Privacy Concerns about Kronos' Biometric Technology," or
> visit the following website:
> http://www.gc4me.com/information_technology/docs/Fingerscan_privac
> y_concerns.pdf

120.    Plaintiffs were never provided with a paper copy of Defendant's 2020

Employee Handbook ("Effective 07-08-2020").

121.    Defendant did not have a standard system for providing employees with a

hyperlink to its 2020 Employee Handbook ("Effective 07-08-2020").

122.    Accordingly, for these reasons, Plaintiffs and the proposed Class Members

were never provided with a means or method of ascertaining Defendant's so-called

"Biometric Information Privacy Policy" as depicted Defendant's 2020 Employee

Handbooks as ODFL 00190 ("Effective 07-08-2020").

123.    Even if Defendant provided Plaintiffs with paper copies of its 2020

Employee Handbook, Defendant did not provide employees with a paper or pdf version

of the document entitled "Ease Employees' Privacy Concerns about Kronos' Biometric

Technology".

124.    For these reasons, Plaintiffs and the proposed Class Members were never

provided with a means or method of ascertaining Defendant's so-called "Biometric

Information Privacy Policy" as depicted at page thirty-seven (37) of Defendant's one

hundred and fifty-three (153) page 2020 Employee Handbook.

125.    The hyperlink http://www.gc4me.com/information_technology/docs/Fingerscan_privac

y_concerns.pdf (which was included in Defendant's 2020 Employee Handbook) stopped

working sometime before June 6, 2022.

126.    On information and belief, archive materials show the last time this link was working was in the month of August, 2017.

127.    After June 10, 2022, the above hyperlink did not redirect persons attempting to open this hyperlink to any other webpage.

128.    For these reasons, in relation to Defendant's 2020 Employee Handbook, Defendant did not effectively help Plaintiffs and its employees to access the hyperlink depicted on its so-called "Biometric Information Privacy Policy".

129.    As discussed above, in relation to Plaintiffs' claims, there are no discernible differences between Defendant's Employee Handbook with an effective date of July 8, 2020, and Defendant's Employee Handbook was updated on August 25, 2020.

## C.    Defendant's 2021 Employee Handbook

130.    The "Table of Contents" of Defendant's "2021 Employee Handbook" (ODFL 00628) depicts seventy-two (72) topics that are not listed in alphabetic order:



131.   The above screenshot demonstrates that the seventy-two (72) topics listed in Defendant's 2021 Employee Handbook are not listed in alphabetic order.

132.   As depicted by the above screenshot, the Table of Contents for Defendant's 2020 Employee Handbook lists "ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY", referring to page 112 of Defendant's 2021 Employee Handbook.

133.   As depicted by the below screenshots, the "ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY" that was included in Defendant's 2021 Employee Handbook consisted of four (4) pages, 112 (ODFL 00737), 113 (ODFL 00738), 114 (ODFL 00739) and115 (ODFL 00740):



## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Old Dominion Freight Line, Inc.**
**Equal Opportunity, Sexual and Other Harassment and Non-Retaliation Policy - (Illinois Employees Only) -Revised July 1, 2019**

Old Dominion Freight Line, Inc. (Old Dominion) is an Equal Opportunity and Affirmative Action Employer. All personnel decisions will be made without regard to race, color, creed, religion, sex, national origin, gender identity, gender expression, sexual orientation, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s). In a continuing effort to ensure that all employees are treated with appropriate respect and dignity, Old Dominion reaffirms its commitment against harassment or discrimination in the work place. The policy of Equal Employment Opportunity applies to all policies and procedures relating to recruitment and hiring, compensation, benefits, and all other terms and conditions of employment.

**EQUAL OPPORTUNITY**

Any employee who believes there has been a denial of equal opportunity has the responsibility to bring such matters immediately to Old Dominion's attention by one of the means stated in the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**SEXUAL HARASSMENT**

Harassment based on sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include sexually oriented jokes, posters and cartoons, lewd and sexually suggestive conduct toward or in the presence of others, unwelcome sexual overtures such as requests for dates and social engagements, and making participation in sexual activities a condition of employment. Conduct of this type by any employee is not to take place. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being harassed on the basis of sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s), or is being subjected to other physical or verbal behavior of a sexual nature by either fellow employees (including co-workers and managers) and third-parties, has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**HARASSMENT BASED UPON RACE, COLOR, RELIGION, AGE, DISABILITY, NATIONAL ORIGIN, PREGNANCY, GENETIC INFORMATION, MILITARY STATUS, VIETNAM ERA OR VETERAN STATUS, OR ANY OTHER CHARACTERISTIC PROTECTED BY APPLICABLE LAW(S)**

Likewise, harassment based upon race, color, religion, national origin, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include jokes, comments, posters or cartoons, on-the-job treatment, work assignments or work conditions that are influenced by any of the foregoing traits.

Discrimination and/or harassment by employees (including co-workers and managers) and third-parties is prohibited. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being discriminated against or harassed because of any of the foregoing traits by employees (including co-workers and managers) or third-parties has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**COMPLAINT PROCEDURE**

Old Dominion cannot correct or remedy or prevent matters of which it is not aware. Thus, any employee who believes there has been a denial of equal opportunity, sexual harassment, or harassment on any other basis, as explained above, has the responsibility to bring that matter immediately to the attention of his or her immediate supervisor

113

ODFL 00738

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**COMPLAINT PROCEDURE** *Continued*

If an individual is uncomfortable with bringing the matter to his or her immediate supervisor's attention, that person should bring the matter to the attention of his or her immediate supervisor's manager, a Human Resources Manager, or another Officer or Manager identified on the "Corporate Contact List" contained in Old Dominion's OPEN DOOR POLICY poster, posted in each Old Dominion facility and available through the Human Resources Department. Old Dominion also provides an employee hotline, 877-237-8195, through which employees may report complaints, including the ability to make reports confidentially. Supervisors must report any complaints of discrimination to their Regional Human Resources Manager. Complaints may also be made to the United States Equal Employment Opportunity Commission or an applicable state agency, including the California Department of Fair Employment and Housing.

Old Dominion hopes that any incident of harassment or discrimination can be resolved through the internal process outlined in the above Complaint Procedure policy. However, in Illinois, employees have the right to file formal charges with the Illinois Department of Human Rights ("IDHR"). A charge with the IDHR must be filed within 300 days of the incident.

Administrative Contacts:

Illinois Department of Human Rights
Chicago: 312-814-6200 or 800-662-3942    Chicago TTY: 866-740-3953
Springfield: 217-785-5100    Springfield TTY: 866-740-3953

www.illinois.gov/dhr
Illinois Sexual Harassment and Discrimination Helpline
877-236-7703

Upon receipt of a complaint or report concerning harassment or any denials of equal opportunity, Old Dominion will conduct a timely, thorough investigation of the matter that promotes fairness for all parties. Old Dominion will review the information obtained in the investigation and make reasonable findings based on this information. Based on those conclusions, Old Dominion will take appropriate remedial action where appropriate. All employees are encouraged to utilize this Complaint Procedure.

**CONFIDENTIALITY / NO RETALIATION**

All complaints/reports concerning harassment or any denials of equal opportunity will be received and handled confidentially, to the extent compatible with conducting a thorough investigation. There will be no retaliation against any employee for making a complaint/report or participating in the investigation of such a complaint/report.



114

ODFL 00739

26



134. Despite the fact that the State of Illinois is the only state in the country to provide a private right of action to employees for violations of law related to the use of biometric technology, the "ADDENDUM E – FOR ILLINOIS EMPLOYEES ONLY" contained in Defendant's 2021 Employee Handbook (at ODFL 00737 to 00740) does not list, refer to or depict a representation of the Illinois Biometric Information Privacy Act.

135. While page 37 of Defendant's 2021 Employee Handbook contains a "Biometric Information Privacy Policy" at ODFL 00662, this document was buried amid seventy-two (72) separately listed topics amid a Handbook that contained one hundred and sixty (60) pages.

136. A true and accurate screenshot of Defendant's so-called "Biometric Information Privacy Policy" from its 2021 Employee Handbook is depicted below (as taken from ODFL 00662):



137.    According to Defendant's own words, it defines "Biometric Identifier" and "Biometric Information" as follows:

> **Biometric Identifier defined**: "Biometric identifier" means a retina or iris scan, fingerprint or voiceprint, or scan of hand or face geometry.
> **Biometric Information defined**: "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.

138.    According to Defendant's own words,

> **Biometric Identifier/Information Collection**: Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries using the Kronos Touch ID system. As part of this system, Kronos collects and/or stores an employee's biometric identifiers and biometric information ("biometric template").

139.    While Defendant's 2021 Employee Handbook does not refer to the State of Illinois Biometric Information Privacy Act, it states that following:

> **Compliance with Applicable Law:** ODFL will utilize its biometric timekeeping system and apply this policy in a manner that complies with all applicable laws. In the event of any conflict

28

between applicable law and this policy and/or ODFL's biometric
timekeeping system, applicable law will always control.

140.   Page 37 Defendant's 2021 Employee Handbook, depicted above as ODFL

00662, contained a link to a non-functional website:

For additional information regarding how the Kronos system stores the
biometric information, please refer to the document entitled: "Ease
Employees' Privacy Concerns about Kronos' Biometric Technology," or
visit the following website:
http://www.gc4me.com/information_technology/docs/Fingerscan_privac
y_concerns.pdf

141.   Plaintiffs were never provided with a paper copy of Defendant's 2021

Employee Handbook.

142.   Defendant did not have a standard system for providing employees with a

hyperlink to its 2021 Employee Handbook.

143.   For these reasons, Plaintiffs and the proposed Class Members were never

provided with a means or method of ascertaining Defendant's so-called "Biometric

Information Privacy Policy" as depicted Defendant's 2021 Employee Handbooks as

ODFL 00662.

144.   Even if Defendant provided Plaintiffs with paper copies of its 2021

Employee Handbook, Defendant did not provide employees with a paper or a pdf version

of the document entitled "Ease Employees' Privacy Concerns about Kronos' Biometric

Technology".

145.   For these reasons, Plaintiffs and the proposed Class Members were never

provided with a means or method of ascertaining Defendant's so-called "Biometric

Information Privacy Policy" as depicted at page 37 of Defendant's 153-page 2022

Employee Handbook.

146.   The hyperlink http://www.gc4me.com/information_technology/docs/Fingerscan_privac

y_concerns.pdf (which was included in Defendant's 2021 Employee Handbook) stopped

working sometime before June 6, 2022.

29

147.    On information and belief, archive materials show the last time this link was working was in the month of August, 2017.

148.    After June 10, 2022, the above hyperlink did not redirect persons attempting to open this hyperlink to any other webpage.

149.    For these reasons, in relation to Defendant's 2021 Employee Handbook, Defendant did not effectively help Plaintiffs and its employees to access the hyperlink depicted on its so-called "Biometric Information Privacy Policy".

**D. Defendant's 2022 Employee Handbook**

150.    The below screenshot of the "Table of Contents" of Defendant's "2022 Employee Handbook" (taken from ODFL 00309) depicts seventy-two (72) topics that are not listed in alphabetic order:



151.    The below screenshots depict "ADDENDUM E – FOR ILLINOIS EMPLOYEES ONLY" of Defendant's 2022 Employee Handbook ("updated 8.12.2022"):

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Meal Periods**

Old Dominion provides non-exempt Illinois employees who work more than seven and a half (7 ½) hours in a day with an unpaid 30-minute, uninterrupted duty-free meal period. Employees must start their meal period no later than five (5) hours after the start of the shift.

Non-exempt employees are required to take all meal periods provided under the meal period policy. Old Dominion completely relieves employees of all work duties and does not exercise control over employees' activities during their uninterrupted, duty-free meal period. Employees are free to leave the work site during the meal period and are free to spend their meal period time as they choose (consistent with, and subject to, any other Old Dominion policies that may apply during off-duty time). No supervisor or manager may impede or discourage employees from taking meal periods provided under this policy.

Meal periods taken by non-exempt employees are unpaid. Employees must record, via Old Dominion's in-cab or Service Center (as appropriate) timekeeping systems, the start and stop times of their meal periods. Meal periods must be taken in one continuous 30-minute block of time.

Failure to comply with this meal period policy may result in disciplinary action, up to and including termination. If you feel that you were not provided a meal period that complies with this policy, you must inform the Corporate Human Resources Department or use the Open Door Policy.

**Rest Periods**

Old Dominion requires two paid rest periods of 15 minutes each. The first is to be taken between the start time and lunch period, and the second after lunch and before the end of the shift. Rest periods should be taken in a reasonable amount of time before and after lunch, not in conjunction with lunch. It is not necessary to punch out/in for rest break periods, and the time should be limited to no more than 15 minutes.

**One Day Rest In Seven Act (ODRISA)**

Old Dominion provides non-exempt employees a minimum of twenty-four (24) consecutive hours of rest in each calendar week in addition to the regular periods of rest at the close of each working day.



ILLINOIS

114

ODFL 00420

---

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Old Dominion Freight Line, Inc.**
**Equal Opportunity, Sexual and Other Harassment and Non-Retaliation Policy - (Illinois Employees Only) -Revised July 1, 2019**

Old Dominion Freight Line, Inc. (Old Dominion) is an Equal Opportunity and Affirmative Action Employer. All personnel decisions will be made without regard to race, color, creed, religion, sex, national origin, gender identity, gender expression, sexual orientation, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s). In a continuing effort to ensure that all employees are treated with appropriate respect and dignity, Old Dominion reaffirms its commitment against harassment or discrimination in the work place. The policy of Equal Employment Opportunity applies to all policies and procedures relating to recruitment and hiring, compensation, benefits, and all other terms and conditions of employment

**EQUAL OPPORTUNITY**

Any employee who believes there has been a denial of equal opportunity has the responsibility to bring such matters immediately to Old Dominion's attention by one of the means stated in the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**SEXUAL HARASSMENT**

Harassment based on sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include sexually oriented jokes, posters and cartoons, lewd and sexually suggestive conduct toward or in the presence of others, unwelcome sexual overtures such as requests for dates and social engagements, and making participation in sexual activities a condition of employment. Conduct of this type by any employee is not to take place. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being harassed on the basis of sex, gender identity, gender expression, sexual orientation, or any other characteristic protected by applicable law(s), or is being subjected to other physical or verbal behavior of a sexual nature by either fellow employees (including co-workers and managers) and third-parties, has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**HARASSMENT BASED UPON RACE, COLOR, RELIGION, AGE, DISABILITY, NATIONAL ORIGIN, PREGNANCY, GENETIC INFORMATION, MILITARY STATUS, VIETNAM ERA OR VETERAN STATUS, OR ANY OTHER CHARACTERISTIC PROTECTED BY APPLICABLE LAW(S)**

Likewise, harassment based upon race, color, religion, national origin, age, disability, pregnancy, genetic information, military status, Vietnam Era and/or veteran status, or any other characteristic protected by applicable law(s) is prohibited. Some examples of prohibited conduct include jokes, comments, posters or cartoons, on-the-job treatment, work assignments or work conditions that are influenced by any of the foregoing traits.

Discrimination and/or harassment by employees (including co-workers and managers) and third-parties is prohibited. Violations will result in disciplinary action, up to and including termination of employment.

Any employee who believes he or she is being discriminated against or harassed because of any of the foregoing traits by employees (including co-workers and managers) and third-parties has the responsibility to bring such matters immediately to Old Dominion's attention in accordance with the Complaint Procedure below. All employees are encouraged to utilize that Complaint Procedure.

**COMPLAINT PROCEDURE**

Old Dominion cannot correct or remedy or prevent matters of which it is not aware. Thus, any employee who believes there has been a denial of equal opportunity, sexual harassment, or harassment on any other basis, as explained above, has the responsibility to bring that matter immediately to the attention of his or her immediate supervisor

115

ODFL 00421

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**COMPLAINT PROCEDURE** *Continued*

If an individual is uncomfortable with bringing the matter to his or her immediate supervisor's attention, that person should bring the matter to the attention of his or her immediate supervisor's manager, or another Officer or Manager identified in the "Corporate Contact List" contained in Old Dominion's OPEN DOOR POLICY poster, posted in each Old Dominion facility and available through the Human Resources Department. Old Dominion also provides an employee hotline, 877-237-8195, through which employees may report complaints, including the ability to make reports confidentially. Supervisors must report any complaints of discrimination to their Regional Human Resources Manager. Complaints may also be made to the United States Equal Employment Opportunity Commission or an applicable state agency, including the California Department of Fair Employment and Housing.

Old Dominion hopes that any incident of harassment or discrimination can be resolved through the internal process outlined in the below Complaint Procedure policy. However, in Illinois, employees have the right to file formal charges with the Illinois Department of Human Rights ("IDHR"). A charge with the IDHR must be filed within 300 days of the incident.

Administrative Contacts:

Illinois Department of Human Rights
Chicago: 312-814-6200 or 800-662-3942    Chicago TTY: 866-740-3953
Springfield: 217-785-5100                Springfield TTY: 866-740-3953

www.illinois.gov/dhr
Illinois Sexual Harassment and Discrimination Helpline
877-236-7703

Upon receipt of a complaint or report concerning harassment or any denials of equal opportunity, Old Dominion will conduct a timely, thorough investigation of the matter that promotes fairness for all parties. Old Dominion will review the information obtained in the investigation and make reasonable findings based on this information. Based on those conclusions, Old Dominion will take appropriate remedial action where appropriate. All employees are encouraged to utilize this Complaint Procedure.

**CONFIDENTIALITY / NO RETALIATION**

All complaints/reports concerning harassment or any denials of equal opportunity will be received and handled confidentially, to the extent compatible with conducting a thorough investigation. There will be no retaliation against any employee for making a complaint/report or participating in the investigation of such a complaint/report.



116

ODFL 00422

## ADDENDUM E - FOR ILLINOIS EMPLOYEES ONLY

**Illinois Employees Pregnancy Addendum**
**Pregnancy Accommodations in Illinois**

**A. Eligibility:**
This policy applies to all applicants or employees of the Company in the State of Illinois, and controls where it may conflict with the Company's other policies.

**B. General Provisions:**
The Company complies with employment laws applicable to mothers and expectant mothers, including the Family Medical Leave Act, Pregnancy Discrimination Act, Americans with Disabilities Act and Illinois Human Rights Act. In Illinois, it is the Company's policy to make reasonable accommodations for pregnancy, childbirth and medical and common conditions related to pregnancy and childbirth if requested by an applicant or employee, and agreed upon.

**C. Procedure for Requesting Accommodations:**
1. Illinois applicants or employees that require accommodation(s) for pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth shall make the request to her immediate supervisor or Human Resources, which will work with them to determine any effective reasonable accommodation(s). An accommodation(s) may not be reasonable where it poses an undue hardship on the Company.
2. The employee may be required to provide documentation from her physician to support the need for the reasonable accommodation(s). Documentation may include the medical justification for the requested accommodation(s), a description of the reasonable accommodation(s) that is medically advisable, the date the reasonable accommodation(s) became medically advisable, and the probable duration of the reasonable accommodation(s).

**D. Enforcement:**
The Company prohibits discrimination, harassment, and retaliation against applicants and employees for requesting and/or using accommodation(s). If an applicant or employee experiences such prohibited conduct, they must file a complaint with the Company as set forth in the Company's policies. Employees have the right to file a charge with the Illinois Department of Human Rights within 180 days of the conduct and/or the United States Equal Employment Opportunity Commission within 300 days of the conduct.



ILLINOIS

117

ODFL 00423

152.    The so-called "ADDENDUM E – FOR ILLINOIS EMPLOYEES ONLY" as reflected in Defendant's 2022 Employee Handbook at ODFL 00420 to 00423 does not list, refer to or depict a representation of the Illinois Biometric Information Privacy Act.

153.    Despite the fact that the State of Illinois is the only state in the country to provide a private right of action to employees for violations of law related to the use of biometric technology, Defendant's "ADDENDUM E – FOR ILLINOIS EMPLOYEES ONLY" as reflected in Defendant's 2022 Employee Handbook at ODFL 00420 to 00423 does not list, refer to or depict a representation of the Illinois Biometric Information Privacy Act.

154.    Despite the fact that the State of Illinois is the only state in the country to provide a private right of action to employees for violations of law related to the use of biometric technology, as depicted below, Defendant discusses its so-called "Biometric Information Privacy Policy" at page 37 of its 153-page 2022 Employee Handbook ("updated 8.12.2022", found at ODFL 00343):



33

155. According to Defendant's own words, its 2022 Employee Handbook (found at ODFL 00343) defines "Biometric Identifier" and "Biometric Information" as follows:

> **Biometric Identifier defined**: "Biometric identifier" means a retina or iris scan, fingerprint or voiceprint, or scan of hand or face geometry.
> **Biometric Information defined**: "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.

156. According to Defendant's own words, it 2022 Employee Handbook ("updated 8.12.2022" and found at ODFL 00343) admits that the Kronos Touch ID system collects and/or stores biometric identifiers and biometric information:

> **Biometric Identifier/Information Collection**: Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries using the Kronos Touch ID system. As part of this system, Kronos collects and/or stores an employee's biometric identifiers and biometric information ("biometric template").

157. While Defendant's 2022 Employee Handbook (found at ODFL 00343) states that it "complies with all applicable laws", it does not refer Illinois employees to the State of Illinois' Biometric Information Privacy Act:

> **Compliance with Applicable Law:** ODFL will utilize its biometric timekeeping system and apply this policy in a manner that complies with all applicable laws. In the event of any conflict between applicable law and this policy and/or ODFL's biometric timekeeping system, applicable law will always control.

158. Page 37 Defendant's 2022 Employee Handbook (depicted above and found at ODFL 00343) contained a link to a website that allegedly hosted a document generated by Kronos, Inc.:

> For additional information regarding how the Kronos system stores the biometric information, please refer to the document entitled: "Ease Employees' Privacy Concerns about Kronos' Biometric Technology," or visit the following website:
> http://www.gc4me.com/information_technology/docs/Fingerscan_privacy_concerns.pdf

159.    Plaintiffs were never provided with a paper copy of Defendant's 2022 Employee Handbook.

160.    Even if Defendant provided Plaintiffs with paper copies of its 2022 Employee Handbook, Defendant did not provide employees with a paper or a pdf version of the document entitled "Ease Employees' Privacy Concerns about Kronos' Biometric Technology".

161.    Defendant did not have a standard system for providing employees with a hyperlink to its 2022 Employee Handbook.

162.    Accordingly, for these reasons, Plaintiffs and the proposed Class Members were never provided with a means or method of ascertaining Defendant's so-called "Biometric Information Privacy Policy" as depicted at page 37 of Defendant's 153-page 2022 Employee Handbook.

163.    The hyperlink http://www.gc4me.com/information_technology/docs/Fingerscan_privacy_concerns.pdf which was included in Defendant's 2022 Employee Handbook ("updated 8.12.2022"), no longer working when Defendant issued its 2022 Employee Handbook.

164.    Further, the above hyperlink stopped did not *redirect* persons attempting to open this hyperlink to any other webpage.

165.    For these reasons, in relation to Defendant's 2022 Employee Handbook, Defendant did not effectively help Plaintiffs and its employees to access the hyperlink depicted on its so-called "Biometric Information Privacy Policy".

**V. Additional Background Facts**

166.    Defendant has publicly described its biometric time clock in public court filings in October of 2019, as demonstrated in the case of Kelly *Shaffstall v. Old Dominion Freight Line, Inc.*, 18-cv-01656 (W.D. of Wash).

167. As described in the case of *Kelly Shaffstall v. Old Dominion Freight Line, Inc.*, 18-cv-01656 (W.D. of Wash), Defendant has been in receipt of Kronos issued "training materials" as recently as October of 2019. See, 18-cv-01656 (W.D. of Wash) Dkt. 45, declaration of Laura Williams, Defendant's Director of Human Resources Information Systems ("HRIS").

168. Ms. Williams testified that she was "familiar with the time punch approval process" utilized by Defendant. See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 2.

169. According to Ms. Williams, "Old Dominion uses biometric readers to record employee work time. Old Dominion records and pays its employees in increments of 1 minute. Kronos fingerprint punches are automatically uploaded to Old Dominion's 'SAP' software, which it uses for a variety of internal functions, including timekeeping and payroll." See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 3.

170. According to the declaration of Ms. Williams, Defendant has been utilizing a Kronos biometric (fingerprint based) time-clock since at least April of 2018. See, 18-cv-01656 (W.D. of Wash) Dkt. 45 at ¶ 7.

171. According to the declaration of Lorrin Wallace, Defendant's Regional Manager of Maintenance for the Pacific-Northwest Region, Defendant has been utilizing a Kronos biometric (fingerprint based) time-clock since at least march of 2018. See, 18-cv-01656 (W.D. of Wash) Dkt. 44 at ¶¶ 3, 18.

172. As a sophisticated company, Defendant did not negligently fail to comply with BIPA.

173. As a sophisticated company, Defendant appears to have intentionally or recklessly ignored the requirements of BIPA, entitling Plaintiffs and class members to assert at least between $250 and $1,000 for each violation of BIPA intentionally or reckless violation of BIPA.

36

174.     Within the past five years, Defendant has captured the biometric information of Plaintiffs and class members without their express written consent.

175.     Within the past five years, Defendant has captured the biometric information of Plaintiffs and class members without first informing Plaintiffs and class members of their rights are required by Section 15(a) and 15(b) of BIPA.

**VI. CAFA Jurisdiction**

176.     The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), provides federal jurisdiction over putative class action claims if the following conditions are met:

> (2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which — (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

28 U.S.C. § 1332(d)(2).

177.     Section 1332(d)(6) of CAFA provides that "[i]n any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."

178.     Plaintiffs satisfy Section 1332(d)(2)(A) because Defendant and the putative members are citizens of different states.

179.     During the Relevant Time Period, approximately 1,000 putative class members utilized Defendant's time clock system in violation of BIPA. See, 28 U.S.C. § 1332(d)(5)(B).

180.     Section 1332(d)(2) is satisfied where 5,001 individual reckless or intentional violations of BIPA (involving 100 or more putative class members) would exceed $5,000,000 in damages.

181. Alternatively, Section 1332(d)(2) is satisfied where 5,001 negligent individual violations of BIPA (involving 1,000 or less putative class members) would exceed $5,000,000 in damages.

182. Alternatively, Section 1332(d)(2) is satisfied where 10,001 negligent individual violations of BIPA (involving 1,000 or less putative class members at $500 per violation) would exceed $5,000,000 in damages.

183. Alternatively, Section 1332(d)(2) is satisfied where 20,001 negligent individual violations of BIPA (involving 1,000 or less putative class members at $250 per violation) would exceed $5,000,000 in damages.

184. Alternatively, Section 1332(d)(2) is satisfied where 50,001 negligent individual violations of BIPA (involving 1,000 putative class members at $100 per violation) would exceed $5,000,000 in damages.

185. In the week of April 3, 2023, Defendant attempted to secure BIPA consent forms from employees by offering to pay them $500.

186. Plaintiff Kararo did not sign the consent form or receive the $500 payoff despite being continually asked to sign a consent from by Tammy Gerdes, Plaintiff Kararo's terminal manager.

187. As of the filing of this Fourth Amended Complaint, Defendants have been unable to produce a biometric consent form signed by and/or associated with Plaintiffs Kararo.

188. Defendant never provided Kararo with a so-called "*Biometric Information Privacy Policy*" or a so-called "Ease Employees' Privacy Concerns about Kronos Biometric Technology".

189. Plaintiff La did not sign the consent form or receive the $500 payoff.

38

190. Further, on December 28, 2020, Defendant never provided La with a so-called "*Biometric Information Privacy Policy*" or a so-called "Ease Employees' Privacy Concerns about Kronos Biometric Technology".

191. Plaintiffs Walker and

192. Defendant has been unable to produce any discovery showing that it provided Plaintiff Walker with a so-called "*Biometric Information Privacy Policy*" or a so-called "Ease Employees' Privacy Concerns about Kronos Biometric Technology".

193. Defendant has been unable to produce the original (ink based) document that it claims was hand signed by Plaintiff Walker.

194. Plaintiff Walker disputes that the document in question (ODFL 003232) depicts his actual signature.

195. Even if the disputed document was signed by Plaintiff Walker, it is dated March 27, 2019, and Mr. Walker began using Defendant's biometric based time-clock in May of 2018.

196. Plaintiff Caison was never presented with the consent form.

197. As of the filing of this Fourth Amended Complaint, Defendants have been unable to produce a biometric consent form signed by and/or associated with Plaintiffs Caison.

198. After receiving notice of this putative class action lawsuit, Defendant continued to collect consent forms without informing employees that there was a putative class action pending.

199. Plaintiff Travis was on leave during the first two weeks of April of 2023. When Travis returned to work, he was told by Ms. Gerdes that it was too late for him to receive a payment of $500 and that his only option was to sign a document entitled.

200.    Ms. Gerdes told Plaintiff Travis that he had to sign a document entitled, "Consent to Collect and Use Biometric Data" ("Consent to Collect Form").

201.    Gerdes did not inform Plaintiff Travis that this proposed class action had been filed against Defendant when she urged him to sign the Consent to Collect Form.

202.    The Consent to Collect Form that Travis signed is depicted below:

**Consent to Collect and Use Biometric Data**

Old Dominion Freight Line, Inc. (the "Company") maintains a time management system which is provided and supported by a third-party provider, Kronos, Inc. (Kronos 4500/9000/9100 Touch ID), and by approximately August 31, 2023, the Company expects to transition to a time management system provided and supported by third-party vendor Dormakaba Group (Terminal 9700-K6/9700) (Kronos, Inc. and Dormakaba Group are each referred to as "Time Clock Vendor") to verify employee identity and ensure employee time is accurately captured.

The time management systems require employees to scan their finger on a time clock each time they "clock-in" or "clock-out" from work. The Kronos time management system works by immediately and automatically converting a scan of an individual's finger to an encrypted mathematical representation of the individual's fingertip. No fingerprint or image of the fingerprint is captured or stored by the Kronos time management system. With respect to the Kronos time management system, the encrypted mathematical representation created from the scan of a finger is securely stored on the time clock. The encrypted mathematical representation cannot be reverse-engineered to produce a fingerprint.

The Dormakaba Group time management system works by digitally translating data points from the scan of an individual's finger into a numerical template ID. With respect to the Dormakaba Group time management system, the template ID is securely stored on the time clock hardware and a Dormakaba Group server database or in other backup systems or repositories (if any). No fingerprint or image of a fingerprint is ever stored by the Dormakaba Group time management system. The template ID cannot be reverse-engineered to produce a fingerprint.

Additional information regarding the time management systems can be found in the Company's Biometric Data Privacy Policy (the "Policy").

The phrase "Biometric Data" is used herein and in the Policy to include, but is not limited to, all potentially applicable legal definitions of "biometric identifiers" or "biometric information" and any information that is derived therefrom, which can include, but are not limited to, data generated from the scan of a finger. For purposes of this Policy, information derived from a scan of an employee's finger during the timekeeping process is referred to as Biometric Data even though it may not meet the definition of "biometric information" or "biometric identifiers" under applicable law.

The Company generally does not make available or disclose Biometric Data to third parties, except to: (1) the Time Clock Vendor or any other third-party vendor engaged by the Company, as needed, to operate and maintain the time management systems; and (2) Company-retained attorneys and/or accountants or other agents as necessary to assist the Company with compliance, conduct audits and investigations in the future, provide related services, or as otherwise permitted or required by law or legal/administrative process. If the Company or the Time Clock Vendor (or such other third-party vendor engaged by the Company) services the time clock (or the associated server or software), you consent to disclosing your Biometric Data or otherwise giving them access to it to make the repair, maintenance, upgrade or change, or to destroy your Biometric Data. The Company does not retain scans or images of employees' fingers

or fingerprints or otherwise retain any employee biometric identifiers or information except as otherwise required by law or legal process and Company policies.

The Company has taken steps to ensure that your Biometric Data will be transmitted and stored securely and retained only for as long as needed. In general, this means that, except as otherwise required by law, legal process or relevant Company policies, the Company will destroy an employee's Biometric Data, including what is stored on the time management systems, as soon as practicable following the termination of an employee's employment with the Company. The Company will make reasonable and technically feasible efforts to ensure that Biometric Data is not retained for longer than one year following an employee's last interaction with the Company.

By signing below, you acknowledge and agree to the past, present, and future collection, use, disclosure, transmission and storage of your Biometric Data as described above and detailed in the Biometric Data Privacy Policy when using the Company's time management systems.

NAME (PRINT):  _Ian Travis_

NAME (SIGNATURE):  _Ian Travis_

EMPLOYEE ID NO:  _109195_

DATE:  _4/10/23_

203.    When Ms. Gerdes and other employees of Defendant provided consent forms to other employees to sign, the paperwork did not provide employees with the contact information of the undersigned attorney.

204.    When Ms. Gerdes and other employees of Defendant provided consent forms to other employees to sign, the paperwork did not provide employees with a copy of the proposed class action lawsuit.

205.    Ms. Gerdes did not inform other class members that this proposed class action had been filed against Defendant when she urged these individuals to sign the Consent to Collect and Use Biometric Data.

**Count I – Asserting Violations of Section 15(b)(1) of BIPA**

206.    Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

207. Section 15(b)(1) of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

208. BIPA defines "[w]ritten release" as "informed written consent." 740 ILCS 14/10.

209. Defendant violated Section 15(b) of BIPA because it collected Plaintiffs' "biometric identifiers" and/or "biometric information" without first obtaining Plaintiffs' informed written consent.

210. Defendant also violated Section 15(b) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

211. Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiffs in writing that it was storing and/or collecting Plaintiffs' "biometric identifiers" or "biometric information." 740 ILCS 14/15(b)(1).

212. Defendant violated of Section 15(b)(1) of BIPA by failing to inform putative class members in writing that it was storing and/or collecting their "biometric identifiers" or "biometric information." 740 ILCS 14/15(b)(1).

213. As explained above, Defendant collected, used and/or stored the "biometric identifiers" and/or "biometric information" of the Plaintiffs and the putative class members in violation of the prohibitions and requirements set forth by Section 15(b)(1) of BIPA.

214. As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members before Defendant collected, used, modified and/or stored their "biometric identifiers" and/or "biometric information."

215. During the week of April 3, 2023, and continuing until at least April 14, 2023, Defendant attempted to obtain *after-acquired* consent from its current employees by offering employees payments of $500 in exchange for signing a "CLAIM RELEASE FORM".

216. The first paragraph of the CLAIM RELEASE FORM states as follows:

> The purpose of this RELEASE is to ask you to release any legal claims you have or may have against Old Dominion Freight Line, Inc. ("OD") under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and as described below in exchange for the consideration described below. You are under no obligation to sign this RELEASE and there will be no negative employment consequences for not signing it.

217. The second paragraph of the CLAIM RELEASE FORM states as follows:

> OD makes you the following offer: in exchange for signing this RELEASE and waiving the rights discussed below, OD will pay you the gross amount of Five Hundred Dollars ($500.00), less applicable payroll withholdings, within five (5) business days following OD's receipt of your signed RELEASE. The payment will be made in the manner by which you regularly receive your paychecks from OD.

218. The third paragraph of the CLAIM RELEASE FORM states as follows:

> By signing this RELEASE, you will voluntarily release OD, related entities, their predecessors, insurers, successors and assigns, and their current and former employees, directors, shareholders, and agents, both individually and in their business capacities (the "Releasee(s)"), from all claims, known and unknown, which you may have against any Releasee as of the date you sign this RELEASE that: (i) arise under the BIPA, or (ii) are otherwise associated with any alleged biometric identifiers or biometric information collected, captured, used, stored, disclosed, disseminated, transmitted, or otherwise obtained by OD.

43

219.   Defendant continued to receive signed CLAIM RELEASE FORMS after learning that this lawsuit was filed.

220.   More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee of the pendency of this putative class action.

221.   More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee that the undersigned was counsel for the putative class action.

222.   More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee of the pendency of this putative class action.

223.   More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee that the undersigned was counsel for the putative class action.

224.   Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

225.   The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(b)(1) of BIPA.[1]

226.   The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

---

[1] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

227. There are more than forty (40) former employees who fall within the above class definition.

228. Common questions of law and fact exist.

229. The claims in this Court which assert that Defendant violated Section 15(b) of BIPA by requiring Plaintiffs to use a time clock system that collected, captured, and otherwise obtained Plaintiffs' "biometric information" and/or "biometric identifiers" *without* Plaintiffs' express written consent - is typical of the claims of putative class members.

230. Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

231. The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

232. The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

233. The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

234. The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

235. Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, \*3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Declaring that Defendant violated Section 15(b)(1) of BIPA;

b. Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;

c. Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";

d. Awarding liquidated damages for negligent violations of Section 15(b)(1);

e. Awarding liquidated damages for intentional and/or reckless violations of Section 15(b)(1);

f. Awarding reasonable attorney's fees and costs;

g. Enjoining Defendant from further violations of Section 15(b)(1);

h. Certifying the proposed Class set forth above;

i. Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j. Appointing Plaintiffs' counsel as class counsel.

**Count II – Asserting Violations of Section 15(b)(2) of BIPA**

236. Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

237.    Section 15(b) of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

238.    BIPA defines "[w]ritten release" as "informed written consent." 740 ILCS 14/10.

239.    Defendant violated Section 15(b) of BIPA because it collected Plaintiffs' "biometric identifiers" and/or "biometric information" without first obtaining Plaintiffs' informed written consent.

240.    Defendant also violated Section 15(b) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

241.    Defendant violated of Section 15(b)(2) of BIPA by failing to inform Plaintiffs in writing of the specific purpose and length of term for which Plaintiffs' "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

242.    Defendant violated of Section 15(b)(2) of BIPA by failing to inform putative class members in writing of the specific purpose and length of term for which their "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

243. As explained above, Defendant collected, used and/or stored the "biometric identifiers" and/or "biometric information" of the Plaintiffs and the putative class members in violation of the prohibitions and requirements set forth by Section 15(b) of BIPA.

244. As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members before Defendant collected, used, modified and/or stored their "biometric identifiers" and/or "biometric information."

245. During the week of April 3, 2023, and continuing until at least April 14, 2023, Defendant attempted to obtain *after-acquired* consent from its current employees by offering employees payments of $500 in exchange for signing a "CLAIM RELEASE FORM".

246. The first paragraph of the CLAIM RELEASE FORM states as follows:

> The purpose of this RELEASE is to ask you to release any legal claims you have or may have against Old Dominion Freight Line, Inc. ("OD") under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and as described below in exchange for the consideration described below. You are under no obligation to sign this RELEASE and there will be no negative employment consequences for not signing it.

247. The second paragraph of the CLAIM RELEASE FORM states as follows:

> OD makes you the following offer: in exchange for signing this RELEASE and waiving the rights discussed below, OD will pay you the gross amount of Five Hundred Dollars ($500.00), less applicable payroll withholdings, within five (5) business days following OD's receipt of your signed RELEASE. The payment will be made in the manner by which you regularly receive your paychecks from OD.

248. The third paragraph of the CLAIM RELEASE FORM states as follows:

> By signing this RELEASE, you will voluntarily release OD, related entities, their predecessors, insurers, successors and assigns, and their current and former employees, directors, shareholders, and agents, both individually and in their business capacities (the "Releasee(s)"), from all claims, known and unknown, which you may have against any Releasee as of the date you sign this RELEASE that: (i) arise under the BIPA, or (ii) are otherwise associated with any alleged biometric identifiers or biometric information collected, captured, used, stored, disclosed, disseminated, transmitted, or otherwise obtained by OD.

249. Defendant continued to receive signed CLAIM RELEASE FORMS after learning that this lawsuit was filed.

250. More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee of the pendency of this putative class action.

251. More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee that the undersigned was counsel for the putative class action.

252. More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee of the pendency of this putative class action.

253. More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee that the undersigned was counsel for the putative class action.

254. Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

255. The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(b)(2) of BIPA. [2]

256. The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

---

[2] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

257.    There are more than forty (40) former employees who fall within the above class definition.

258.    Common questions of law and fact exist.

259.    The claims in this Court which assert that Defendant violated Section 15(b)(2) of BIPA by requiring Plaintiffs to use a time clock system that collected, captured, and otherwise obtained Plaintiffs' "biometric information" and/or "biometric identifiers" *without* Plaintiffs' express written consent - is typical of the claims of putative class members.

260.    Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

261.    The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

262.    The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

263.    The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

264.    The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

265.    Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, \*3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a.  Declaring that Defendant violated Section 15(b)(2) of BIPA;

b.  Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;

c.  Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";

d.  Awarding liquidated damages for negligent violations of Section 15(b)(2);

e.  Awarding liquidated damages for intentional and/or reckless violations of Section 15(b)(2);

f.  Awarding reasonable attorney's fees and costs;

g.  Enjoining Defendant from further violations of Section 15(b)(2);

h.  Certifying the proposed Class set forth above;

i.  Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j.  Appointing Plaintiffs' counsel as class counsel.

**Count III – Asserting Violations of Section 15(b)(3) of BIPA**

266.    Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

267.    Section 15(b) of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

268.    BIPA defines "[w]ritten release" as "informed written consent." 740 ILCS 14/10.

269.    Defendant violated Section 15(b)(3) of BIPA because it collected Plaintiffs' "biometric identifiers" and/or "biometric information" without first obtaining Plaintiffs' informed written consent.

270.    Defendant also violated Section 15(b)(3) of BIPA because it collected the "biometric identifiers" and/or "biometric information" of putative class members without first obtaining their informed written consent.

271.    Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiffs in writing that it was storing and/or collecting Plaintiffs' "biometric identifiers" or "biometric information." 740 ILCS 14/15(b)(1).

272.    Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release from Plaintiffs before Defendant collected Plaintiffs' "biometric identifiers" and/or "biometric information." 740 ILCS 14/15(b)(3).

273. Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release from putative class members before Defendant collected their "biometric identifiers" and/or "biometric information." 740 ILCS 14/15(b)(3).

274. As explained above, Defendant collected, used and/or stored the "biometric identifiers" and/or "biometric information" of the Plaintiffs and the putative class members in violation of the prohibitions and requirements set forth by Section 15(b)(3) of BIPA.

275. As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members before Defendant collected, used, modified and/or stored their "biometric identifiers" and/or "biometric information."

276. During the week of April 3, 2023, and continuing until at least April 14, 2023, Defendant attempted to obtain *after-acquired* consent from its current employees by offering employees payments of $500 in exchange for signing a "CLAIM RELEASE FORM".

277. The first paragraph of the CLAIM RELEASE FORM states as follows:

> The purpose of this RELEASE is to ask you to release any legal claims you have or may have against Old Dominion Freight Line, Inc. ("OD") under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* and as described below in exchange for the consideration described below. You are under no obligation to sign this RELEASE and there will be no negative employment consequences for not signing it.

278. The second paragraph of the CLAIM RELEASE FORM states as follows:

> OD makes you the following offer: in exchange for signing this RELEASE and waiving the rights discussed below, OD will pay you the gross amount of Five Hundred Dollars ($500.00), less applicable payroll withholdings, within five (5) business days following OD's receipt of your signed RELEASE. The payment will be made in the manner by which you regularly receive your paychecks from OD.

279. The third paragraph of the CLAIM RELEASE FORM states as follows:

> By signing this RELEASE, you will voluntarily release OD, related entities, their predecessors, insurers, successors and assigns, and their current and former employees, directors, shareholders, and agents, both individually and in their business capacities (the "Releasee(s)"), from all claims, known and unknown, which you may have against any Releasee as of the date you sign this RELEASE that: (i) arise under the BIPA, or (ii) are otherwise associated with any alleged biometric identifiers or biometric information collected, captured, used, stored, disclosed, disseminated, transmitted, or otherwise obtained by OD.

280. Defendant continued to receive signed CLAIM RELEASE FORMS after learning that this lawsuit was filed.

281. More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee of the pendency of this putative class action.

282. More than one CLAIM RELEASE FORM was signed by an employee where the CLAIM RELEASE FORM did not inform the employee that the undersigned was counsel for the putative class action.

283. More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee of the pendency of this putative class action.

284. More than one Consent to Collect Form was signed by an employee where the Consent to Collect Form did not inform the employee that the undersigned was counsel for the putative class action.

285. Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

286. The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or

"biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(b)(3) of BIPA. [3]

287.    The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

288.    There are more than forty (40) former employees who fall within the above class definition.

289.    Common questions of law and fact exist.

290.    The claims in this Court which assert that Defendant violated Section 15(b) of BIPA by requiring Plaintiffs to use a time clock system that collected, captured, and otherwise obtained Plaintiffs' "biometric information" and/or "biometric identifiers" *without* Plaintiffs' express written consent - is typical of the claims of putative class members.

291.    Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

292.    The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

293.    The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

---

[3] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

294.    The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

295.    The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

296.    Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

   a.  Declaring that Defendant violated Section 15(b)(3) of BIPA;
   b.  Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;
   c.  Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";
   d.  Awarding liquidated damages for negligent violations of Section 15(b);
   e.  Awarding liquidated damages for intentional and/or reckless violations of Section 15(b)(3);
   f.  Awarding reasonable attorney's fees and costs;
   g.  Enjoining Defendant from further violations of Section 15(b)(3);

h.   Certifying the proposed Class set forth above;

i.   Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j.   Appointing Plaintiffs' counsel as class counsel.

**Count IV – Asserting Violations of Section 15(a) of BIPA**

297.   Plaintiffs reassert and incorporate the above Paragraphs as if fully set forth above.

298.   Section 15(a) of BIPA states that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made *available to the public*, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." (Emphasis added).

299.   Defendant had not published a publicly available "retention schedule … for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity".

300.   Further, Defendant has not published any publicly available "guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity".

301.   Finally, Defendant has not produced any *internal* "guidelines for permanently destroying biometric identifiers and biometric information when the initial

purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity".

302.   Plaintiffs and putative class members have suffered damages in the form of liquidated damages as provided by 740 ILCS 14/20(1)-(2).

303.   The proposed Class is defined as all current and former employees of Defendant in the State of Illinois who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant in violation of Section 15(a) of BIPA.[4]

304.   The proposed Class is ascertainable from Defendant's records and is limited to the five year statute of limitation that applies to BIPA.

305.   There are more than forty (40) former employees who fall within the above class definition.

306.   Common questions of law and fact exist.

307.   The claims in this Court which assert that Defendant violated Section 15(a) of BIPA as set forth above.

308.   Plaintiffs will fairly and adequately protect the interests of the putative class members because Plaintiffs seek to assert statutory rights afforded by BIPA and seek to obtain declaratory, injunctive, and monetary relief for all class members.

309.   The proposed Class should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

310.   The proposed Class should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the

---

[4] This definition is not a so-called "fail safe" class definition. *See, e.g., Heard v. Becton, Dickenson & Co.*, 534 F.Supp.3d 831, 848-49 (N.D. Ill. 2021).

interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

311.   The proposed Class should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

312.   The proposed Class should be certified because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

313.   Proposed class counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134). *See also, In re: Apple Inc. Device Performance Litigation*, 18-md-02827, 2023 U.S. Dist. LEXIS 27892, 2023 WL 2090981 (Feb. 17, 2023) (granting final approval of a $310 million dollar settlement fund where Plaintiffs' counsel represented two dozen class representatives).

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Declaring that Defendant violated Section 15(a) of BIPA;

b. Requiring Defendant to publish a public policy which identifies its data retention and destruction protocols;

c. Requiring Defendant to destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied";

d. Awarding liquidated damages for negligent violations of Section 15(a);

e. Awarding liquidated damages for intentional and/or reckless violations of Section 15(a);

f. Awarding reasonable attorney's fees and costs;

g. Enjoining Defendant from further violations of Section 15(a );

h. Certifying the proposed Class set forth above;

i. Appointing the proposed class representatives and awarding them appropriate incentive awards for their service; and

j. Appointing Plaintiffs' counsel as class counsel.

## **Jury Demand**

Plaintiffs demand a jury trial.

*/s/ James C. Vlahakis*

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
312-766-0511 (office)
312-648-6127 (direct)
jamesv@vlahakislaw.com

*Counsel for Plaintiffs and*
*the putative class members*