**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN KARARO, SEAN WALKER, TRI MINH LA, MELVYN L. CAISON JR., IAN TRAVIS, DIEGO DELGADO, GABRIEL CASTELLANO, and JUAN CARLOS GARCIA, individually and on behalf of all other similarly situated current and former employees, | ) ) ) ) ) ) ) | Case No. 23-cv-02187 |
| Plaintiffs, | ) ) ) | District Judge Jorge L. Alonso Magistrate Judge Heather K. McShain |
| v. | ) ) ) | |
| OLD DOMINION FREIGHT LINE INC., | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' FOURTH AMENDED CLASS ACTION COMPLAINT**

Jody Kahn Mason
Jason A. Selvey
Hannah Griffin Garlough
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
Phone: (312) 787-4949
Facsimile (312) 787-4995
Jody.Mason@jacksonlewis.com
Jason.Selvey@jacksonlewis.com
Hannah.Garlough@jacksonlewis.com

In their Fourth Amended Class Action Complaint (Dkt. 77, "Complaint"), Plaintiffs bring claims against Old Dominion Freight Line, Inc. ("Old Dominion") on behalf of themselves and a putative class for alleged violations of Sections 15(a) and 15(b)(1)–(3) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*. As explained below, Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## FACTUAL BACKGROUND

### A. Plaintiffs Are Current and Former Employees of Old Dominion.

Plaintiffs John Kararo and Ian Travis are current employees who have worked for Old Dominion since on or about October 6, 2021 and September 13, 2021, respectively. (Dkt. 77, ¶¶ 1, 6.) Plaintiffs Sean Walker, Tri Minh La, Melvyn L. Caison, Jr., Diego Delgado, Gabriel Castellano, and Juan Carlos Garcia are former employees whose employment with Old Dominion ended within the past five years. (*Id.* ¶¶ 3-5, 7-9.) Plaintiffs allege that, "within the past five years," Old Dominion required each of them to use a Kronos Incorporated time clock system to track their hours worked, and further "required Plaintiffs and other employees to scan, upload, and/or use their unique fingerprint in order to use Defendant's time clock." (*Id.* ¶¶ 15, 38.) Plaintiffs allege that Old Dominion has utilized the Kronos time clock system at issue since at least 2018. (*Id.* ¶ 44.) Kararo alleges that he used the time clock at least 300 times. (*Id.* ¶ 20.) Walker, La, and Caison each allege that they used the time clock system at least 600 times. (*Id.* ¶ 21-23.) Delgado, Castellano, and Garcia each allege that they used the time clock system at least 1,000 times. (*Id.* ¶¶ 25-27.) Plaintiffs appear to seek between $250 and $1,000 for each time they used Old Dominion's time clock system. (*Id.* ¶¶ 19, 28-29.)

1

**B. Since April 2018, Old Dominion's Employee Handbook Has Contained Any Disclosures Required by Section 15(b)(1), (2) of the BIPA.**

Plaintiffs attached to their Complaint six versions of Old Dominion's Employee Handbook that have been in effect since April 2018. (Dkt. 77, Exs. A-F.)[1] The Biometric Information Privacy Policy ("Biometric Policy") contained in the 2018 Employee Handbook states:

> In order to efficiently and securely track employees' time records, Old Dominion Freight Line, Inc. ("ODFL" or the "Company") has engaged Kronos Inc. ("Kronos") to administer a biometric timekeeping system. Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries using the Kronos Touch ID system (a biometric time clock). …
>
> **Biometric Identifier/Information Collection:** … As part of this system, Kronos collects and/or stores an employee's biometric identifiers and biometric information ("biometric template"). …
>
> **Storage:** The Kronos Touch ID system does not retain or store images of an employee's fingerprint scans. Instead, a biometric algorithm using feature extraction creates a unique template which is effectively an encoded, mathematical representation of an employee's fingerprint. …
>
> **Retention Schedule:** … Biometric templates are stored on the Touch ID Plus device and are used to compare a live fingerprint scan each time an employee clocks in or out. At no time are any images of an employee's fingerprints stored … An employee's biometric information (i.e. biometric template) will be retained only until the initial purpose for collecting or obtaining the biometric identifiers or information has been satisfied, or within 3 years of the employee's last interaction with the Company, whichever occurs first.

(*Id.* ¶ 104, Ex. A.) While Old Dominion has revised the Employee Handbook from time to time, since April 2018, every version has contained a Biometric Policy substantively similar to the language quoted above, except that subsequent versions reflect that Old Dominion updated its retention schedule. (*Id.* ¶¶ 104, 115, 136, 154, Exs. A-F; Dkt. 53-1 ¶¶ 6-7.) The first page of every version of the Employee Handbook in effect since April 2018 contained a one-page table of contents that explicitly identified the Biometric Policy. (*Id.* ¶¶ 99, 109, 130, 150, Exs. A-F.)

---

[1] Plaintiffs do not allege the specific date in 2018 that Old Dominion implemented its relevant Employee Handbook. (*See,* Dkt. 77, ¶ 49.) However, as set forth in a Declaration of DeeDee Cox, which was attached to Old Dominion's memorandum in support of its motion to dismiss Plaintiffs' Third Amended Complaint, "[s]ince April 2018, the Employee Handbook has contained a Biometric Information Privacy Policy." (Dkt. 53-1, ¶ 6.)

2

### C. Old Dominion Maintains a Publicly Available Privacy Policy on Its Website.

The "Old Dominion Freight Line, Inc. Privacy Policy" is posted on Old Dominion's public website. (Ex. 1; https://www.odfl.com/us/en/privacy-policy.html.) Plaintiffs included a citation to the Privacy Policy in their Second Amended Complaint. (Dkt. 14, ¶ 53.) The Privacy Policy states that Old Dominion may collect biometric information, including "[t]o administer employee timekeeping and reporting," "[t]o manage [its] employment relationship with [its] employees," and "[t]o ensure that [it is] complying with [its] legal and contractual obligations." (Ex. 1.) The Privacy Policy also provides that Old Dominion retains "Personal Information," which is defined to include biometric information, for "the periods necessary to" "fulfill the purposes described in th[e] Privacy Policy" or "comply with applicable laws, legal holds, and other legal obligations…." (*Id.*) The Privacy Policy directs individuals to Old Dominion's Biometric Policy for more information and includes a telephone number and email address where individuals can reach out with "any questions or concerns about [Old Dominion's] privacy policies and practices." (*Id.*)

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint. Fed. R. Civ. P. 12(b)(1); *Cty. of Cook v. HSBC N. Am. Holdings, Inc.*, 136 F. Supp. 3d 952, 957 (N.D. Ill. 2015). When a defendant makes a jurisdictional challenge, it is the plaintiff's burden to establish that jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

Under Rule 12(b)(6), dismissal is appropriate when a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). Claims are facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The Court "need not accept as true statements of law or unsupported conclusory factual allegations." *Yeftich v. Navistar, Inc.,* 722 F.3d 911, 915 (7th Cir. 2013). That means plaintiffs cannot "merely parrot statutory language of the claims … rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009); *see also Iqbal,* 556 U.S. at 678. In ruling, this Court must consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). Where an exhibit attached to or referenced in a complaint reveals facts which foreclose recovery as a matter of law, dismissal is appropriate. *Id.*; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## ARGUMENT

### I. Plaintiffs' Section 15(a) Claim Must Be Dismissed Pursuant to FRCP 12(b)(1).

Count IV of the Complaint must be dismissed because Plaintiffs lack standing to assert claims under Section 15(a) of the BIPA. Plaintiffs allege that Old Dominion violated Section 15(a) by failing to publish a publicly available retention schedule or guidelines for permanently destroying biometric data. (Dkt. 77, ¶¶ 299-301.) The duty to provide such information, however, "is owed to the public generally, not to particular persons whose biometric information the entity collects." *Bryant v. Compass Grp. USA, Inc.,* 958 F.3d 617, 626 (7th Cir. 2020). Absent an allegation that Old Dominion unlawfully retained Plaintiffs' alleged biometric data for longer than permitted under the statute, which Plaintiffs do not allege, Plaintiffs cannot establish that they suffered an injury-in-fact that would give them standing. *Id.* at 623; *see also Horn v. Method Prods., PBC,* No. 21 C 5621, 2022 U.S. Dist. LEXIS 67354, at *11 (N.D. Ill. Apr. 12, 2022) (plaintiff "does not have standing to pursue such a claim [under Section 15(a)]. . .without also contending that [defendant] unlawfully retained his biometric information"); *cf. Fox v. Dakkota*

4

*Integrated Sys., LLC,* 980 F.3d 1146, 1154-55 (7th Cir. 2020) (plaintiff had standing where the complaint alleged defendant engaged "in the ***wrongful retention*** of her biometric data…beyond the time authorized by law" (emphasis added)).

The Court lacks jurisdiction over the Section 15(a) claims of all Plaintiffs except Caison for a second reason: they are not yet ripe. *Kathrein v. City of Evanston,* 636 F.3d 906, 916 (7th Cir. 2011). A claim is ripe only if an actual injury has occurred. *Church v. Our Lord & Savior Jesus Christ v. City of Markham,* 913 F.3d 670, 676 (7th Cir. 2019). Section 15(a) requires a private entity in possession of biometric data to establish a retention schedule and guidelines for permanently destroying the same "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a). Section 15(a) makes clear that Plaintiffs could suffer no injury until three years after their last interaction with Old Dominion. *Id.*; *see also Kislov v. Am. Airlines, Inc.,* 566 F. Supp. 3d 909, 914 (N.D. Ill. 2021) (where alleged collection of biometric data did not occur more than three years prior to filing of the complaint, "[a]ny claim for unlawful retention of biometric data is likely not yet ripe").

Here, all Plaintiffs, except Caison, cannot plead an actual injury because the three-year period in which Old Dominion must destroy their alleged biometric data has not expired. (Dkt. 77, ¶¶ 1, 3-9.) Plaintiffs Kararo and Travis are current employees, and the employment of Plaintiffs La, Delgado, Castellano, and Garcia each ended within the last two years.[2] Thus, even assuming, *arguendo,* Old Dominion is in possession of Plaintiffs' alleged biometric data and lacks a destruction policy as Plaintiffs allege (which is expressly contradicted by the Biometric Policy incorporated into the Complaint), Old Dominion's obligation to destroy such data has not yet

---

[2] While Plaintiff Caison alleges that his employment with Old Dominion ended in 2019 (Dkt. 77, ¶ 5), he nevertheless has not alleged that Old Dominion retained his alleged biometric data for longer than permitted under BIPA.

5

arisen. Any argument that Plaintiffs Kararo, Travis, La, Walker, Castellano, Delgado, or Garcia *may* suffer an injury *if* Old Dominion fails to comply with its *future* destruction obligation (to the extent such obligation exists) is entirely too speculative to present an actual case or controversy sufficient to confer subject matter jurisdiction. *See Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003).

For these reasons, this Court does not have jurisdiction over Plaintiffs' Section 15(a) claims; therefore, Count IV of Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1).

## II. Counts I-II Fail Because the Biometric Information Privacy Policy Satisfies the Disclosure Requirements of BIPA Section 15(b)(1)-(2) as a Matter of Law.

The Court should dismiss Counts I and II of Plaintiffs' Complaint, with prejudice, because Old Dominion has complied in full with the disclosure requirements of Section 15(b)(1)-(2) of the BIPA through the Biometric Policy contained within the Employee Handbook and its online Privacy Policy. Section 15(b)(1)-(2) requires that private entities who collect, capture, purchase, receive through trade, or otherwise obtain an individual's biometric identifier or biometric information must "inform[] the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored" and "of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b)(1)-(2). While Old Dominion does not concede that it "collected" Plaintiffs' or putative class members' "biometric identifiers or biometric information" as those terms are defined by the BIPA, to the extent that Old Dominion was required to comply with Section 15(b)(1)-(2), Plaintiffs' own allegations, the exhibits attached to the Complaint, and other facts of which the Court may take judicial notice make clear that Old Dominion did exactly that.

It is undisputed that since April 2018, Old Dominion's Employee Handbook has contained a Biometric Information Privacy Policy, which discloses, in writing, that Old Dominion's timekeeping system "utilizes biometric technology" and "collects and/or stores an employee's biometric identifiers and biometric information ('biometric template')." (Dkt. 77, ¶ 104). Further, the Handbook explains exactly *how* the timekeeping system at issue works, providing even more detail than required by Section 15(b)(1):

> The Kronos Touch ID system does not retain or store images of an employee's fingerprint scans. Instead, a biometric algorithm using feature extraction creates a unique template which is effectively an encoded, mathematical representation of an employee's fingerprint. … Biometric templates are stored on the Touch ID Plus device and are used to compare a live fingerprint scan each time an employee clocks in or out. At no time are any images of an employee's fingerprints stored[.]

(*Id.*) The Policy further informs employees, in writing, pursuant to Section 15(b)(2), of the specific purpose for collecting any biometric data and of the length of time for which Old Dominion will retain that information:

> In order to efficiently and securely track employees' time records, Old Dominion Freight Line, Inc. ("ODFL" or the "Company") has engaged Kronos Inc. ("Kronos") to administer a biometric timekeeping system. Kronos utilizes biometric technology for the purpose of identifying employees and recording time entries[.] … An employee's biometric information (i.e., biometric template) will be retained only until the initial purpose for collecting or obtaining the biometric identifiers or information has been satisfied, or within 3 years of the employee's last interaction with the Company, whichever occurs first.[3] (*Id.*)

Plaintiffs do not claim that the Biometric Policy does not disclose the information required by Section 15(b)(1)-(2). Instead, they allege that the Policy does not contain a hyperlink to the text of the BIPA and does not expressly reference the BIPA. (Dkt. 77, ¶ 48.) There is no such

---

[3] As reflected in later versions of the Policy, Old Dominion updated its retention schedules to more specifically state that the Company "will destroy an employee's Biometric Data, including any information stored on the time management systems (if any), as soon as practicable following the termination of an employee's employment with the Company," and "will make reasonable and technically feasible efforts to ensure that Biometric Data is not retained for longer than one year following an employee's last interaction with the Company." (*See, e.g.,* Dkt. 77-6, PageID # 3042.)

7

requirement in the BIPA and Old Dominion is unaware of any court that has read such a requirement into the statute. Even so, the Biometric Policy *does* disclose the existence of laws regulating the use of a biometric time keeping system, stating: "ODFL will utilize its biometric timekeeping system and apply this policy in a manner that complies with all applicable laws. In the event of any conflict between applicable law and this policy and/or ODFL's biometric timekeeping system, applicable law will always control." (*Id.* ¶¶ 104, 115, 136, 154, Exs. A-F.)

Unable to find issue with the content of the Policy, Plaintiffs appear to take issue with the manner in which the Policy was presented within the Employee Handbook. For example, Plaintiffs allege that the Policy is "buried" within the Employee Handbook. (Dkt. 77, ¶¶ 114, 135.) However, the BIPA does not address how an entity must make the disclosures required by Section 15(b)(1)-(2) other than to require that they be "in writing." 740 ILCS 14/15(b)(1-2). The BIPA certainly does not state that an employer cannot provide the information required by Section (b)(1-2) in writing to its employees by including it in its employee handbook. Rather, this seems an entirely reasonable place for that information because, as Plaintiffs concede, the Employee Handbook is the source for disclosures and notices of employee rights required by various federal and state laws. (Dkt. 77, ¶¶ 46-47.) Moreover, the Employee Handbooks attached as exhibits to the Complaint explicitly state that they are "a guide to general employment procedures and policies of Old Dominion" which are provided "for information purposes." (*Id.,* Ex. A-F.) The Illinois General Assembly could have dictated a specific method of disclosure, such as by requiring employers, as it does in other employment laws, to post a notice in a conspicuous location on its premises where other notices are customarily posted. *See, e.g.,* Illinois Wage Payment and Collection Act, 820 ILCS 115/3; Illinois Human Rights Act, 775 ILCS 5/2-102(K)(1), 775 ILCS

8

5/2-105(B)(5)(b). Yet, the Illinois General Assembly chose not to specify how the written disclosures required by Section 15(b)(1-2) of the BIPA must be made.

In any event, Old Dominion's Biometric Information Privacy Policy is not "buried" in the Employee Handbook. To the contrary, the Policy is listed prominently in the first column of the Table of Contents on the first page of the Employee Handbook. (Dkt. 77, ¶¶ 99, 109, 130, 150; Exs. A-F.) Because Old Dominion informed its employees, including the Plaintiffs, in writing, via Employee Handbooks that have been in effect since April 2018, that a biometric identifier or biometric information is being collected or stored, along with the specific purpose and length of term for which such data is being collected, stored, and used, Plaintiffs have not and cannot state a claim under Section 15(b)(1-2) of the BIPA. Old Dominion's online Privacy Policy separately meets the requirements of Section 15(b)(1-2) for the reasons explained in Section III, *infra.* Thus, Counts I and II of Plaintiffs' Complaint must be dismissed, with prejudice.

### III.     **Plaintiffs Fail to State a Claim Under Section 15(a) of the BIPA.**

Plaintiffs allege that Old Dominion failed to comply with Section 15(a) because it allegedly "had not published a publicly available 'retention schedule…for permanently destroying biometric identifiers and biometric information'" or "publicly available 'guidelines for permanently destroying biometric [data] when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity.'" (Dkt. 77 ¶¶ 299, 300.) Plaintiffs further allege that Old Dominion violated Section 15(a) because it "has not produced any *internal* 'guidelines…'" (*Id.* ¶ 301).

In their Second Amended Complaint, Plaintiffs referenced the "Old Dominion Freight Line, Inc. Privacy Policy" that is posted on Old Dominion's public website and included a hyperlink to that webpage. (Dkt. 14, ¶ 53, citing https://www.odfl.com/us/en/privacy-policy.html.)

9

In contrast, the Fourth Amended Complaint does not acknowledge the existence of this publicly available policy. Nonetheless, the Court may take judicial notice of this publicly available information, particularly where it was explicitly referenced in Plaintiffs' prior complaint. *See Williamson v. Curran,* 714 F.3d 432, 436 (7th Cir. 2013) ("[A] court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice."); *Brodsky v. HumanaDental Ins. Co.,* 2011 U.S. Dist. LEXIS 12121, *13 (N.D. Ill. Feb. 8, 2011) ("[T]he court may take judicial notice of prior judicial proceedings and court records.").

The Old Dominion Privacy Policy available online states that Old Dominion may collect biometric information for various reasons, including "[t]o administer employee timekeeping and reporting," "[t]o manage [its] employment relationship with [its] employees," and "[t]o ensure that [it is] complying with [its] legal and contractual obligations." (Ex. 1.) Further, the Privacy Policy contains an explicit retention provision which states that Old Dominion retains "Personal Information," which includes biometric information, for, among other reasons, "the periods necessary to" "fulfill the purposes described in th[e] Privacy Policy" or "comply with applicable laws, legal holds, and other legal obligations (including contractual obligations)," which would include compliance with the BIPA. (*Id.*) The Privacy Policy directs individuals to Old Dominion's biometric policy for more information and includes contact information for individuals to reach out with "any questions or concerns about [Old Dominion's] privacy policies and practices." (*Id.*) Further, every version of the Old Dominion Employee Handbook in effect since April 2018 has contained a Biometric Information Privacy Policy that provides additional information regarding Old Dominion's retention schedule and guidelines for permanently destroying biometric

10

identifiers and biometric information, as required by Section 15(a). (Dkt. 77, Exs. A-F.) For these reasons, Count IV of Plaintiffs' Complaint should be dismissed, with prejudice, pursuant to Rule 12(b)(6).

## IV. Plaintiffs' Claims Are Barred in Their Entirety by the Doctrine of Laches.

Plaintiffs' claims should be dismissed pursuant to the equitable doctrine of laches, which "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *AMTRAK v. Morgan*, 536 U.S. 101, 121 (2002)*; see also W. Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co.*, 794 F.3d 666, 678 (7th Cir. 2015). "The doctrine of laches is grounded on the principle that courts are reluctant to come to the aid of a party who knowingly slept on his rights to the detriment of the other party." *W. Bend Mut. Ins. Co.*, 784 F.3d at 678. The Court may rule on affirmative defenses on a Rule 12(b)(6) motion when the plaintiff pleads himself out of court by disclosing the basis in his complaint. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); *Hollander v. Brown*, 457 F.3d 688, 691 (7th Cir. 2006). "[L]aches can be raised by a motion to dismiss if: (1) an unreasonable delay appears on the face of the pleading; (2) no sufficient excuse for delay appears or is pleaded; and (3) the motion specifically points out the defect." *Arclar Co. v. Gates*, 17 F. Supp. 2d 818, 823 (S.D. Ill. Aug. 20, 1998); *see also Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990) (affirming dismissal of statutory claim on laches grounds where inexcusable delay was clear from face of complaint); *Abbott Labs. v. CVS Pharm., Inc.*, 2001 U.S. Dist. LEXIS 9593, at *3 (N.D. Ill. July 10, 2001) ("where laches is apparent on the face of the complaint, it is properly raised in a motion to dismiss").

A recent decision by the Illinois Circuit Court of Kane County in *Arguenta v. Proven Partners Group, LLP*, is directly relevant and involves facts which are nearly identical to those The plaintiff worked for the defendant for nearly a year before signing a BIPA-compliant consent

11

and then filed suit under the BIPA years later. The court held that the defendant's "laches argument is a hundred percent reasonable[.]" Case No. 2023 CH 38 (Cir. Ct. Kane Cty., Oct. 25, 2023), Hearing Transcript 3:22-24, attached as Exhibit 2. As the Court explained:

> I don't believe the [BIPA] was intended to allow somebody to bring a cause of action against their employer when the employer ultimately, early on in the employment experience, complies with the Act. . . .She continued to work there five years. I don't think she can acquiescence to the late timing and then five years later turn around and say, oh, wait a minute; I have been aggrieved. *Id*. 4:24-5:23.

The court found that the plaintiff's failure to bring her claim "*at least* within the first year of her employment….[a]nd . . . happily continuing on as an employee clearly is a lack of diligence. And clearly, the defendants were prejudiced by her – her actions." *Id*. 6:3-9. Thus, the court dismissed the plaintiff's case in its entirety, with prejudice, on that basis.

As in *Arguenta*, Plaintiffs continued to use the clock "hundreds" of times despite receiving the written disclosures required in Section 15(b)(1)-(2) of the BIPA. Among other things, the Biometric Policy that has been part of the Employee Handbook since April 2018 clearly identifies: (i) the manufacturer and model of the time clock (Kronos Touch ID System); (ii) the specific information stored by the time clock (an encoded mathematical representation), (iii) the purpose of the data collection (recording time entries); (iv) the length of time the mathematical representation would be stored; and (v) the existence of laws governing the collection and use of biometric data. (*See e.g.,* Dkt. 77, Ex. A at PageID# 2306-07.) Despite Plaintiffs' efforts to carefully plead around the issue – alleging, for example, that they never received "a paper copy" or an "electronic link" to the Policy – not one of the eight named Plaintiffs alleges that he never received a copy the Employee Handbook. Despite being informed, in writing, of the information required by Section 15(b)(1)–(2) – and more – Plaintiffs continued to use the time clock at issue. (Dkt. 77, ¶¶ 14, 20-27.) Plaintiffs also do *not* allege that they complained or objected to providing

12

their alleged biometric data at any time. Instead, each Plaintiff allegedly used Old Dominion's timeclock *at least* hundreds of times during their employment. (Dkt. 77, ¶¶ 20-27.)

The prejudice suffered by Old Dominion because of the Plaintiffs' unreasonable delay in asserting any issues or violations of BIPA is apparent on the face of the Complaint. By failing to bring their claims when they were first aware that their biometric data was allegedly being collected, and by failing to even complain or ask questions about or object to providing their alleged biometric data despite using the time clock at issue "hundreds" of times, Plaintiffs deprived Old Dominion of the opportunity to address (to the extent necessary) any concerns in real-time. This is exactly the type of result Illinois Supreme Court Justice Overstreet warned against in his dissenting opinion in *Cothron v. White Castle Sys.*, writing "[u]nder the majority's rule, plaintiffs would be incentivized to delay bringing their claims as long as possible" "to keep racking up damages." 2023 IL 128004, ¶ 60. Indeed, Plaintiffs would be unjustly enriched by their delay and lack of diligence as they now appear to seek between $250-$1,000 for *each time* they used the timeclock.[4] (Dkt. 77, ¶¶ 19-29.)

Because it is apparent from the face of the Complaint that Plaintiffs unreasonably delayed in bringing their claims against Old Dominion, to the prejudice of Old Dominion, they are barred from recovering by the doctrine of *laches* and the Complaint should be dismissed, with prejudice.

### V.     **Plaintiff Caison's Claims Are Barred by the Doctrine of Judicial Estoppel.**

The Court should dismiss Plaintiff Caison's claims with prejudice under the doctrine of judicial estoppel because Caison failed to disclose his claims to the United States Bankruptcy Court in his bankruptcy petition, as required. The doctrine of judicial estoppel prevents a party from obtaining a benefit by asserting one position in a legal proceeding and later taking the

---

[4] Plaintiffs' apparent request for per-scan damages also raises serious concerns regarding constitutionality.

13

contrary position to obtain another benefit. *New Hampshire v. Maine*, 532 U.S. 742, 749-751 (2001). The law is clear that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). Moreover, judicial estoppel applies to bar a claim concealed from the bankruptcy court even if, as here, the bankruptcy is still pending and the debts are not being discharged. *Williams v. Hainje*, 375 Fed. Appx. 625 (7th Cir. 2010) (holding that "a debtor who receives even preliminary benefits from concealing a chose in action from his creditors can still be estopped from pursuing the suit in the future.").

In *Williams*, the Seventh Circuit held that a Chapter 13 debtor was judicially estopped from pursuing the civil rights claim he failed to disclose to the bankruptcy court before he received the benefits of an automatic stay and a reorganization plan that substantially reduced, but would not discharge, his debts. *Id.* at 627-828. The Seventh Circuit, affirming the lower court's entry of summary judgment against plaintiff, rejected the plaintiffs' argument that the doctrine of judicial estoppel did not apply because the bankruptcy case was pending and he amended his disclosures after defendant moved for summary judgment. *Id.* at 627. "To hold otherwise," the Court noted, "would give debtors an incentive to game the bankruptcy system[,]" which would "undermine both the primary aim of judicial estoppel, which is to protect the integrity of the judicial process, and the bankruptcy law's goal of unearthing all assets for the benefit of creditors." *Id.* at 628.

*Williams* is dispositive here. Plaintiff Caison filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois in January 2018. Case No. 18-00192, Dkt. 1 (Bankr. N.D. Ill.). [5] Like the plaintiff in *Williams*, Caison failed to disclose the claims he

---

[5] This Court may take judicial notice of publicly filed documents in ruling on a Rule 12(b)(6) motion to dismiss, without converting the motion to one for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

14

asserts in this action in the Schedule of Assets that was included in the Chapter 13 Bankruptcy Plan filed by Plaintiff Caison on March 6, 2018, and approved by the Court. Case No. 18-00192, Dkt. 33, 38 (Bankr. N.D. Ill.). Caison was undeniably aware of the claims he asserts in the instant lawsuit by April 28, 2023, when his counsel sought leave to add Caison as a named plaintiff. (Dkt. 6). Yet, Caison did not disclose his claims to the bankruptcy court until August 11, 2023, more than five years after he claims to have first used the time clock at issue. *See* Case No. 18-00192, Dkt. 87 (Bankr. N.D. Ill.); Dkt. 77, ¶¶ 5, 44. In the interim, Caison continued to receive benefits from the Bankruptcy Court, including an automatic stay of collection on his debts, which allowed him to retain the collateral securing his debts, and a bankruptcy plan that reduced his monthly payments to his creditors. *Id.*

Caison cannot argue that his concealment of his claims was inadvertent. Indeed, he alleges that he used Old Dominion's purported biometric clock "at least 600 times" during his employment. (Dkt. 77, ¶ 23). Caison claims that Old Dominion owes him up to $1,000 for each time he used the clock. (*Id.* ¶ 173). It is impossible to believe that Caison overlooked a claim he contends is so sizable that was central to his daily activities at work until August 11, 2023, when he realized Old Dominion was aware and seeking dismissal. Accordingly, Caison is judicially estopped from pursuing his concealed claims and the Court should dismiss Caison's claims in their entirety, with prejudice.

## CONCLUSION

For the foregoing reasons, Old Dominion respectfully requests that the Court dismiss with prejudice Plaintiffs' Fourth Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and grant Old Dominion any additional relief deemed just and appropriate.

15

Dated: December 22, 2023 Respectfully submitted,

**OLD DOMINION FREIGHT LINE, INC.**

By: /s/ *Jody Kahn Mason*
   One of Its Attorneys

## **CERTIFICATE OF SERVICE**

I, Jody Kahn Mason, an attorney, certify that on December 22, 2023, I caused a true and correct copy of the attached ***Defendant's Memorandum in Support of Its Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint*** to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's system.

/s/ *Jody Kahn Mason*