## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is entered into by and between Plaintiffs John Kararo, Sean Walker, Ian Travis, Melvyn L. Caison, Jr., Gabriel Castellano and Diego Delgado ("Plaintiffs" or "Class Representatives"), on behalf of themselves and the members of the Settlement Class ("Settlement Class Members") and Defendant Old Dominion Freight Line, Inc. ("Defendant" or "ODFL") in the case of *John Kararo, et al. individually, and on behalf of all Illinois citizens similarly situated v. Old Dominion Freight Line Inc.*, Case No. 2023-cv-02187, currently pending in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 2023-cv-02187 (the "Lawsuit"). Plaintiffs and Defendant are each referred to as a "Party" and are collectively referred to herein as the "Parties."

## I.    FACTUAL BACKGROUND AND RECITALS

1.    On April 6, 2024, Plaintiff John Kararo filed a putative class action lawsuit, *i.e.*, the "Lawsuit," against Defendant alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* in the United States District Court for the Northern District of Illinois, Eastern Division. Plaintiffs Sean Walker, Ian Travis, Melvyn L. Caison, Jr., Gabriel Castellano and Diego Delgado subsequently joined the Lawsuit as named Plaintiffs. In addition, two subsequently added Plaintiffs, Tri Minh La and Juan Carlos Garcia, were voluntarily dismissed as named Plaintiffs.

2.    The Lawsuit is a putative class action. The Parties engaged in extensive litigation in the Lawsuit from the time of its filing until around September 2024. During the Lawsuit, the Parties have thoroughly investigated the other Parties' claims or defenses and the relevant issues in the case. In the course of litigation, the Parties filed many pleadings, dispositive motions, discovery motions and other substantive filings. The parties also served and responded to well over 200 discovery requests and held several sessions (and several hours) conferring under Federal Rule of Civil Procedure 37. In September 2024, the Parties agreed to focus on reaching a resolution, and began intense arm's-length negotiations and exchanged additional information to aid negotiations over the course of approximately two months, September to November 2024. Following their arm's-length negotiations, the Parties negotiated a settlement in which the Parties have agreed to resolve all matters pertaining to, arising from, or associated with the Lawsuit, and as set forth herein, including, but not limited to, claims arising under the BIPA, the allegations contained in the Lawsuit, as well as any related or similar statutory or common law claims and any other claims related to any alleged collection of alleged biometric identifiers or biometric information, including, but not limited to, in connection with the Timekeeping System (as defined in Paragraph 38 below), whether any of the aforementioned claims be asserted or unasserted, which Plaintiff and the members of the Settlement Class (as defined in Paragraph 41 below) have or may have had against the Released Parties (as defined in Paragraph 34 below), through the date on which the Parties execute this Agreement.

3.    The Parties have agreed to settle the Lawsuit on the terms and conditions set forth herein in recognition that the outcome of the Lawsuit is uncertain and that achieving a final result through litigation would require substantial additional risk, discovery, time, and expense.

1

<span style="color:red">Exhibit A</span>

4. Defendant denies and continues to deny all charges of wrongdoing or liability of any kind whatsoever, including the claims that Plaintiffs and/or members of the Settlement Class have asserted in the Lawsuit or may in the future assert. Despite its belief that it is not liable and that it has meritorious defenses to the claims alleged in the Lawsuit, Defendant desires to settle the Lawsuit and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation or proceeding relating to the matters being fully settled and finally resolved in this Settlement Agreement. Neither this Settlement Agreement, nor any settlement negotiation or discussion thereof, is or may be deemed to be or may be used as an admission of or evidence of any wrongdoing or liability. Further, neither this Settlement Agreement, nor any settlement negotiation or discussion thereof, is or may be deemed to be or may be used as an admission that the Timekeeping System or any other system used by Defendant collected, captured, received, or otherwise obtained or disclosed biometric identifiers or biometric information under the BIPA or any similar federal, state, or local law, or that Defendant otherwise possessed, collected, captured, received, or otherwise obtained or disclosed biometric identifiers or biometric information as those terms are defined by the BIPA.

5. Following arm's-length negotiations, the Parties now seek to enter into this Settlement Agreement. Plaintiff and Class Counsel have conducted an investigation into the facts and the law regarding the Lawsuit, through extensive discovery and additional informal exchange of information, and have concluded that a settlement according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement Class, recognizing: (a) the existence of complex and contested issues of law and fact; (b) the risks inherent in litigation; (c) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement; (d) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (e) the Plaintiffs' determination that the Settlement is fair, reasonable, adequate, and will substantially benefit the Settlement Class Members.

6. Considering the risks and uncertainties of continued litigation and all factors bearing on the merits of settlement, the Parties are satisfied that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, and in their best respective interests.

7. In consideration of the covenants, agreements, and releases set forth herein, including general releases from the Class Representatives (as defined in Paragraph 51 below), and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Lawsuit be settled and compromised, and that the Releasors (as defined in Paragraph 35 below) release the Released Parties of the Released Claims (as defined in Paragraph 33 below), without costs as to Defendant, Released Parties, Plaintiffs, Class Counsel, or the Settlement Class, except as explicitly provided for in this Agreement, subject to the approval of the Court, on the following terms and conditions.

8. However, if this Settlement Agreement is not approved by the Court for any reason, Defendant reserves all rights to further contest liability, challenge class certification, and the

2

Parties will return to their prior positions in the Lawsuit. Further, Plaintiffs reserve the right to further prosecute their claims in the Lawsuit and seek class certification in the Lawsuit.

## II.   **DEFINITIONS**

The following terms, as used in this Agreement, have the following meanings:

9.    "Lawsuit" shall mean the Lawsuit pending in the United States District Court for the Northern District of Illinois, Eastern Division, titled *John Kararo, et al. individually, and on behalf of all Illinois citizens similarly situated v. Old Dominion Freight Line Inc.*, Case No. 2023-cv-02187.

10.    "Administrative Expenses" shall mean expenses associated with the Settlement Administrator, including but not limited to costs in providing notice, communicating with the Settlement Class Members, and disbursing payments to the proposed Settlement Class Members. On behalf of the Parties, Defendant will make its best efforts to obtain a Settlement Administration quote "not to exceed" $15,000.00. Any Settlement Administration Costs that exceed this amount will be deducted from the Maximum Settlement Fund (as defined by Paragraph 23 below) and will not be an additional cost to Defendant. The Administration Expenses will be paid out of the Maximum Settlement Fund.

11.    "Class," "Settlement Class," "Class Member," or "Settlement Class Member" shall mean each member of the Settlement Class, as defined in Section III of this Agreement, who does not timely elect to be excluded from the Settlement Class and includes, but is not limited to, Plaintiffs.

12.    "Class Counsel" shall mean James Vlahakis of Vlahakis Law Group LLC.

13.    "Counsel" or "Counsel for the Parties" means both Class Counsel and Defendant's Counsel, collectively.

14.    "Court" shall mean the United States District Court for the Northern District of Illinois, Eastern Division, and any judge presiding over the Lawsuit.

15.    "Defense Counsel" shall mean Jason Selvey, Jody Kahn Mason and Hannah Griffin Garlough of Jackson Lewis P.C.

16.    "Effective Date" shall mean the date when the Settlement Agreement becomes Final. If there are no objectors, the Effective Date shall mean when the Court grants Final Approval.

17.    "Fee and Expense Petition" shall mean the motion to be filed by Plaintiffs, in which Class Counsel will seek approval of an award of attorneys' fees, costs, and expenses.

18.    "Fee and Expense Award" means the amount of attorneys' fees and reimbursement of reasonable out-of-pocket costs and expenses awarded by the Court to Class Counsel to be paid out of the Maximum Settlement Fund.

19.    "Final" means the Final Approval Order has been entered on the docket, and if a timely objection has been submitted (a) the time to appeal from such order has expired and no appeal has been timely filed; (b) if such an appeal has been filed, it has been finally resolved and has resulted in an affirmation of the Final Approval Order without any material modification; (c) the Court, following the resolution of the appeal, enters a further order or orders approving the settlement on the material terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s); or the date of final dismissal of any appeal or the final dismissal of any proceeding on appeal with respect to the Final Approval Order.

20.    "Final Approval Hearing" means the hearing before the Court where the Plaintiffs will request a Final Approval Order to be entered by the Court approving the Settlement Agreement, approving the Fee and Expense Award, and approving Class Representative Awards to the Class Representatives.

21.    "Final Approval Order" shall mean an order entered by the Court that:

a.    Confirms the certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23 only for purposes of effectuating this settlement;

b.    Finds that the Settlement Agreement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and approves and directs consummation of this Agreement;

c.    Dismisses the Plaintiffs' individual and class claims pending before it with prejudice and without costs, except as explicitly provided for in this Agreement;

d.    Approves the Class Representatives' General Releases of Claims attached hereto as Exhibit B and Releases provided in Section V and orders that, as of the Effective Date, the Released Claims will be forever released as to the Released Parties; and

e.    Finds that there is no just reason for delay of entry of final judgment with respect to the foregoing.

22.    "Class Representative Award" shall have the meaning ascribed to it as set forth in Section XII of this Agreement.

23.    "Maximum Settlement Fund" shall mean the settlement fund to be established by Defendant with cash and defined credits, as explained below, and which has the total value, cash and credit combined, of One Million Six Hundred Twenty-Five Thousand Dollars and No Cents

($1,625,000.00). The Maximum Settlement Fund of $1,625,000.00 will be composed of, and shall be funded by Defendant, only as follows: (a) a cash payment of $1,211,500.00 (One Million Two Hundred Eleven Thousand Five Hundred Dollars and No Cents) from Defendant and/or its designee, and (b) the gross value of $413,500.00 (Four Hundred Thirteen Thousand Five Hundred Dollars and No Cents) in Release Payments (defined below) previously made by Defendant to certain Settlement Class Members. The Maximum Settlement Fund is inclusive of the Administrative Expenses, Fee and Expense Award, and Class Representative Awards, as well as any other costs and expenses related to this matter. Defendant has no obligation to pay any amount that exceeds the Lawsuit's Maximum Settlement Fund cash portion of $1,211,500.00. There will be no event under which the Defendant will pay any amount in excess of the Maximum Settlement Fund for the Lawsuit. Once more, for the sake of clarity, Defendant shall not be required under any circumstances to make a cash payment in connection with this Settlement that exceeds the $1,211,500.00 payment referenced in this paragraph.

24. "Notice" means the direct notice of this proposed Settlement, which is to be provided substantially in the manner set forth in this Agreement and Exhibit A, is consistent with the requirements of due process, and approved by the Court.

25. "Notice Date" means the date by which the Notice is mailed to the Settlement Class by the Settlement Administrator, which shall be within fourteen (14) days after the entry of a Preliminary Approval Order.

26. "Objection/Exclusion Deadline" means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a person within the Settlement Class must be postmarked and/or filed with the Court, which shall be designated as a date forty-five (45) days after the Notice Date, or such other date as ordered by the Court.

27. "Parties" shall mean Plaintiffs and Defendant, collectively.

28. "Plaintiffs" or "Class Representatives" shall mean the named Plaintiffs and Class Representatives in this Lawsuit, John Kararo, Sean Walker, Ian Travis, Melvyn L. Caison, Jr., Gabriel Castellano and Diego Delgado. "Plaintiff" or "Class Representative" shall mean any of the Plaintiffs or Class Representatives.

29. "Preliminary Approval" shall mean the date of entry of the Preliminary Approval Order.

30. "Preliminary Approval Order" shall mean the Court's Order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes only, and directing Notice of the Settlement to the Settlement Class substantially in the form of the Notice set forth in this Agreement. The Preliminary Approval Order submitted to the Court shall be substantially in the form agreed upon by the Parties and attached hereto as Exhibit C.

31. "Related Lawsuits" shall mean any proceedings, other than the Lawsuit, that allege that Defendant or any other Released Party violated BIPA or any related statutes or common law

claims, that were or could have been brought by any of Plaintiffs or any member of the Settlement Class.

32. "Release Payment" shall mean the gross payment of $500.00 that 827 Settlement Class Members received from Defendant in exchange for signing, in 2023, a Claim Release Form relating to potential claims under the BIPA against Defendant.

33. "Released Claims" shall mean any and all claims, liabilities, demands, causes of action, and lawsuits of the Plaintiffs and Settlement Class Members, whether known or unknown, filed or unfiled, asserted or as of yet unasserted, existing or contingent, whether legal, statutory, equitable, or of any other type or form, whether under federal, state, or local law, and whether brought in an individual, representative, or any other capacity, of every nature and description whatsoever, including, but not limited to, claims that were or could have been brought in the Lawsuit or any other actions filed (or to be filed) by one or more Plaintiffs and/or any Settlement Class Members against any of the Released Parties (defined below), such as Related Lawsuits, relating in any way to or connected with any alleged capture, collection, storage, possession, transmission, conversion, purchase, obtaining, sale, lease, profit from, disclosure, re-disclosure, dissemination, transmittal, conversion and/or other use of alleged biometric identifiers and/or biometric information, including, but not limited to, in connection with any Timekeeping System used by Defendant during the relevant timeframe, to the date of preliminary approval of Settlement in the Lawsuit, including, but not limited to claims under the BIPA from the beginning of time to the date of preliminary approval of Settlement in the Lawsuit ("Released Claims"). This release includes, without limitation, statutory, constitutional, contractual, and/or common law claims for damages, unpaid costs, penalties, liquidated damages, statutory damages, punitive or exemplary damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief to the extent permitted by applicable law which may arise from the Released Claims. In exchange for the Class Representative Awards to be provided to Plaintiffs as set forth in Section XII, Plaintiffs will execute the applicable General Release attached hereto as Exhibit B.

34. "Released Party" or "Released Parties" shall mean Defendant and all of its past, present, and future, direct or indirect, current and former owners, parents, subsidiaries, divisions, and affiliates, and each of their respective officers, directors, shareholders, members, board members, partners, agents, employees, attorneys, insurers, reinsurers, predecessors, successors and assigns, and all manufacturers, suppliers, contractors and vendors of the Timekeeping System.

35. "Releasors" shall refer, jointly and severally, and individually and collectively, to Plaintiffs, the Settlement Class Members, and to each of their predecessors, successors, spouses, heirs, executors, administrators, agents and assigns of each of the foregoing, and anyone claiming to be acting by, through or on behalf of them.

36. "Settlement Administrator" means, subject to Court approval, the entity selected and supervised by the Parties, or a different settlement administrator chosen by the parties and approved by the Court, to administer the Settlement.

37. "Settlement Class List" or "Class List" shall mean the list of Settlement Class Members to whom the Notice will be sent, as further defined in Paragraph 48.

38.     "Timekeeping System" shall mean the timekeeping technology used by Defendant in Illinois from April 6, 2018, to the date of preliminary approval of the Settlement of the Lawsuit which utilized the scan of Plaintiffs' and the other Settlement Class Members' fingers as part of the process of recording their work time.

## III.     SETTLEMENT CLASS CERTIFICATION

39.     For the purposes of the Settlement only, the Parties stipulate and agree that (a) the Class shall be certified in accordance with the definition contained in Paragraph 41, below; (b) Plaintiffs shall represent the Class for settlement purposes only and shall be the Class Representatives; and (c) Plaintiffs' Counsel shall be appointed as Class Counsel.

40.     Defendant does not consent to certification of the Class for any purpose other than to effectuate the Settlement. If the Court does not enter Final Approval of the Settlement Agreement, or if for any other reason Final Approval of the Settlement Agreement does not occur, is successfully objected to, or challenged on appeal, any certification of any Class will be vacated, and the Parties will be returned to their positions with respect to the Lawsuit as if the Agreement had not been entered into.

41.     Subject to Court approval, the following Settlement Class shall be certified for settlement purposes:

> All current and former employees of Defendant who used the finger scanning feature of a Kronos time clock while working for Defendant in Illinois from April 6, 2018, to the date of preliminary approval of the Settlement of the Lawsuit.

42.     Excluded from the Settlement Class are all persons who elect to exclude themselves from the Settlement Class, the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

43.     If for any reason the Settlement Agreement is not approved, the Court does not enter a Preliminary Approval Order and/or Final Approval Order, or a Final settlement and resolution of this Lawsuit as provided for in this Agreement is not reached, Defendant's agreement as to certification of the Settlement Class shall not be used for any purpose, including but not limited to in any request for class certification in the Lawsuit or any other proceeding.

## IV.     SETTLEMENT FUND

44.     **Establishment of Maximum Settlement Fund.**

a.  The Maximum Settlement Fund will be used to satisfy all claims for Settlement Class members in exchange for a comprehensive release and the covenants set forth in this Agreement, including, without limitation, a full, fair, and complete release of all Released Parties from Released Claims, and dismissal of the Lawsuit with

prejudice. No later than fourteen (14) calendar days after entry of the Final Approval Order, Defendant or its designee shall pay $1,211,500.00 to the Settlement Administrator which is the cash portion of the Maximum Settlement Fund.

b. The funds provided by Defendant to the Settlement Administrator will be maintained by an escrow agent as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1, *et seq.*, of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, and shall be deposited in an interest-bearing account.

c. The Maximum Settlement Fund shall be used to pay: (i) the claims of Settlement Class Members who did not timely and validly exclude themselves from the Settlement, including payments to those who did not previously obtain a Release Payment and the cash portion of the claims of Settlement Class Members who did previously obtain a Release Payment (in addition to the Release Payment previously received); (ii) the Class Representative Awards approved by the Court; (iii) the Fee and Expense Award; and (iv) Administrative Expenses to be paid to the Settlement Administrator. The foregoing will necessarily be paid in the cash portion of the Maximum Settlement Fund, but the full value of the Maximum Settlement Fund will be used to calculate payments based on a percentage of the Fund.

d. The Maximum Settlement Fund (both the amount already paid by Release Payments previously made and the amount to be paid) represents the total extent of Defendant's monetary obligations under the Settlement Agreement. Defendant's contributions to the Maximum Settlement Fund shall be fixed under this Section and final. Except as set forth in this Agreement, Defendant and the other Released Parties shall have no obligation to make further payments into the Maximum Settlement Fund and shall have no financial responsibility or obligation relating to the Settlement beyond the Maximum Settlement Fund.

e. The Court may require changes to the method of allocation to Settlement Class Members without invalidating this Settlement Agreement, provided that the other material terms of the Settlement Agreement are not altered, including but not limited to the scope of the Releases, the scope of the Settlement Class, and the amount of the Maximum Settlement Fund.

45. Each Settlement Class Member who does not timely and validly exclude himself or herself from the Settlement shall be entitled to a share of equal value of the Maximum Settlement Fund after Administrative Expenses paid to the Settlement Administrator, a Fee and Expense Award to Class Counsel, and Class Representative Awards to the Class Representative are deducted. However, Settlement Class Members who previously received a Release Payment will have $500.00 deducted from the cash payment they receive from the Maximum Settlement Fund to account for the payment they received with the Claim Release they executed. Each Settlement Class Member who received a Release Payment shall nevertheless receive the same amount of the

Maximum Settlement Fund as all other Settlement Class Members who received a Release Payment. The remaining Settlement Class Members who did not receive a Release Payment will receive the same payment as the other Settlement Class Members who did not receive a Release Payment.

46.    Settlement Class Members shall receive their shares of the Maximum Settlement Fund without having to submit a claim form or otherwise "opt in" to the Settlement Class.

47.    **Procedure for Approving Settlement.**

   a.  Plaintiffs will file the Parties' joint motion for an order granting Preliminary Approval of the Settlement, conditionally certifying the Class for settlement purposes only, approving the Class Notice, and setting a date for the Final Approval Hearing (the "Joint Motion for Preliminary Approval").

   b.  At the hearing on the Joint Motion for Preliminary Approval, the Parties will jointly appear, support the granting of the Joint Motion for Preliminary Approval, and submit a the proposed order granting preliminary approval of the Settlement Agreement in substantially the form of the draft Preliminary Approval Order found at Exhibit C hereto; conditional certification of the Class for the purpose of effectuating the settlement only; appointing the Class Representatives and Class Counsel; approving the form of Notice to the Class of the Settlement; and setting the Final Approval Hearing.

   c.  For the purposes of the Settlement and the proceedings contemplated herein only, the Parties stipulate and agree that the Class shall be certified for settlement purposes only in accordance with the definition and on the terms contained above, that Plaintiffs shall be appointed for settlement purposes only as Class Representatives, and that Plaintiffs' Counsel shall be appointed for settlement purposes only as Class Counsel. Should the Court decline to preliminarily approve any aspect of the Settlement Agreement, the Parties will attempt to renegotiate those aspects of the Settlement Agreement in good faith, with the mutual goal of attempting to reach an agreement as close to this Settlement Agreement as possible and will then submit the renegotiated settlement agreement to the Court for preliminary approval. If, and only if, the Parties are unable to obtain preliminary approval of a settlement agreement after submitting at least two renegotiated settlements to the Court, the Settlement Agreement will be null and void, the Parties will have no further obligations under it, and the Parties will revert to their prior positions in the Lawsuit as if the Settlement had not occurred.

48.    **Procedure for Administering Settlement.**

   a.  Settlement Class List.

      i.  Defendant shall create a Settlement Class List, based on readily available information already within Defendant's possession ("Class List").

    ii. The Class List will include the first and last name, and last known address for Settlement Class Members to the extent known by Defendant. The Class List will also indicate whether each Settlement Class Member identified previously received a Release Payment. The Parties agree that the Class List shall only be provided to the Settlement Administrator for the purpose of giving notice to the Settlement Class Members and that the Settlement Administrator shall keep the Class List and all personal information obtained therefrom, including the identity and contact information of all persons, strictly confidential.

    iii. The Settlement Administrator will update the Class List using the United States Postal Service's database of verifiable mailing addresses and the National Change-of-Address database.

    iv. Defendant shall provide the Class List to the Settlement Administrator within seven (7) days after entry of the Preliminary Approval Order. Class Counsel acknowledges and agrees that he will not receive a copy of the Class List from Defendant, nor will he seek a copy of the Class List from the Settlement Administrator. Notwithstanding the foregoing, within one (1) business day of receiving the Class List, the Settlement Administrator shall inform Class Counsel of how many individuals are identified in the Class List and confirm that the Class List includes the information necessary for the Settlement Administrator to disseminate Notice as set forth herein.

b. Type of Notice Required.

    i. The Notice, which shall be substantially in the form of Exhibit A attached hereto, shall be used for the purpose of informing Settlement Class Members that there is a pending settlement and to further inform Settlement Class Members how they may: (i) protect their rights regarding the settlement; (ii) request exclusion from the Settlement Class and the proposed settlement, if desired; (iii) object to any aspect of the proposed settlement, if desired; and (iv) participate in the Final Approval Hearing, if desired. The Notice shall make clear the binding effect of the settlement on all persons who do not timely request exclusion from the Settlement Class.

    ii. Distribution of the Notice to Settlement Class Members shall be the responsibility of the Settlement Administrator. The text of the Notice shall be agreed upon by the Parties and shall be substantially in the form attached as Exhibit A hereto.

    iii. Upon receiving the Class List and prior to distributing the Notice, the Settlement Administrator will update the addresses of Settlement Class Members on the Class List using the National Change of Address database

and other available resources deemed suitable by the Settlement Administrator.

iv. Within fourteen (14) days of entry of the Preliminary Approval Order, individual Notice shall be sent via First Class U.S. Mail to each Settlement Class Member. For all mailings returned as undeliverable, the Settlement Administrator shall perform one reverse look-up to find any updated address and will cause the Notice mailing to be re-mailed to each affected Settlement Class Member.

49. **Allocation.**

a. Within twenty-eight (28) days after the Effective Date, the Settlement Administrator shall send by First Class U.S. Mail to each Settlement Class Member who did not previously receive a Release Payment and who did not validly exclude himself or herself from the Settlement a check equal to a gross amount of approximately Eight Hundred Fifty Eight and 87/100 Dollars ($858.87) less a proportionate share of Administrative Expenses, the Class Representative Awards (provided the Class Representatives have executed a general release of claims and that any applicable revocation period has expired), and Fee and Expense Award to Class Counsel.

b. Within twenty-eight (28) days after the Effective Date, the Settlement Administrator shall send by First Class U.S. Mail to each Settlement Class Member who previously received a Release Payment and who did not validly exclude himself or herself from the Settlement a check equal to a gross amount of Eight Hundred Fifty Eight and 87/100 Dollars ($858.87) less a proportionate share of Administrative Expenses, the Class Representative Awards (provided the Class Representatives have executed a general release of claims and that any applicable revocation period has expired), Fee and Expense Award to Class Counsel, followed by a $500.00 deduction to account for the previously received Release Payment.

c. Within twenty-one (21) days after the Effective Date, the Settlement Administrator shall send checks by First Class U.S. Mail, addressed to Vlahakis Law Group LLC, 20 N. Clark St., Ste. 3300, Chicago, IL 60602, and made out to each of the Class Representatives in the amount of the Class Representative Award awarded by the Court, provided that the Class Representative has executed and not revoked the appropriate General Release attached hereto in Exhibit B (Ex. B1 for Plaintiffs Sean Walker, Melvyn L. Caison, Jr., Gabriel Castellano and Diego Delgado); Ex. B2 for Plaintiffs John Kararo and Ian Travis). The amount of the Class Representative Award shall be reported as 1099 income to Plaintiffs and will be reported on an IRS Form 1099.

d. The Settlement Administrator shall notify the Parties that all payments have been issued within five (5) business days of the last such payment. The Settlement

Administrator will provide Counsel for the Parties with weekly reports regarding the status of administration of this Settlement.

e.  Checks to the Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and will thereafter automatically be cancelled if not cashed. At the conclusion of the 60-day period, the Settlement Administrator shall provide a list of any settlement checks that are not then cashed/negotiated to counsel for the Parties. Within ten (10) days of the expiration of the 60-day period, the Claims Administrator shall transfer fifty percent (50%) of such uncashed funds and any other undistributed funds to A.R.F.-Animal Rescue Foundation as *cy pres* recipient, subject to the approval of the Court, and fifty percent (50%) of such uncashed funds and any other undistributed funds to Defendant as directed by Defendant's Counsel.

f.  If any Settlement Class Member does not cash the settlement check within the 60-day period, the Settlement Class Member whose check was not cashed will be deemed to have waived irrevocably any right or claim to his or her payment from the Settlement, but the terms of the Settlement, including the release of claims, nevertheless will be binding upon that individual.

## V.  **RELEASE**

50.  **The Releasors' Release.**  Upon the Effective Date, and in consideration of the settlement relief described herein, the sufficiency of which is acknowledged by the Parties, Class Counsel, and Defendant's Counsel, the Releasors (as defined by Paragraph 35), and each of them, shall be deemed to have released and shall have fully, finally, and forever released, relinquished, waived, surrendered, forgone, abandoned, cancelled, and discharged any and all Released Claims against the Released Parties. As of the Effective Date, all Releasors will be forever barred and enjoined from prosecuting any pending or future Lawsuit against the Released Parties asserting any and/or all Released Claims.  Releasors and anyone else purporting to act on behalf of, or for the benefit of, or derivatively for any of them, are permanently barred from filing, commencing, continuing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding, in any jurisdiction or forum, that is based upon, arises out of, or relates to any Released Claims, including, without limitation, any claim that is based upon, arises out of, or relates to (i) the Lawsuit or the transactions and occurrences referred to in the Lawsuit, or (ii) Defendant's practice or alleged practice of capturing, collecting, obtaining, storing, disseminating, transmitting, and/or using any alleged biometric identifiers and/or biometric information of individuals.

51.  **Class Representatives' General Release of Claims**.  In exchange for the Class Representative Awards to be provided to the Class Representatives as set forth in Paragraph 76, by executing this Agreement, each Class Representative will provide a general release of all claims known or unknown, asserted or unasserted, against the Released Parties by signing (and not revoking) the applicable General Release which are attached hereto as combined Exhibit B (Ex. B1 for those under 40 years of age (Plaintiffs Sean Walker, Melvyn L. Caison, Jr., Gabriel

Castellano and Diego Delgado); Ex. B2 for those 40 years of age or older (Plaintiffs John Kararo and Ian Travis)), and incorporated herein by reference. In order to be entitled to the Class Representative Award, a Class Representative must execute and return the General Release to the Settlement Administrator and Defendant's Counsel no later than the date of the Final Approval Hearing. Each Class Representative executing this Agreement acknowledges and agrees that he will not be entitled to payment of a Class Representative Award absent his executing (and not revoking) the applicable General Release attached in Exhibit B.

52.     In addition to the effect of the Final Approval Order entered in accordance with this Agreement, upon the Effective Date, and for other valuable consideration as described herein, the Released Parties shall be completely released, acquitted, and forever discharged from any and all Released Claims.

53.     Final approval of the Settlement Agreement will settle and resolve with finality on behalf of Plaintiffs and the Settlement Class, the Lawsuit and the Released Claims against the Released Parties as defined herein. The Settlement Agreement and the above-described release of the Released Claims will be binding on, and have *res judicata* preclusive effect in, all pending and future lawsuits or other proceedings brought or maintained by or on behalf of any or all of the Plaintiffs and any or all of the other Settlement Class Members who do not validly and timely exclude themselves from the settlement, and their respective predecessors, successors, spouses, heirs, executors, administrators, agents and assigns of each of the foregoing.

54.     Each Releasor waives any and all defenses, rights, and benefits that may be derived from the provisions of applicable law in any jurisdiction that, absent such waiver, may limit the extent or effect of the release contained in this Agreement.

55.     The Released Parties do not admit any liability or wrongdoing. The Settlement Agreement may not be construed in whole or in part as an admission of fault by the Released Parties. The Released Parties agree to this settlement to avoid the burden and expense of litigating without in any way acknowledging fault or liability.

## VI.     PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER

56.     This Settlement Agreement shall be subject to approval of the Court. As set forth in Section XI, Defendant shall have the right to withdraw from the Settlement Agreement if the Court does not approve any material aspect of the Agreement.

57.     Plaintiffs, through Class Counsel, shall submit this Agreement, together with its exhibits, to the Court and shall jointly move the Court for Preliminary Approval of the settlement set forth in this Settlement Agreement, certification of the Settlement Class for settlement purposes only, appointment of Class Counsel and the Class Representatives, and entry of the Preliminary Approval Order, which order shall seek a Final Approval Hearing date and approve the Notice for dissemination in accordance with the Notice plan. Class Counsel and Defendant's counsel shall jointly prepare a draft Joint Motion for Preliminary Approval and proposed Preliminary Approval Order in substantially the form found in Exhibit C hereto.

58.     At the time of the submission of this Settlement Agreement to the Court as described above, the Parties shall request that, after Notice is given, the Court hold a Final Approval Hearing approximately ninety (90) days after entry of the Preliminary Approval Order and approve the settlement of the Lawsuit as set forth herein.

59.     At least fourteen (14) days prior to the Final Approval Hearing, or by some other date if so directed by the Court, the Parties, through their respective Counsel, will move for: (a) final approval of the Settlement Agreement; (b) final approval of the appointment of the Class Representatives and Class Counsel for settlement purposes only; and (c) final certification of the Settlement Class for settlement purposes only, including for the entry of a Final Order and Judgment, and file a memorandum in support of the motion for Final Approval.

## VII.   EXCLUSIONS

**60.     Exclusion Period.**

a.  Settlement Class Members will have until the "Objection/Exclusion Deadline" (which is defined by Paragraph 26 to mean the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a person within the Settlement Class must be postmarked and/or filed with the Court, which shall be designated as a date forty-five (45) days after the Notice Date, or such other date as ordered by the Court) to exclude themselves from the Settlement in accordance with this Section. If the Settlement Agreement is finally approved by the Court, all Settlement Class Members who did not timely exclude themselves consistent with this Section by the end of the Objection/Exclusion Deadline will be bound by the Settlement Agreement and will be deemed a Releasor as defined herein, and the relief provided by the Settlement Agreement will be their sole and exclusive remedy for the claims alleged by the Settlement Class.

**61.     Exclusion Process.**

a.  A member of the Settlement Class may request to be excluded from the Settlement Class in writing by a request postmarked on or before the Objection/Exclusion Deadline (which is defined by Paragraph 26).

b.  In order to exercise the right to be excluded, a member of the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing his/her name, address, email address, and telephone number; the name and number of this case; a statement that he/she wishes to be excluded from the Settlement Class; and his/her signature. A request to be excluded that does not include all of the foregoing information, that is sent to an address other than that designated in the Class Notice, or that is not postmarked within the time specified, shall be invalid and the person serving such a request shall be considered a member of the Settlement Class and shall be bound as a Settlement Class Member in accordance with the Settlement Agreement, if approved.

c. Any member of the Settlement Class who timely and properly elects to be excluded shall not: (i) be bound by any Final Approval Order entered by the Court; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to any aspect of this Settlement Agreement. A member of the Settlement Class who requests to be excluded from the Settlement Class cannot also object to the Settlement Agreement.

d. The request for exclusion must be personally signed by hand by the person requesting exclusion and must be mailed to the Settlement Administrator in packaging separate from any other request for exclusion. Plaintiffs and Class Counsel agree that they will not, directly or indirectly, solicit or encourage individual class members to exclude themselves from the settlement. So-called "mass" or "class" exclusion requests shall not be allowed. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any individual who excludes himself or herself will not be entitled to any recovery under the Settlement and will not be bound by the Settlement or have any right to object, appeal, or comment thereon.

e. Within three (3) business days after the Objection/Exclusion Deadline, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel a written list reflecting all timely and valid exclusions from the Settlement Class.

## VIII.  OBJECTIONS

62.    The Notice shall advise Settlement Class Members of their rights, including the right to be (a) excluded from or (b) object to the Settlement Agreement and its terms. Settlement Class Members *cannot* both object to and exclude themselves from this Settlement Agreement. The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if, on or before the Objection/Exclusion Deadline approved by the Court, the person making an objection shall file notice of his/her/their intention to do so and at the same time: (a) file copies of such papers he/she/they proposed to submit at the Final Approval Hearing with the Clerk  of the Court; and (b) sends copies of such papers via U.S. Mail, hand delivery, or overnight delivery to both Class Counsel and Defendant's Counsel. A copy of the objection must also be mailed to the Settlement Administrator at the address that the Settlement Administrator will establish to receive requests for exclusion or objections and any other communication relating to this Settlement.

63.    Any Settlement Class Member who intends to object to this Settlement Agreement must include in any such objection(s): (a) his/her/their full name, address, current telephone number, and email address; (b) the case name and number of this Lawsuit; (c) the date range during which she/he/they was employed by or worked for Defendant; (d) all grounds for the objection, with factual and legal support for the stated objection(s), including any supporting materials; (e) the identification of any other objections s/he has filed, or has had filed on his/her behalf, in any other class lawsuit cases in the last five years; and (f) the objector's signature. If represented by counsel, the objecting Settlement Class Member must also provide the name and telephone number

of his/her/their counsel. If the objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, she/he/they must state as such in the written objection, and must also identify any witnesses she/he/they may call to testify at the Final Approval Hearing and all exhibits she/he/they intends to introduce into evidence at the Final Approval Hearing, which must also be attached to, or included with, the written objection.

64.     Any Settlement Class Member who fails to timely file and serve a written objection and notice of intent to appear at the Final Approval Hearing pursuant to this Settlement Agreement, shall not be permitted to object to the approval of the Settlement Agreement at the Final Approval Hearing and shall be foreclosed from seeking any review of the Settlement Agreement or its terms by appeal or other means.

65.     Settlement Class Members cannot both object to <u>and</u> exclude themselves from this Settlement Agreement. The Settlement Administrator shall attempt to contact any Settlement Class Member who submits *both a request for exclusion and an objection* at least one time by email or, if no email address is available, by telephone or, if not telephone number is available, then by U.S. Mail, to give the Settlement Class Member an opportunity to clarify whether they choose to exclude themselves or proceed with their objection. The Settlement Class Member shall have until ten (10) days after the Objection/Exclusion deadline to inform the Settlement Administrator regarding their final choice. Any Settlement Class Member who attempts to both object to and exclude themselves from this Settlement Agreement and fails to clarify their final choice, or if the Settlement Administrator is unable to contact such Settlement Class Member after reasonable effort as set forth in this paragraph, will be deemed to have excluded themselves and will forfeit the right to object to this Settlement Agreement or any of its terms.

## IX.     **FINAL APPROVAL HEARING**

66.     The Parties will jointly request that the Court hold a Final Approval Hearing approximately ninety (90) days after entry of the Preliminary Approval Order. At the Final Approval Hearing, the Parties will request that the Court consider whether the Settlement Class should be certified as a class pursuant to Federal Rule of Civil Procedure 23 for purposes of settlement only and, if so, (a) consider any valid and timely-filed objections; (b) determine whether the Settlement Agreement is fair, reasonable and adequate, was entered into in good faith and without collusion, and should be approved, and shall provide findings in connection therewith; and (c) enter the Final Approval Order, including final approval of the Settlement Class and the Settlement Agreement, a Fee and Expense Award, the Class Representative Awards and payment of Administrative Expenses.

## X.     **FINAL APPROVAL ORDER**

67.     The Parties shall jointly seek entry of a Final Approval Order, the text of which the Parties shall agree upon. The dismissal orders, motions, or stipulation to implement this Section shall, among other things, seek or provide for a dismissal with prejudice and waiving any rights of appeal.

68.     The Parties shall jointly submit to the Court a proposed order that, without limitation:

    a.  Approves finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation according to its terms; and

    b.  Dismisses, with prejudice, all claims of the Plaintiffs and Settlement Class Members against Defendant in the Lawsuit, without costs and fees except as explicitly provided for in this Settlement Agreement.

69.     Class Counsel shall use its best efforts to assist Defendant and Defendant's Counsel in obtaining dismissal with prejudice of the Lawsuit and take all steps necessary and appropriate to otherwise effectuate all aspects of this Settlement Agreement.

## XI.     <u>TERMINATION OF THE SETTLEMENT</u>

70.     The Settlement is conditioned upon Preliminary and Final Approval of the Parties' written Settlement Agreement, and all terms and conditions thereof without material change, material amendments, or material modifications by the Court (except to the extent such changes, amendments, or modifications are agreed to in writing between the Parties). All Exhibits attached hereto are incorporated into this Settlement Agreement. Accordingly, any Party may elect to terminate and cancel this Settlement Agreement within ten (10) days of any of the following events:

    a.  This Settlement Agreement is changed in any material respect to which the Parties have not agreed in writing;

    b.  The Court refuses to grant Preliminary Approval of this Agreement;

    c.  The reversal or substantial modification of the Court's order granting preliminary or final approval;

    d.  The Court refuses to grant Final Approval of this Agreement in any material respect; or

    e.  The Court refuses to enter a final judgment in this Lawsuit in any material respect.

71.     Further, the Parties agree that if seven and one-half percent (7.5%) or more of the Settlement Class Members opt-out of the Settlement, Defendant, in its sole discretion, may void the Agreement. Plaintiffs and Class Counsel agree that they will not solicit or encourage any individual to exclude himself or herself from the Settlement.

72.     In the event the Settlement Agreement is not approved or does not become Final, or is terminated consistent with this Settlement Agreement, the Parties, pleadings, and proceedings

will return to the *status quo ante* as if no settlement had been negotiated or agreed to, and the Parties will negotiate in good faith to establish a new schedule for the Lawsuit.

## XII.   ATTORNEYS' FEES, COSTS, AND EXPENSES AND CLASS REPRESENTATIVE AWARDS

73.    After Counsel for the Parties first negotiated the Maximum Settlement Fund, they undertook separate negotiations regarding a potential award of Class Counsel's attorneys' fees, costs, and expenses. No later than fourteen (14) days prior to the Objection/Exclusion Deadline, Class Counsel will move the Court for an award of attorneys' fees, costs, and expenses not to exceed thirty-three and one-third percent (33.333%) of the Maximum Settlement Fund where the amount of Maximum Settlement Fund is $1,625,000.00.

74.    Notwithstanding any contrary provision of this Settlement Agreement, and subject to Paragraph 77 of this Settlement Agreement, the Court's consideration of the Fee and Expense Award is to be conducted separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement Agreement, and any award made by the Court with respect to Class Counsel's attorneys' fees or expenses, or any proceedings incident thereto, including any appeal thereof, shall not operate to terminate or cancel this Settlement Agreement or be deemed material thereto. If a requested award of attorneys' fees and/or expenses/costs is reduced by the Court overseeing the settlement approval process for the Lawsuit, Class Counsel agrees to accept and not to challenge any lesser percentage and/or dollar value as determined by such Court, and to proceed with the Settlement. Any attorneys' fee and/or expenses/cost amount not approved and awarded by the Court shall be added to the Maximum Settlement Fund amount available for payments to Settlement Class Members who do not request exclusion.

75.    Class Counsel shall provide the Settlement Administrator with its completed IRS Form W-9 before the payment of the Fee and Expense Award is due. Within twenty-one (21) days after the Effective Date, the Settlement Administrator shall pay to Class Counsel the amount awarded by the Court in the Fee and Expense Award. Any payment of the Fee and Expense Award shall be paid by the Settlement Administrator from the cash portion of the Maximum Settlement Fund via either check or electronic wire transfer to an account designated by Class Counsel.

76.    After Counsel for the Parties first negotiated the Maximum Settlement Fund, they undertook separate negotiations regarding the amount of any potential Class Representative Award. At least fourteen (14) days prior to the Objection/Exclusion Deadline, Class Counsel shall move the Court for a Class Representative Award for each of the Class Representatives in an amount not to exceed Ten Thousand Dollars and Zero Cents ($10,000.00). Defendant will not oppose Class Representative Awards of up to Seven Thousand Five Hundred Dollars and Zero Cents ($7,500.00) for each Class Representative and agrees the Court will decide whether Plaintiffs may be granted the higher Awards of $10,000.00 they seek provided that the Class Representatives execute (and do not revoke) the applicable General Release attached hereto in Exhibit B (Ex. B1 for those under 40 years of age (Plaintiffs Sean Walker, Melvyn L. Caison, Jr., Gabriel Castellano and Diego Delgado); Ex. B2 for those 40 years of age and over (Plaintiffs John Kararo and Ian Travis)). The Parties agree that absent execution of (and not revoking) the applicable General Release, the Class Representatives shall not be entitled to Class Representative

Awards. If a requested Class Representative Award is reduced by the Court overseeing the settlement approval process for the Lawsuit, each Class Representative agrees to accept and not to challenge any amount awarded by the Court, and to proceed with the settlement. These final Class Representative Awards will be paid from the cash portion of the Maximum Settlement Fund, as set forth above. These Awards shall be in addition to any amount each Class Representative is eligible to receive under the settlement as a Settlement Class Member. The Class Representative Awards shall be paid solely from the cash portion of the Maximum Settlement Fund by check written by the Settlement Administrator within twenty-one (21) days of the Effective Date.

77.     Defendant shall have no financial responsibility for any amount to be paid pursuant to this Settlement Agreement which exceeds the cash portion of the Maximum Settlement Fund ($1,211,500.00 (One Million Two Hundred Eleven Thousand Five Hundred Dollars and No Cents)). Defendant shall have no further obligation for attorneys' fees or expenses to any counsel representing or working on behalf of either one or more individual Settlement Class Members or the Settlement Class beyond the Fee and Expense Award awarded by the Court. Defendant will have no responsibility, obligation, or liability for allocation of fees and expenses among Class Counsel.

## XIII.  MISCELLANEOUS REPRESENTATIONS

78.     For income tax purposes, the Parties agree that, if required by IRS regulations, the Settlement Administrator shall issue to each Settlement Class Member who cashes a Settlement Check, and to each Class Representative who cashes the Class Representative Award check, an IRS Form 1099. Other than the reporting requirements herein, Plaintiffs, Class Counsel, and Settlement Class Members shall be solely responsible for the reporting and payment of any federal, state, and/or local income or other taxes on payments received pursuant to this Settlement Agreement. It is understood and agreed that Defendant takes no position and offers no advice regarding how any Settlement Class Member chooses to treat any payment made hereunder for tax or any other purpose.

79.     The Parties agree that the Settlement Agreement provides fair, equitable, and just compensation, and a fair, equitable, and just process for determining eligibility for compensation for any given Settlement Class Member related to the Released Claims.

80.     The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement, and (b) agree, subject to their fiduciary and other legal obligations, to cooperate in good faith to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement. Class Counsel and Defendant's Counsel agree to cooperate with each other in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Final Approval Order, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

81.     The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs and the Settlement

Class, and each or any of them, on the one hand, against the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Lawsuit was brought by Plaintiffs or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

82.     Further, as part of the dismissal with prejudice of the Lawsuit, the parties recognize that on November 14, 2024, Plaintiffs' "Motion for Sanctions Resulting from Defendant's Unilateral Destruction of Plaintiff Kararo's Biometric Data" (Dkt. 216) ("Motion for Sanctions) was dismissed without prejudice with leave to refile in the event there was no settlement (Dkt. 236). The Parties further recognize that this Settlement (if Final Approval is granted by the District Court) fully and finally disposes of Plaintiffs' Motion for Sanctions and the issues raised therein without further payment or action by Defendant, and Plaintiffs agree that they will not seek to refile the sanctions motion in any forum or for any purpose (but only if Final Approval is granted by the District Court). Further, while Plaintiffs assert that the arguments for sanctions are valid, Defendant disputes that sanctions were appropriate and denies the assertions made by Plaintiffs in their Motion for Sanctions.

83.     The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released. The Parties have read and understand fully this Settlement Agreement, including its Exhibits, and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

84.     Any headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

85.     The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any prior or subsequent breach of this Agreement.

86.     This Agreement, including, but not limited to, the Notice contained in Exhibit A and the General Releases of Claims contained in Exhibit B, set forth the entire Agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements, and undertakings with respect to the matters set forth herein, including the term sheet negotiated by the Parties. No representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

87.     This Settlement Agreement may not be amended, modified, altered, or otherwise changed in any material manner except by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

88.     The Parties agree that Exhibits A, B (including B.1 and B.2) and C to this Settlement Agreement are a material and integral part thereof and are fully incorporated herein by this reference.

89.     The Parties may agree, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

90.     Except as otherwise provided herein, each Party shall bear its/his own attorneys' fees and costs incurred in any way related to the Lawsuit.

91.     Each Plaintiff represents and warrants that he has not assigned any claim or right or interest therein as against the Released Parties to any other person or party, and that he is fully entitled to release the same.

92.     The Parties represent that they have obtained the requisite authority to enter this Settlement Agreement in a manner that binds all Parties to its terms.

93.     The Parties specifically acknowledge, agree, and admit that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders, or other documents shall be considered a compromise within the meaning of Federal Rule of Evidence 408, and any other equivalent or similar rule of evidence, and shall not, except in accordance with Paragraph 96 of this Agreement, (a) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Lawsuit or in any other pending or subsequently filed Lawsuit, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party or any Released Party, or (b) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

94.     The Parties also agree that this Settlement Agreement and its Exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, correspondence, orders or other documents entered in furtherance of this Settlement Agreement, and any acts in the performance of this Settlement Agreement, are not intended to establish grounds for certification of any class involving any Settlement Class Member other than for certification of the Settlement Class for settlement purposes only.

95.     Except in accordance with Paragraph 96 of this Agreement, this Settlement Agreement, whether approved or not approved, revoked, or made ineffective for any reason, and any proceedings related to this Settlement Agreement and any discussions relating thereto shall be inadmissible as evidence of any liability or wrongdoing whatsoever and shall not be offered as evidence of any liability or wrongdoing in any court or other tribunal in any state, territory, or jurisdiction, or in any manner whatsoever. Further, neither this Settlement Agreement, the settlement contemplated by it, nor any proceedings taken under it, will be construed or offered or received into evidence as an admission, concession, or presumption that class certification is appropriate, except to the extent necessary to consummate this Agreement and the binding effect of the Final Order.

96.     The provisions of this Settlement Agreement, and any orders, pleadings, or other documents entered in furtherance of this Settlement Agreement, may be offered or received in evidence solely (a) to enforce the terms and provisions hereof or thereof, (b) as may be specifically authorized by a court of competent jurisdiction after an adversary hearing upon application of a

Party hereto, (c) in order to establish payment, or an affirmative defense of preclusion or bar in any other pending or subsequent case, (d) in connection with any motion to enjoin, stay, or dismiss any other Lawsuit, or (e) to obtain Court approval of the Settlement Agreement. Moreover, if this Settlement Agreement is finally approved by the Court, any Party or any of the Released Parties may file this Settlement Agreement in any lawsuit that is or may in the future be brought against such Party, Parties, Released Party or Released Parties in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement judgment bar or reduction, or any other theory of claim preclusion, or similar defense or counterclaim.

97.     Nothing express or implied in this Agreement is intended or shall be construed to confer upon or give any person or entity other than the Parties, the Released Parties, and the Settlement Class Members any rights or remedy under or by reason of this Agreement. Each of the Released Parties is an intended third-party beneficiary of this Agreement with respect to the Released Claims and shall have the right and power to enforce the release of the Released Claims in his, her, or its favor against all Releasors.

98.     The Parties and their respective counsel agree that they will not publicize the Settlement, issue any press releases, or initiate any contact with the media or any verdict/settlement publicist or database about this case and/or the facts, amount, or terms of the Settlement. Plaintiffs and Class Counsel agree not to post the terms of the Settlement or make any comment about the Settlement on any social media site or website. However, the Parties agree that Class Counsel may make the following generic statements: "The matter has been resolved." and James Vlahakis or Vlahakis Law Group "negotiated a settlement of over one million dollars in a putative class action lawsuit involving claims under the Biometric Information Privacy Act." The only further exceptions to the prohibition above are that the foregoing shall not restrict Class Counsel from explaining the terms of the Settlement to Class Members and answering their questions about the Settlement when contacted by Class Members regarding the Settlement. Nor shall the foregoing restrict any Party or their counsel from referencing this Settlement in any court filings in the future. Finally, a party may also provide necessary and accurate information about the Settlement and Settlement Agreement to its members or shareholders, and other persons or entities as required by applicable laws or regulations.

99.     Each Party to this Settlement Agreement acknowledges and agrees that: (1) no provision of this Settlement Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisors regarding this Settlement Agreement, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended); (2) each Party: (a) has relied exclusively upon his, her or its own, independent legal and tax advisors for advice (including tax advice) in connection with this Settlement Agreement, (b) has not entered into this Settlement Agreement based upon the recommendation of any Party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or advisor to any other party to avoid any tax penalty that may be imposed on that Party; and (3) no attorney or advisor to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure

by the acknowledging party of the tax treatment or tax structure of any such transaction, including any transaction contemplated by this Settlement Agreement.

100.    This Agreement may be executed in one or more counterparts exchanged by hand, messenger, or PDF as an electronic mail attachment, and any such signature exchanged, including electronic signature via Adobe Sign or DocuSign if it complies with the E-Sign Act and any similar state or local law, shall be deemed an original signature for purposes of this Settlement Agreement. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Agreement all exchange signed counterparts.

101.    This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

102.    Before declaring any provision of this Settlement Agreement invalid, the Parties jointly request that the Court first attempt to construe the provisions to be valid to the fullest extent possible consistent with applicable precedents so as to find all provisions of this Settlement Agreement valid and enforceable.

103.    This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

104.    This Agreement is deemed to have been prepared by counsel for all Parties as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Agreement and its Exhibits, it shall not be construed more strictly against one Party than another.

105.    Unless otherwise stated herein, any notice required or provided for under this Settlement Agreement shall be in writing and shall be sent by electronic mail or hand delivery, postage prepaid, as follows:

| If to Class Counsel: | If to Defendant's Counsel: |
|---|---|
| James Vlahakis | Jason Selvey |
| Vlahakis Law Group LLC | Jody Kahn Mason |
| 20 North Clark Street, Suite 3300 | Hannah Griffin Garlough |
| Chicago, IL 60602 | Jackson Lewis P.C. |
| Tel: (312) 766-0511 | 150 North Michigan Avenue, Suite 2500 |
| jamesv@vlahakislaw.com | Chicago, Illinois 60601 |
| | Tel: (312) 787-4949 |
| | Jason.Selvey@jacksonlewis.com |
| | Jody.Mason@jacksonlewis.com |
| | Hannah.Garlough@jacksonlewis.com |

106.    This Agreement shall be deemed executed as of the date that the last Party signatory signs the Agreement.

In witness hereof, the undersigned have caused this Settlement Agreement to be executed as of the dates set forth below.

**JOHN KARARO**

John Kararo (Jan 31, 2025 16:39 CST)

John Kararo, Plaintiff

Date: Jan 31, 2025

**SEAN WALKER**

Sean Walker (Jan 31, 2025 18:06 CST)

Sean Walker, Plaintiff

Date: Jan 31, 2025

**IAN TRAVIS**

Ian Travis (Jan 31, 2025 12:34 CST)

Ian Travis, Plaintiff

Date: Jan 31, 2025

**MELVYN L. CAISON, JR.**

Melvyn L. Caison Jr. (Jan 31, 2025 13:40 CST)

Melvyn L. Caison, Jr., Plaintiff

Date: Jan 31, 2025

**OLD DOMINION FREIGHT LINE, INC.**

By: _____

Name: ROSS H. PARR

Title: SVP-LEGAL AFFAIRS, GENERAL COUNSEL, SECRETARY

Date: 2/5/2025

24

**GABRIEL CASTELLANO**

_Gabriel Castellano (Jan 31, 2025 12:07 CST)_

Gabriel Castellano, Plaintiff

Date: ___Jan 31, 2025___


**DIEGO DELGADO**

_Diego Delgado (Jan 31, 2025 12:12 CST)_

Diego Delgado, Plaintiff

Date: ___Jan 31, 2025___


As to form and substance:


**CLASS COUNSEL**

_James C. Vlahakis_
James C. Vlahakis (Jan 31, 2025 14:02 CST)

Date: ___Jan 31, 2025___

James Vlahakis
Vlahakis Law Group LLC
20 North Clark Street, Suite 3300
Chicago, IL 60602
Tel: (312) 766-0511
jamesv@vlahakislaw.com

**DEFENDANT'S COUNSEL**

_Jason Selvey_

Date: ___2/5/2025___

Jason Selvey
Jody Kahn Mason
Hannah Griffin Garlough
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
Tel: (312) 787-4949
Jason.Selvey@jacksonlewis.com
Jody.Mason@jacksonlewis.com
Hannah.Garlough@jacksonlewis.com